IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BYRON L. PICKARD,<br>Plaintiff,<br><br>v.<br><br>NATIONAL TRANSPORTATION<br>SAFETY BOARD,<br>Defendant | )<br>)<br>)<br>)<br>)  1:06CV01039 (JR)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF ALEXANDER LEMISHKO

I, Alexander Lemishko, declare as follows:

1. I am the Assistant Deputy Director of Regional Operations, Office of Aviation Safety, National Transportation Safety Board (NTSB), Washington, D.C. I have held this position since June 2006. Prior to becoming the Assistant Deputy Director of Regional Operations, I was an Air Safety Investigator in the South Central Regional Office of the NTSB, in Arlington, Texas, since 1993. In my term of service in Texas, I served as an investigator in charge (IIC), United States accredited representative, and "Go-Team Group Chairman" for numerous aviation accident investigations.

2. The statements made in this Declaration are based upon my review of the official files and records, my review of the records at issue in this litigation, my personal knowledge, and information I acquired from others in the course of my performance of my official duties.

## INVESTIGATIONS I OVERSAW THAT ARE THE SUBJECT OF PLAINTIFF'S FOIA REQUEST

*NTSB Investigation No. FTW01LA176*

3. I served as the IIC for an investigation involving the crash of a Sikorsky SK-76A helicopter that occurred in New Iberia, Louisiana, on July 10, 2001 (NTSB Investigation No. FTW01LA176).

4. NTSB Investigation No. FTW01LA176 was extremely limited. When the NTSB determines that a general aviation accident warrants only a limited investigation, the NTSB usually only works with the Federal Aviation Administration (FAA) in determining the cause of the accident. Therefore, I was the only NTSB employee involved in Investigation No. FTW01LA176. No NTSB employees traveled to the accident site.

5. When the aforementioned accident occurred, and while I was conducting the limited investigation, I worked in the NTSB's South Central Regional Office in Arlington, Texas.

6. I worked with the FAA's Flight Standards District Office (FSDO) in Baton Rouge, Louisiana in order to determine the cause of the accident. On behalf of the NTSB, I verified the findings of the FAA's Baton Rouge FSDO investigator, Mr. Mike Webber.

7. Mr. Webber interviewed the pilot soon after the accident, and conducted a post flight inspection.

8. Mr. Webber told me that all four main rotor blades and the hub of the helicopter were damaged. I discussed Mr. Webber's findings with him over the phone.

9. Given the FAA's investigation of the accident, the NTSB determined that conducting a full investigation of the accident would merely duplicate the FAA's work, and was not

necessary. Therefore, the NTSB only published a Factual Report of the investigation, which is available at *http://www.ntsb.gov/ntsb/GenPDF.asp?id=FTW01LA176&rpt=fa*. The NTSB also published a probable cause finding for this investigation, on the NTSB website.

10. I do not recall creating any documents regarding Investigation No. FTW01LA176.

11. In general, I do not keep any drafts of records or working files after one year of the close of each investigation.

12. In June 2006, I left the NTSB's South Central Regional Office in Arlington, Texas. I began working at the NTSB's headquarters in Washington, D.C. on June 26, 2006.

13. Even though I did not create any records regarding Investigation No. FTW01LA176, I nevertheless conducted a reasonable search for records after the NTSB received plaintiff's FOIA request.

14. In June 2006, I verified that I did not have any electronic records, including e-mail messages, regarding FTW01LA176. Moreover, I was informed that the Computer Services Division in the Office of the Chief Information Officer (CIO) at the NTSB has adjusted the NTSB's network settings to purge all deleted e-mails from "delete folders" within 90 days (or, in some cases, earlier than 90 days) after an e-mail user deletes e-mail messages. Moreover, unless special circumstances exist, I do not keep e-mail messages after an investigation is complete. Given that I do not keep e-mail messages or records after an investigation is complete, and the fact that I was certain that I did not create any records other than the aforementioned public records regarding FTW01LA176, I did not locate any electronic records.

15. As stated above, even though I am certain that I did not create any records regarding Investigation No. FTW01LA176, I conducted a search of all places in which the records could be found, and did not locate any records.

*NTSB Investigation No. DFW05MA230*

16. I am also currently serving as the IIC for a Sikorsky S-76A helicopter accident that occurred in the Gulf of Mexico on September 6, 2005 (NTSB Investigation No. DFW05MA230).

17. Investigation No. DFW05MA230 is currently ongoing.

18. The NTSB has not released any records from Investigation No. DFW05MA230.

19. The NTSB does not release records from pending investigations. In fact, all outside parties to investigations that the NTSB conducts are required to sign a "party agreement," wherein they agree not to release any information while the investigation is ongoing.

20. The release of records from a pending investigation would severely impede the progress of the investigation. Often, records from pending investigations consist of notes containing deliberations and ideas that result from brainstorming. Releasing such records would significantly chill the deliberations of the NTSB and parties who are participating in the investigation.

21. Releasing records from DFW05MA230 would affect the progress of the investigation, because requesters receiving the records would likely misunderstand the records, as well as the NTSB's and parties' deliberations, and consequently speculate on the importance of certain aspects of the accident. Such public speculation would cause confusion and distract the NTSB and participating parties, thereby significantly slowing the progress of the investigation. The NTSB's statutory mandate is to find the causes of transportation

accidents and propose recommendations for improving transportation safety. Releasing records from pending investigations would prohibit the NTSB from fulfilling these statutory objectives.

22. In my capacity as IIC for Investigation No. DFW05MA230, I have categorically reviewed the records from DFW05MA230 and determined that, with the investigation ongoing, releasing these records would significantly impede the progress of this investigation.

23. NTSB Investigation No. DFW05MA230 is categorized into the following five (5) groups:
   a. Human Performance;
   b. Operations;
   c. Cockpit Voice Recorder (CVR);
   d. Maintenance Records; and
   e. Survival Factors

24. With regard to these five (5) groups, release of records while the investigation is ongoing would significantly impede the progress of the investigation. For example, release of records from the Human Performance group would cause speculation with regard to the airman's skills, effectiveness, and decisions while operating the helicopter. In addition, release of records from the Operations group would cause speculation regarding which mechanical aspects of the helicopter are worthy of investigation. Release of records from the CVR group would violate the NTSB's statutory prohibition with regard to release of transcripts of CVR recordings; see 49 U.S.C. § 1114(c)(1). Moreover, the records that the CVR group is currently creating consist of drafts and preliminary, handwritten notes regarding the sounds on the CVR recording. Release of

records from the Maintenance Records group would cause speculation regarding the manner in which the owner/operator maintained certain components of the aircraft, as well as how the maintenance of the aircraft may have effected the aircraft's operation. Finally, release of preliminary records from the Survival Factors group would cause speculation regarding the circumstances of the accident and whether certain aspects of the structure of the aircraft could have prevented the accident. Release of any of these preliminary records could be detrimental to the pending investigation of this accident.

25. A different NTSB employee oversees each of the groups listed above. The NTSB refers to these designated employees as "Group Chairs."

26. Each Group Chair from each of the groups listed above is still researching and investigating their designated aspect of the accident that is the subject of NTSB Investigation No. DFW05MA230. All aspects of Investigation No. DFW05MA230 are currently ongoing.

## SEARCH FOR RECORDS FROM OTHER INVESTIGATIONS

27. In my capacity as the NTSB's Assistant Deputy Director of Regional Operations, I searched for other records involving other investigations that are the subject of plaintiff's FOIA request. Specifically, I searched for records involving the following investigations:

   a. NTSB Investigation No. IAD00WA069 – a Sikorsky S-76A helicopter crash that occurred in Navegantes, Brazil;

   b. NTSB Investigation No. WAS01WA015 – a Sikorsky S-76B helicopter crash that occurred in P'ohang, Korea;

   c. NTSB Investigation No. IAD00WA029 – a Sikorsky S-76A helicopter crash that occurred near Kakap, Isle of Man;

    d. NTSB Investigation No. DCA97WA068 – a Sikorsky S-76B helicopter crash that occurred in Omeath, Ireland; and

    e. NTSB Investigation No. DCA98WA014 – a Sikorsky S-76B helicopter crash that occurred in the North Sea.

28. The NTSB employee, Mr. Tom Conroy, who served as the United States accredited representative for each of the investigations listed at ¶ 27, above, passed away suddenly in February 2005. Therefore, although I did not serve as the IIC or accredited representative for those investigations, I assisted in conducting a reasonable search of any remaining records from Mr. Conroy's files that involve the investigations listed at ¶ 27, above.

    *Search of Electronic Records*

29. Personnel in the Computer Service Division at the NTSB allowed me to access Mr. Conroy's entire network folder.

30. Using Microsoft Windows XP, I searched for all documents in Mr. Conroy's network folder regarding the five aforementioned investigations on which Mr. Conroy served as the United States accredited representative. After consultation with the NTSB's Office of General Counsel, I searched for the following text in all of Mr. Conroy's electronic records:

    a. "S-76";

    b. "S-76A";

    c. "SK-76A";

    d. "S-76A++";

    e. "S-76B";

  f. "IAD00WA069";

  g. "WAS01WA015";

  h. "IAD00WA029";

  i. "DCA97WA068"; and

  j. "DCA98WA014"

31. In addition, I searched for all records that contained each helicopter's unique registration number, as follows:

  a. "PT-HRD";

  b. "HL9240";

  c. "PK-PUC";

  d. "G-HAUG"; and

  e. "PH-KHB"

32. The search function that I utilized in conducting these searches sought any documents that contained any of the text listed above, even if the name of the document as it was saved did not contain any of the text listed above. Therefore, these searches were very broad, and resulted in identifying many records that were not within the scope of plaintiff's FOIA request. Nevertheless, I conducted an extremely thorough, broad search of all records in Mr. Conroy's network folder.

33. Upon locating all records that were potentially within the scope of plaintiff's FOIA request, I transmitted them as instructed to the appropriate employee in the NTSB's Office of General Counsel.

34. Mr. Conroy's network folder is the only place in which electronic records regarding any of the five (5) investigations listed at ¶ 27 would be located.

35. As explained above, I conducted a thorough search of Mr. Conroy's network folder, in accordance with the reasonable search requirements of the FOIA.

*Search of E-Mail Correspondence*

36. In addition to Mr. Conroy's electronic records within his network folder, I also searched for any e-mail correspondence related to the investigations listed at ¶ 27, above.

37. Upon Mr. Conroy's sudden death, the NTSB's Computer Service division arranged for all e-mail correspondence, including correspondence that Mr. Conroy's account would receive after Mr. Conroy's death, to be transferred to Mr. Dennis Jones's e-mail account. Mr. Jones served as Mr. Conroy's direct supervisor.

38. After receiving plaintiff's FOIA request for all records regarding the five investigations listed above at ¶ 27, the NTSB's Computer Service division arranged for me to have access to the aforementioned e-mail correspondence from Mr. Conroy's former e-mail account.

39. Mr. Conroy had organized the e-mail correspondence in his e-mail account into folders that were specific to each investigation. Upon locating e-mail folders for NTSB Investigation Nos. IAD00WA069, WAS01WA015, and IAD00WA029, I arranged for each e-mail message in each of those folders to be transmitted to the appropriate person in the NTSB's Office of General Counsel.

40. Regarding the e-mail correspondence that was not in e-mail folders within Mr. Conroy's account, I used the search option on Microsoft Outlook to search for any e-mail messages that contained the text of any of the investigation numbers or registration numbers listed above at ¶¶ 30 and 31. In addition, I searched for the word, "Sikorsky."

41. I located numerous e-mail messages within the aforementioned folders, as well as messages containing the aforementioned search terms that were not located in folders.

42. Mr. Conroy's e-mail account, as it was preserved in Mr. Dennis Jones's computer, is the only place in which e-mail correspondence regarding any of the five (5) investigations listed at ¶ 27 would be located.

43. As explained above, I conducted a thorough search of Mr. Conroy's e-mail account, in accordance with the reasonable search requirements of the FOIA.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this  12TH  day of September, 2006, in Washington, D.C.

_____
Alexander Lemishko
Assistant Deputy Director of Regional Operations