## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BYRON L. PICKARD,<br>　　　　Plaintiff, | ) <br> ) <br> ) <br> ) | |
| v. | ) <br> ) <br> ) | 1:06CV01039  (JR) |
| NATIONAL TRANSPORTATION<br>SAFETY BOARD,<br>　　　　Defendant | ) <br> ) <br> ) <br> ) | |

## <u>DECLARATION OF MELBA D. MOYE</u>

I, Melba D. Moye, declare as follows:

1.  I am the Chief of the Records Management Division, Office of Chief Information Officer, National Transportation Safety Board (NTSB).  I have held this position for approximately seven and one-half (7.5) years.  In my capacity as Chief of the Records Management Division, I also serve as the FOIA Officer of the NTSB.  I have been the Records Management Officer since 1992; therefore, I was in charge of NTSB records throughout the period at issue.  I have been on staff at the NTSB since 1983.

2.  The statements made in this Declaration are based upon my review of the official files and records, my review of the records at issue in this litigation, my personal knowledge, and information I acquired from others in the course of the performance of my official duties.

**INTRODUCTION**

3.  The purpose of this declaration is to advise the Court as to how the plaintiff's FOIA request to the NTSB, dated April 26, 2006, was processed, and to provide the Court and the plaintiff with a <u>Vaughn</u> index (including a narrative description of the material being withheld) for documents still at issue which were subject to plaintiff's April 26, 2006 FOIA request but withheld from disclosure under the FOIA, in accordance with <u>Vaughn</u> v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1974), on remand, 383 F.Supp. 1049 (D.D.C. 1974), <u>aff'd</u> 523 F.2d 1136 (D.C.Cir. 1975), and <u>FBI v. Wiener</u>, 943 F.2d 972, 977-78 (9th Cir. 1991), <u>cert. denied</u>, 505 U.S. 1212 (1992). This declaration (including the narrative descriptions located in Exhibits 1 - 8) provides the Court and plaintiff with an identification of each document or portion thereof withheld which is still in dispute, the statutory exemption claimed, and the justification for the assertion of the FOIA exemptions used to withhold certain information contained in the records still at issue (or how disclosure would damage the interests protected by the claimed exemption).

4.  This declaration consists of: (1) an explanation of the search for records and the identification of records responsive to the plaintiff's April 26, 2006 request; (2) a detailed explanation of the format utilized for justification of deleted material; and (3) the justification for the withheld materials under the FOIA. Exhibits 1 - 8 consist of the narrative descriptions that contain detailed identification and justification for the withheld information still at issue.

5.  <u>NTSB FOIA Procedures</u>: As the Records Management and FOIA Officer, I am familiar with the types of records maintained by the NTSB as an agency. I am also familiar with

2

the types of records maintained by different offices of the NTSB. In my role as FOIA Officer, I supervise the FOIA program of the NTSB. Among my responsibilities as the FOIA Officer is ensuring that, in response to a FOIA request, the appropriate personnel of the agency conduct a search for documents responsive to the request. When documents in the custody and control of the NTSB and responsive to a request are identified, they are gathered and forwarded to the Records Management/FOIA Division. It is my responsibility, along with other personnel at the Safety Board, to review these documents to determine if, in fact, they are within the scope of the request, and then to determine which, if any, exemptions of the FOIA may apply. Thus, it is my responsibility, taking into consideration applicable exemptions to the FOIA, to determine which responsive documents, in whole or in part, may be released to the FOIA requester. In making this determination, I consult, as appropriate and as necessary, with subject matter experts and other personnel within the NTSB to ensure that disclosures comply with the FOIA. Upon making a determination that all or portions of responsive documents may be released under the FOIA, I communicate in writing with a requester concerning my determination and arrange for the requester to receive releasable documents in accordance with Board practice. Where responsive documents are withheld, in whole or part, I explain, in my written response to a requester, his or her right to appeal my determination to the Managing Director of the NTSB, or to the court, whichever is appropriate.

6. <u>NTSB Activity and Records</u>: Given the focused mission of the NTSB, its records largely consist of records located in the "public docket" for an accident, and accident investigation files, as explained below.

3

## SEARCH FOR AND IDENTIFICATION OF RECORDS
## RESPONSIVE TO PLAINTIFF'S FOIA REQUEST

*Categorization of NTSB FOIA Requests*

7. The NTSB has a multi-track system for responding to its FOIA requests:

   a. Track One includes requests for which there are no records, requests that meet the criteria for expedited processing, or requests that seek records that have been produced in response to a prior request;

   b. Track Two includes requests that do not involve voluminous records or lengthy consultations with other entities (i.e., "simple requests"); and

   c. Track Three includes requests that involve voluminous records and for which lengthy or numerous consultations are required, or those requests which may involve sensitive records (i.e., "complex requests").

8. Plaintiff's April 26, 2006 FOIA request sought "*any and all*" records from *eight* different investigations. Such a request would certainly involve searching for, segregating, redacting, and releasing a voluminous amount of records. Therefore, upon receiving plaintiff's broad FOIA request, the NTSB FOIA Office determined that it was a very complex request; as such, the FOIA Office placed plaintiff's request in the Track Three queue.

9. Plaintiff did not provide the NTSB FOIA Office with any reason to treat his request as one that met the standards for expedition. Specifically, plaintiff did not provide any information regarding any "compelling need" for an immediate release of records within the scope of his request, as 5 U.S.C. § 552(a)(6)(E) requires.

10. The NTSB FOIA Office responds to requests within each track in the order the Office receives them; therefore, the FOIA Office appropriately planned to respond to the request in turn in the numbered sequence of FOIA requests within Track Three.

### NTSB Records Retention

11. With regard to accident investigations and accident investigation related material, the NTSB primarily maintains four sets of agency records, which are:

    a. <u>NTSB "Public Dockets"</u>: The primary records of accident investigations conducted by the NTSB are found within the "public dockets" of the NTSB. The public docket of an accident contains the Safety Board staff's factual reports and related supporting material, which document the NTSB's investigative efforts pertaining to a particular accident. The NTSB maintains an electronic index that lists the public dockets of investigations previously conducted by the NTSB. This index, entitled "Docket Management System" (DMS), may be searched by accident date, location of the accident, and a specific investigation number that is unique to each investigation, among other fields. In response to plaintiff's inquiries regarding the NTSB's FOIA process, an attorney in the NTSB's Office of General Counsel referred plaintiff to the public dockets for each investigation that was the subject of plaintiff's FOIA request. These public dockets are available to the public either in the NTSB Reading Room or from the NTSB record facility.

    b. <u>Accident Briefs/Summaries</u>: In order to identify particular <u>aviation</u> accidents that the NTSB has investigated, certain summary information is maintained in a computerized aviation accident database, which may be searched by particular topics or categories of information and by individual words and terms within those topics or categories. The topics and categories that may be searched via computer in order to identify particular accidents investigated by

the NTSB include:  Date of Accident (a specific date of the accident or a date range), Location of Accident (including city and state within the United States and foreign country), Accident Aircraft Category (such as helicopter, airplane, blimp), Accident Aircraft Make (such as Cessna, Piper), Accident Aircraft Model, Aircraft Registration, Type of Operation (such as commercial or general aviation [non-commercial]), Accident Airline Name (if applicable), and NTSB Accident Number.  This database may be found through the NTSB's website at http://www.ntsb.gov.  At the home page, select "Aviation," followed by the first highlighted bullet on the Aviation page, which is "Accident Database & Synopses."  Select either the Database Query form or the Monthly lists.  Complete all information that is known when using the query form, or select the appropriate month and date using the monthly lists option.  Then click "Submit Query," and the accident summary will be offered, or a table listing the investigations satisfying the criteria entered.  From the table, select the highlighted "Final," "Preliminary," or "Factual" links in the far left column to connect to the report.  These briefs and summaries are available to the public.  Where the NTSB assists a foreign country with an investigation, and does not serve as the lead investigative authority, the NTSB may not author the same types of briefs, summaries, or reports.  However, with regard to the international investigations from which plaintiff requested records, a "Preliminary" or "Factual" is available in the aviation database, as described above.

6

c. <u>NTSB Accident Investigation Files</u>:  In certain instances, at the conclusion of the investigation of an aviation accident, the NTSB maintains paper and/or electronic copies of documents collected during the investigation in an investigative file.  The documents contained in these accident investigation files, while pertaining to a particular investigation, are not included in the public docket of an investigation.  These investigative files also do not contain reports of the NTSB that are otherwise made available to the public under NTSB rules.  In general, these investigation files often contain information that is not pertinent or even helpful to the NTSB's determination of probable cause for the investigation; for example, investigation files may contain drafts of final versions of items that are located in the public docket, or photographs that are essentially duplicative of photographs in the public docket. Nonetheless, as described below, the NTSB searched the locations where potentially responsive information was expected to be located.

d. <u>Safety Recommendation Files</u>:   The NTSB, in conjunction with its determination of the probable cause of the accidents, develops recommendations intended to address perceived safety issues.   These recommendations are contained in a database.  The database is organized by the date of the accident, location of the accident (including city and state if in the United States, or foreign country, as appropriate), and type of aircraft involved and airline involved (if appropriate).

12. The NTSB's general records retention policy requires investigators and other employees who participate in an investigation to retain the records that are pertinent to the

investigation (i.e., the records located in the "public docket" for the investigation) for one year after the NTSB makes its probable cause determination regarding the investigation. In general, when the NTSB makes this probable cause determination, the NTSB publishes those records in the NTSB Docket Management System (DMS). DMS maintains all records pertinent to investigations since 1995 in electronic format. The purpose of this policy is to ensure that the NTSB will not lose records pertinent to investigations in the event that a network, computer, or other technological problem occurs and precludes the use of DMS. Given that all records pertinent to an investigation in which the NTSB served as the lead investigative authority are publicly available in the public docket for each accident, neither the applicable National Archives and Records Administration regulations, 36 C.F.R. pts. 1220-1238, nor the Federal Records Act, 44 U.S.C. §§ 2901-2910, 3101-3107, 3301-3324, require the NTSB to keep the additional records in working investigation files. As a general rule, regarding records that were not directly pertinent to an investigation, and are therefore not located in DMS, investigators maintain these extraneous records in the current year's working files, and then destroy them.

*NTSB Involvement in International Investigations*

13. With regard to investigations of accidents that occur in foreign states, the NTSB does not act as the lead investigative authority. Instead, the NTSB may assist the investigating country by allowing an NTSB investigator to serve as the designated United States Accredited Representative. In this regard, the NTSB complies with Annex 13 of the Convention on International Civil Aviation, which provides:

The State of Occurrence shall institute an investigation into the circumstances of the accident and be responsible for the conduct of the investigation, but it may

delegate the whole or any part of the conducting of such investigation to another State by mutual agreement and consent.

Aircraft Accident and Incident Investigation, Annex 13 to the Convention on International Civil Aviation, at ¶ 5.1 (9th ed. 2001).

14. Annex 13 of the Convention on International Civil Aviation also allows certain other foreign states to participate in the investigation:

The State of Registry, the State of the Operator, the State of Design and the State of Manufacture shall each be entitled to appoint an accredited representative to participate in the investigation.

Id. at ¶ 5.14.  In addition, Annex 13 allows accredited representatives to designate and supervise a team of advisors, in the interest of providing necessary expertise to accredited representatives.  Id. at ¶ 5.24.1.

***Plaintiff's FOIA Request***

15.  After carefully reviewing plaintiff's FOIA request, the NTSB determined that plaintiff sought all files, from each of the aforementioned four categories, regarding eight different helicopter investigations:

   a.  NTSB Investigation No. IAD00WA069 (accident that occurred in Navegantes, Brazil, on August 2, 2000);

   b.  NTSB Investigation No. IAD01WA015 (accident that occurred near P'ohang, Korea, on July 5, 2001);

   c.  NTSB Investigation No. IAD00WA029 (accident that occurred near Kakap, Isle of Man, Indonesia, on March 8, 2000);

   d.  NTSB Investigation No. DCA97WA068 (accident that occurred near Omeath, Ireland, on December 12, 1996);

   e.  NTSB Investigation No. DCA98WA014 (accident that occurred in the North Sea

off the coast of the Netherlands on December 20, 1997);

    f.  NTSB Investigation No. FTW01LA176 (accident that occurred in New Iberia, Louisiana, on July 10, 2001);

    g.  NTSB Investigation No. NYC86MA148 (accident that occurred in Sutton, Massachusetts on June 6, 1986); and

    h.  NTSB Investigation No. DFW05MA230 (accident that occurred in the Gulf of Mexico on September 6, 2005).

16. I, in conjunction with my staff in the FOIA Office and the Office of General Counsel, notified personnel in the NTSB's Office of Aviation Safety and the Office of Research and Engineering of the existence of plaintiff's request. The Office of Aviation Safety, the Office of Research and Engineering, and the Records Management Division are the only offices in which records within the scope of plaintiff's FOIA request might be located. Informing these NTSB offices of the specifics of plaintiff's FOIA request, the FOIA Office and/or the Office of General Counsel requested that a search be conducted for any records within the scope of plaintiff's request.

17. In addition, I searched the NTSB's database of Safety Recommendations and did not locate any safety recommendation files regarding any of the investigations listed at ¶ 15. I searched for safety recommendation records from each of these investigations, according to investigation number, date of accident, location of accident. I did not locate any safety recommendation records.

18. Plaintiff's request identified three of the investigations as investigations in which NTSB investigator Tom Conroy served as the United States accredited representative. Further research into the investigations listed above also led the FOIA Office and Office of

10

General Counsel to identify two more investigations as those in which Mr. Conroy served as the United States accredited representative. Tom Conroy passed away suddenly in February 2005.

19. The remaining three investigations in plaintiff's FOIA request were regional investigations in which investigators from two of the NTSB's regional offices served as the investigators in charge (IIC's). Specifically, NTSB Investigation Nos. FTW01LA176 and DFW05MA230 were investigations in which Mr. Alexander Lemishko served as the IIC. NTSB Investigation No. NYC86MA148 was an investigation in which Mr. Dennis Jones served as the IIC. At the time of these three investigations, both Mr. Lemishko and Mr. Jones worked in NTSB regional offices (Arlington, Texas, and Jamaica, New York, respectively). Both Mr. Lemishko and Mr. Jones have since moved offices to the NTSB headquarters in Washington, D.C., where they presently work in the Office of Aviation Safety.

20. The NTSB conducts a reasonable search for records requested under the FOIA, as relevant case law requires. See Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (stating that an agency must undertake a search that is "reasonably calculated to uncover all relevant documents"). When the NTSB FOIA Office receives a request for records from a specific investigation, the FOIA Office provides a copy of the request to the IIC (or, where the investigation occurred under the supervision of a foreign state, the United States accredited representative at the NTSB), and asks that person to send all records within the scope of the request to the FOIA Office. The FOIA Office also reminds the IIC (or accredited representative) to contact all other offices or NTSB employees who were involved in the investigation, obtain all

11

records from them, and send them in conjunction with their own records regarding the investigation. The IIC (or accredited representative) serves as the central point of contact for the FOIA Office with regard to the request, because the IIC supervises all personnel and offices throughout the investigation, and closely works with other NTSB employees who are involved in the investigation. Therefore, contacting the IIC or accredited representative is the most efficient and reliable way to acquire all relevant records in a timely manner.

*Search for Records from Investigation No. NYC86MA148*

21. With regard to NTSB Investigation No. NYC86MA148, the appropriate IIC (Mr. Dennis Jones) was contacted and notified of the existence of a FOIA request.

22. Mr. Dennis Jones stated that the investigation listed above for which he served as the IIC (Investigation No. NYC86MA148) occurred in 1986. At the time of the investigation, Mr. Jones worked in the NTSB's regional office in Jamaica, New York. Mr. Jones stated that he placed all records that were pertinent to Investigation No. NYC86MA148 in the public docket of records for the investigation, and did not retain any records pertaining to Investigation No. NYC86MA148.

23. NTSB staff also inquired of Mr. James Wildey, who presently serves as the Chief of the Materials Laboratory in the Office of Research and Engineering at the NTSB, and has been employed at the NTSB for approximately 31 years, regarding any records from NYC86MA148. The Materials Laboratory Division of the Office of Research and Engineering maintains a comprehensive database tracking all work that the Division performs on all materials that Division studies.

12

24. Mr. Wildey inserted the NTSB investigation number, NYC86MA148, into the Materials Laboratory database. The database indicated that the Materials Laboratory had examined two pieces of luggage from the accident that was the subject of Investigation No. NYC86MA148, upon the request of the Federal Bureau of Investigation (FBI). The Materials Laboratory database indicated that the NTSB had not composed a report or any records regarding the examination of the luggage. Mr. Wildey explained that the FBI likely brought the items to the NTSB Materials Laboratory and observed the NTSB employees in the Materials Laboratory while the employees examined them. Overall, the NTSB did not generate or acquire any records with regard to this examination; if the NTSB had created any records, then the Materials Laboratory Division would have documented those records in the database, in accordance with their policy.

25. Recognizing that the aforementioned Materials Laboratory database entry, although brief, was an "agency record" under the FOIA, Mr. Wildey printed the database entry and submitted it in accordance with standard practice to ensure compliance with the FOIA. See 5 U.S.C. § 552(f)(2) (clarifying that the definition of "record" under the FOIA includes records in electronic format).

26. Overall, the appropriate personnel inquired of all possible employees who would be aware of any records regarding NYC86MA148, and located only one record.

27. The NTSB FOIA Office released this record, in full, to plaintiff on June 29, 2006. I sent a letter to plaintiff, dated June 29, 2006, in which I stated that the NTSB had conducted a reasonable search for all records regarding Investigation No. NYC86MA148, and located one record, as described above. Exhibit 9.

28. The evening of September 11, 2006, I located an additional record from Investigation No. NYC86MA148. This record had been erroneously filed in an incorrect location in the Records Management Division filing cabinet for microfiche records.

29. On September 14, 2006, I sent this record to plaintiff with a supplemental response to my June 29, 2006 response letter. Although portions of this record would have been subject to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), the NTSB nevertheless made a discretionary release of the record in its entirety. See Exhibit 15.

30. The NTSB has still fulfilled the reasonable search requirements of the FOIA with regard to Investigation No. NYC86MA148, and released all documents to plaintiff that are within the scope of plaintiff's request for information from Investigation No. NYC86MA148.

*Search for Records from Investigation No. FTW01LA176*

31. In accordance with the procedure described above for locating records in response to a FOIA request, appropriate personnel contacted the IIC for NTSB Investigation No. FTW01LA176, Mr. Alex Lemishko.

32. Mr. Lemishko verified that Investigation No. FTW01LA176 was a limited investigation in which he did not visit the accident site or create any investigative records that are not publicly available on the NTSB website or from the NTSB records facility, such as NTSB Pilot/Operator Aircraft Accident Report Form, and the factual report and determination of "probable cause" for the accident. Mr. Lemishko stated that he rarely keeps records, if any exist, from limited investigations. Mr. Lemishko explained that he worked closely with the FAA Flight Standards District Office in Baton Rouge, Louisiana, with regard to Investigation No. FTW01LA176, and determined, in accordance with

common NTSB practice with regard to these types of limited investigations, that an independent, comprehensive examination conducted by the NTSB would not have been necessary or prudent. Therefore, Mr. Lemishko stated that the only records he created for the investigation were the factual report and statement of probable cause. Both of these records are publicly available on the NTSB website's aviation accident database; the public can access these records by submitting a query on the database's query web page, *available at* http://www.ntsb.gov/ntsb/query.asp.

33. Although Mr. Lemishko was confident that he did not maintain any records from Investigation No. FTW01LA176, he nevertheless searched his network folder, which contains all electronic records from investigations in which he served as the IIC.

34. Mr. Lemishko did not locate any electronic records from Investigation No. FTW01LA176.

35. Mr. Lemishko also stated that he would have destroyed any "working file" that he may have maintained for Investigation No. FTW01LA176 after one year, in accordance with his office's records retention practices, because Investigation No. FTW01LA176 did not present any information that he would consider unique or helpful to a future investigation. Mr. Lemishko's "working files" are physical files containing paper records that Mr. Lemishko creates or acquires that may be helpful to determining the cause of an aviation accident.

36. Mr. Lemishko did not locate any working files or any other records in his present office at NTSB headquarters in Washington, D.C.

37. While Mr. Lemishko was investigating Investigation No. FTW01LA176, he was working as an Air Safety Investigator in the NTSB South Central Regional Office in Arlington, Texas.

38. In the interest of conducting as thorough a search as possible for any records regarding Investigation No. FTW01LA176, Mr. Lemishko contacted the Regional Director for the NTSB regional office in Arlington, Texas, Mr. Hector Casanova.  Mr. Lemishko informed Mr. Casanova of the existing FOIA request, and asked Mr. Casanova to search for any records in the office that were created or acquired for Investigation No. FTW01LA176.

39. Mr. Casanova searched Mr. Lemishko's former office space at the NTSB South Central Regional Office, which is the location in which records would be located from any investigations in which Mr. Lemishko served as IIC.  Mr. Casanova did not locate any records from Investigation No. FTW01LA176.

40. The NTSB FOIA Office, in conjunction with the NTSB Office of General Counsel, sent a letter to plaintiff dated July 3, 2006, which stated that the NTSB had conducted a reasonable search for all records from Investigation No. FTW01LA176, and did not locate any records that were not publicly available.  Exhibit 10.

*Records from Investigation No. DFW05MA230*

41. Mr. Alexander Lemishko is also currently serving as the IIC for NTSB Investigation No. DFW05MA230, which has arisen from a helicopter accident that occurred in the Gulf of Mexico on September 6, 2005.  This investigation is currently ongoing.

42. Upon receiving plaintiff's FOIA request for all records concerning Investigation No. DFW05MA230, staff in the NTSB's Office of General Counsel inquired of Mr. Lemishko with regard to the status of Investigation No. DFW05MA230.

43. Mr. Lemishko has not published a "public docket" of records (as described above) from Investigation No. DFW05MA230, because the investigation is pending.

44. The FOIA Office and Office of General Counsel categorically reviewed the existing records from Investigation No. DFW05MA230. Currently, the NTSB has assembled the following groups for Investigation No. DFW05MA230:

   a.  Human Performance Group

   b.  Operations Group

   c.  Cockpit Voice Recorder (CVR) Group

   d.  Maintenance Records Group

   e.  Survival Factors Group

45. Each of these groups is currently conducting an investigation into specific aspects of the accident that is the subject of Investigation No. DFW05MA230. An NTSB employee serves as group chairperson for each of the groups listed above.

46. The FOIA Office, in conjunction with the Office of General Counsel at the NTSB, has inquired of each of the aforementioned group chairpersons regarding the status of Investigation No. DFW05MA230.

47. Each group chairperson has verified that Investigation No. DFW05MA230 is ongoing. Each group chairperson stated that they are currently investigating their group's aspects of Investigation No. DFW05MA230.

48. Given each group chairperson's verification that each category of Investigation No. DFW05MA230 is pending, the NTSB has met the procedural requirement regarding review of the records at issue. Pursuant to well-established case law on the subject of an agency's responsibility to review records from a pending investigation on a categorical basis, the NTSB verified that each group's category of NTSB Investigation No. DFW05MA230 is pending. See, e.g., NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 236 (1978); Solar Sources, Inc. v. United States, 142 F.3d 1033, 1038 (7th Cir. 1998); North v. Walsh, 881 F.2d 1088, 1097 (D.C. Cir. 1989) (R.B. Ginsburg, J.).

49. Based on the pending status of Investigation No. DFW05MA230, Mr. Lemishko stated that premature release of records from this investigation would significantly interfere with the progress of the investigation.

50. In addition, the records at issue regarding Investigation No. DFW05MA230 are preliminary, and reflect each group's deliberations.

51. Based on the aforementioned reasons, the NTSB has properly withheld records from this investigation. I sent a letter to plaintiff, dated July 3, 2006, explaining that the NTSB was withholding records from Investigation No. DFW05MA230 because the investigation was pending; in the response, I cited Exemptions 2, 5, and 7(A) as justifications for the NTSB's withholding of records from Investigation No. DFW05MA230. See 5 U.S.C. § 552(b)(2), (5), and (7)(A). Exhibit 11.

*Search for Records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014*

52. In reviewing plaintiff's request for all records from eight different investigations, the NTSB FOIA Office and Office of General Counsel determined that it would be most efficient to respond to plaintiff's requests for records from Investigation Nos.

18

IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014 at once.

53. As stated above, Mr. Tom Conroy, who passed away suddenly in February 2005, served as the United States accredited representative for Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014.

54. Shortly after Mr. Conroy's death, Mr. Jeffrey Guzzetti, in his capacity as Deputy Director of Aviation Safety, determined that the Office of Aviation Safety needed to use Mr. Conroy's former office as a workstation for visiting regional investigators. As such, Mr. Guzzetti discarded all records from closed investigations that pre-dated 2002 that were located in Mr. Conroy's former office.

55. Despite knowing that Mr. Guzzetti had discarded all hard copies of records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014, the FOIA Office, in conjunction with the Office of General Counsel, inquired of Mr. Conroy's immediate supervisor with regard to any records from the five aforementioned investigations.

56. At the time of his death, Mr. Conroy's immediate supervisor was Mr. Dennis Jones.

57. Mr. Jones had a small stack of records that he kept from Mr. Conroy's office before Mr. Guzzetti cleaned out Mr. Conroy's office. Mr. Jones searched this stack of records for any records regarding Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014.

58. Within this small stack of records, Mr. Jones located three file folders of records from Investigation No. DCA98WA014.

59. The NTSB did not find any other hard copies of records that Mr. Conroy produced or acquired with regard to Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014.

60. The NTSB's FOIA Office, in conjunction with the Office of General Counsel, asked personnel from the Computer Service Division in the NTSB Office of Chief Information Officer (CIO) to assist with conducting a search for electronic records and e-mail correspondence from Mr. Conroy's former network folder and e-mail account.

61. Staff from the Computer Service Division moved Mr. Conroy's e-mail messages from Mr. Conroy's e-mail account, which had been preserved on Mr. Jones's computer, to Mr. Lemishko's computer. The Computer Service Division also allowed Mr. Lemishko to access electronic records in Mr. Conroy's former network folder.

62. Mr. Lemishko conducted a search in Mr. Conroy's e-mail account for records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014. First, Mr. Lemishko noted that Mr. Conroy had organized his e-mail account into folders for most of the aforementioned investigations. Mr. Lemishko copied all e-mail correspondence from each of the appropriate folders and submitted it to the appropriate NTSB employee, in response to plaintiff's FOIA request. Mr. Lemishko then conducted an additional search of Mr. Conroy's e-mail account by entering a query in Microsoft Outlook for each of the five unique investigation numbers: IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014. Mr. Lemishko also entered a query for each aircraft's unique registration number. Finally, in order to conduct as complete a search as possible, Mr. Lemishko reviewed all e-mail messages that Mr. Conroy had not categorized into designated folders. Mr. Lemishko submitted all

e-mail messages that mentioned Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014 to the appropriate NTSB employee.

63. Mr. Lemishko conducted a search of Mr. Conroy's network folder for all electronic records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014. Mr. Lemishko completed this search using the Microsoft Windows XP search function; specifically, in the "containing text" field, Mr. Lemishko inserted all possible queries that would capture all the requisite records, such as each of the five investigation numbers listed above, each aircraft's unique registration number, as well as "Sikorsky," "S-76," "S-76A," and "S-76B." This search resulted in a wide array of records, including some of Mr. Conroy's personal records, such as his employment records that mentioned his experience in investigating Sikorsky aircraft accidents. Nevertheless, Mr. Lemishko submitted all potentially responsive records to the appropriate NTSB employee for processing under the FOIA.

64. In addition to searching Mr. Conroy's electronic files, e-mail correspondence, and any remaining hard copies of records, the NTSB FOIA Office also asked Mr. Bob MacIntosh to conduct a search for any records regarding Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014. Mr. MacIntosh serves as the NTSB's specialist in international investigations and the Board's compliance with Annex 13 of the Convention on International Civil Aviation international investigations. Mr. MacIntosh maintains all of his records from all international investigations in a single filing cabinet, organized by investigation number. After conducting a search of this filing cabinet for all records related to Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and

21

DCA98WA014, Mr. MacIntosh located two small file folders: one file folder contained records from Investigation No. DCA98WA014, and the other file folder contained records from Investigation No. DCA97WA068. Mr. MacIntosh submitted both folders, and the records therein, to me for review in accordance with the requirements of the FOIA.

65. Overall, even though Mr. Conroy has passed away, the NTSB FOIA Office worked with Mr. Conroy's supervisors and colleagues in order to determine where all records regarding Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014 would be located. Shortly after determining all possible locations for such records, the NTSB FOIA Office arranged for the appropriate NTSB employees to conduct reasonable searches of all records in those locations. As such, the NTSB has fulfilled the procedural requirement under the FOIA for conducting a reasonable search for records. See, e.g., Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998); Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

66. After gathering all electronic records, e-mail correspondence, and hard copies of records from each of the aforementioned NTSB employees, the NTSB Office of General Counsel processed the records by reviewing each record, segregating the records as necessary, making release determinations regarding each record, and redacting certain text in the records, where withholding of the information was justified via a FOIA exemption. The NTSB sent all records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, and DCA98WA014 that were subject to release (275

pages of records, as well as three photographs and one electronic record, on a computer disk), as well as a letter of response explaining the applicability of all exemptions that the NTSB applied in making release determinations, to plaintiff via messenger delivery on August 14, 2006. Exhibit 12.

### JUSTIFICATION FOR REDACTIONS IN, OR WITHHOLDING OF, RELEASED RECORDS

67. For the information of the Court, prior to the preparation of this declaration, I reviewed the responsive records. Each exemption that the NTSB utilized to withhold information via redaction is discussed below, including the basis for its application and a description of the subject matter of the particular deletion.

68. In submitting the aforementioned 275 pages of records to plaintiff, the NTSB included coded categories of exemptions beside each portion of redacted text. These annotations that identify the appropriate exemption of the FOIA that justified withholding the text, 5 U.S.C. § 552. For example, if "(b)(6)" or "Exemption 6" appears on a document, then the annotation refers to Exemption (b)(6) of the FOIA concerning personal privacy information that is withheld because the disclosure of the information would be a "clearly unwarranted invasion of personal privacy." Id. § 552(b)(6). In addition, a separate narrative description of the information redacted, as well as the justification for such withholding, is provided at Exhibit 1 for each record containing redactions.

69. In preparing the aforementioned narrative descriptions, the appropriate NTSB employees carefully reviewed each document. The language contained in each narrative description is specific to each document. To describe in more detail the information being withheld could identify the material that the NTSB validly seeks to protect. The narrative

descriptions and the coding on the documents are used to aid the Court's review of the NTSB's explanations for the FOIA exemptions used to withhold the protected material.

70. The NTSB made every effort to provide the plaintiff with all reasonably segregable portions of the material requested. No reasonably segregable nonexempt portions have been withheld from plaintiff. Accordingly, all information withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because it is so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material.

71. For several records that are within the scope of plaintiff's FOIA request, the NTSB exercised its discretion to release portions or records that the FOIA exempts from disclosure. Overall, the NTSB has carefully reviewed all records within the scope of plaintiff's FOIA request, and has erred on the side of disclosure in response to plaintiff's FOIA request.

*Redacted Records*

72. For the Court's convenience, Exhibit 1 consists of a chart that includes each page number containing a redaction of text that is exempt from disclosure under an exemption of the FOIA, a description of the redacted text, and a brief explanation of the NTSB's application of each applicable exemption.

73. Much of the redacted text in the aforementioned pages is exempt from disclosure pursuant to Exemption 6 of the FOIA. This redacted text clearly contains personal information, the release of which would cause an unwarranted invasion of privacy; therefore, the NTSB invoked Exemption 6 to withhold the text. 5 U.S.C. § 552(b)(6). The NTSB carefully weighed any public interest in disclosing the text against the privacy

interest at stake, and found that redacting the text was consistent with Exemption 6 of the FOIA. In applying Exemption 6 to these pages, the NTSB redacted contact information of <u>non-NTSB</u> employees. The NTSB did not redact contact information of NTSB employees, nor the names of non-NTSB employees. The NTSB carefully reviewed these pages prior to releasing them, and made every effort to honor the intention of the FOIA with regard to releasing as much information as possible.

74. In addition, the chart at Exhibit 1 contains entries that include each page number containing redactions of text that is exempt from disclosure under Exemptions 4 and 2 of the FOIA.

    a. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). While conducting the investigations from which plaintiff requested records, the NTSB utilized some proprietary information from two non-government sources. Pursuant to Exemption 4 of the FOIA, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. <u>Critical Mass Project v. Nuclear Regulatory Comm'n</u>, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB oversaw the aforementioned investigations, it obtained information without the assistance of the Board's Office of General Counsel or devices such as subpoenas. Therefore, the submission of the information at issue to the NTSB was wholly voluntary.

b.  In order to ensure that the information at issue was exempt from disclosure pursuant
to Exemption 4, the NTSB contacted both private entities that voluntarily provided
the proprietary data to the NTSB, in order to inquire about the status of the
aforementioned proprietary information.  These private entities specifically stated
that they would not customarily release these pages to the public; in addition, they
articulated the commercial disadvantage they would suffer if the NTSB were to
release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at
878-79.  See Exhibits 13 and 14.  As a result, I determined that these pages were
exempt from disclosure under the FOIA.

c.  In addition to invoking Exemption 4, the NTSB's response letter also informed
plaintiff that Exemption 2 applied to withhold some of the redacted text, in
accordance with the annotations on the released records.  Specifically, the NTSB
redacted some information from the enclosed records where release of the
information would cause the NTSB to circumvent its statutory purpose and
instructive regulations.  The NTSB determined that such information was exempt
from the disclosure requirements of the FOIA under Exemption 2.  5 U.S.C. §
552(b)(2).  As explained in another declaration herein (Declaration of Thomas E.
Haueter), the NTSB, in investigating accidents, gathers information from
manufacturers, operators, and various other "parties" in order to find the probable
cause of each accident.  The NTSB's "party system" is absolutely critical to the
fulfillment of the Board's mission, which is to investigate civilian transportation
occurrences in an independent fashion.  49 U.S.C. § 1111; 49 C.F.R. §§ 800.2,
800.3(a) (listing the Board's general functions and responsibilities); see also S.

26

Rep. No. 103-150, at 231 (1993) (stating that the Board was established as an independent agency, and that the Board's "effectiveness depends on its reputation for impartial and accurate accident reports"). Disclosure of records that contain proprietary data or information would undermine the NTSB's effectiveness, because it would instill severe reluctance in parties to participate fully in the Board's investigations. The information that the NTSB obtains from such parties is critical to the Board's ability to investigate transportation accidents effectively. Such a compelling risk of circumvention of the NTSB's statutory purpose and regulations allows for the application of Exemption 2, in conjunction with Exemption 4, to plaintiff's request.

75. Likewise, with regard to certain portions of correspondence between foreign investigators-in-charge and the NTSB, Exemptions 2, 3 and 5 allowed for redactions of opinions and deliberations from foreign investigators-in-charge, or text that encompassed such opinions or questions that reflected deliberations.

   a. First, Exemption 3 of the FOIA allows agencies to withhold information that another statute prohibits from disclosure if the statute either, "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). As explained below, the redacted text at issue fulfills the requirements of Exemption 3. Five of the eight investigations from which plaintiff requested records were international aviation investigations. In all foreign aviation investigations, the NTSB is required to comply with Aircraft Accident and Incident Investigation, Annex 13

27

to the Convention on International Civil Aviation (9th ed. 2001). See 49 C.F.R. §

831.2(a)(3). Paragraphs 5.12 and 5.12.1 of Annex 13 provide:

> 5.12   The State conducting the investigation of an accident or
> incident shall not make the following records available for
> purposes other than accident or incident investigation ... :
> a) all statements taken from persons by the investigation
>    authorities in the course of their investigation;
> b) all communications between persons having been involved in
>    the operation of the aircraft;
> c) medical or private information regarding persons involved in
>    the accident or incident;
> d) cockpit voice recordings and transcripts from such recordings;
>    and
> e) opinions expressed in the analysis of information, including
>    flight recorder information.
> 5.12.1   These records shall be included in the final report or its
> appendices only when pertinent to the analysis of the accident or
> incident. Parts of the records not relevant to the analysis shall not
> be disclosed.

Id. This prohibition on the disclosure of information that countries gather during civil

aviation investigations falls within the purview of Exemption 3 of the FOIA, because

the United States and the countries involved in the investigations at issue are

signatories to the Chicago Convention, which implemented the Annexes to the

Convention on International Civil Aviation. The NTSB's regulations indicate the

Board's involvement in international aviation investigations, pursuant to this

agreement, 49 C.F.R. § 831.2(a)(3). Given the provisions of Annex 13 that I quoted

above, the NTSB's disclosure of such prohibited information would directly contravene

these specific provisions of Annex 13. In addition, the Note that accompanies ¶¶ 5.12

and 5.12.1 illustrates the purpose of these provisions:

> Information contained in the records listed above ... could be
> utilized inappropriately for subsequent disciplinary, civil,
> administrative and criminal proceedings. If such information is
> distributed, it may, in the future, no longer be openly disclosed to

investigators. Lack of access to such information would impede
the investigation process and seriously affect flight safety.

Aircraft Accident and Incident Investigation, Annex 13 to the Convention on International Civil Aviation (9th ed. 2001). Therefore, the NTSB redacted some information from the enclosed records in accordance with Exemption 3 and Annex 13.

b.  In addition to Exemption 3 of the FOIA, the NTSB also invoked Exemption 5 for statements in which foreign investigators-in-charge expressed opinions, made comments, or asked questions that encompassed their predecisional deliberations during the investigation. Such statements are exempt from the disclosure requirements of the FOIA pursuant to Exemption 5, 5 U.S.C. § 552(b)(5), which exempts from disclosure agency records that are preliminary or deliberative. The NTSB cannot guarantee preliminary materials, such as records that encompass preliminary opinions or questions that reflect deliberations, as accurate or complete; therefore, release of such information would result in confusion and compromise the Board's work. In addition, material reflecting the NTSB's deliberative process is exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations.

c.  Finally, the NTSB also invoked Exemption 2 in conjunction with Exemptions 3 and 5 of the FOIA, to redact a text containing preliminary information that reflects the NTSB's deliberative process and opinions from foreign investigators. Disclosure of records that reflect parties' and foreign investigators' deliberations would undermine the NTSB's effectiveness, because it would instill significant reluctance in parties and foreign investigators to participate fully in the Board's investigations. The information that the NTSB obtains from foreign investigators is critical to the Board's ability to

assist with foreign aviation accidents effectively; therefore, release of such information would cause the NTSB to circumvent the provisions of Annex 13, which requires the NTSB to assist with certain foreign investigations.   Such a compelling risk of circumvention of the NTSB's statutory purpose and Annex 13 allows for the application of Exemption 2, in conjunction with Exemptions 3 and 5.

*Withheld Records*

76. The NTSB also withheld 188 pages from plaintiff in full.

77. Exhibits 2 - 8 contain detailed descriptions of each record that the NTSB withheld in full from plaintiff.

78. The NTSB withheld 154 pages in full based on Exemptions 2 and 4 of the FOIA.   5 U.S.C. § 552(b)(2), (4).

    a.   In the NTSB's response to plaintiff's request for records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97068, and DCA98WA014, I informed plaintiff that the NTSB was withholding 103 pages based on Exemptions 2 and 4 of the FOIA.   The FOIA does not require agencies to specify an exact number of pages that the agency is withholding, see 5 U.S.C. § 552(a)(6)(F) (stating that, "[i]n denying a request for records, in whole or in part, an agency shall make a reasonable effort to *estimate* the volume of any requested matter the provision of which is denied, and shall provide any such *estimate* to the person making the request") (emphasis added).

    b.   In carefully reviewing the records again for the attached <u>Vaughn</u> index, the NTSB concluded that 154 pages is the exact number of pages that are exempt from disclosure pursuant to Exemptions 2 and 4 of the FOIA.

79. The NTSB withheld 64 photos from plaintiff based on Exemptions 2 and 4 of the FOIA. 5 U.S.C. § 552(b)(2), (4).

    a.  In the NTSB's response to plaintiff's request for records from Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97068, and DCA98WA014, I informed plaintiff that the NTSB was withholding 101 photographs based on Exemptions 2 and 4 of the FOIA. As stated above, the FOIA does not require agencies to specify an exact number of pages that the agency is withholding. 5 U.S.C. § 552(a)(6)(F).

    b.  In carefully reviewing the records again for the attached Vaughn index, the NTSB concluded that 64 photographs is the exact number of photographs that are exempt from disclosure pursuant to Exemptions 2 and 4 of the FOIA.

80. These erroneous estimates discussed above were the result of a misidentification of which records and photographs were responsive to plaintiff's request. As I stated above, Mr. Tom Conroy served as the United States accredited representative for Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97068, and DCA98WA014. Given Mr. Conroy's sudden death, the NTSB could not inquire of any NTSB employee who was closely familiar with each of these investigations. Therefore, in the interest of conducting as thorough a search as possible and releasing as many records as possible, the NTSB erroneously identified some photographs as responsive and exempt from disclosure pursuant to Exemptions 2 and 4; in reality, these records are not even within the scope of plaintiff's request, but are from other investigations, from which plaintiff did not request records. Therefore, the NTSB's response to plaintiff's request included a

miscalculated estimate of pages and photographs that are exempt from disclosure under the FOIA.

81. Each document in Exhibits 2 – 8 describes all records that the NTSB determined were exempt from release under the FOIA.

    a.  Exhibit 2 contains descriptions of the five (5) pages of records that the NTSB is withholding pursuant to Exemption 2 ("low") of the FOIA. 5 U.S.C. § 552(b)(2) (exempting records that are "related solely to the internal personnel rules and practices of an agency").

    b.  Exhibit 3 contains descriptions of the 13 pages of records that the NTSB is withholding pursuant to Exemptions 2 and 3 of the FOIA. 5 U.S.C. § 552(b)(2), (3).

    c.  Exhibit 4 contains descriptions of the 154 pages of records and 64 photographs that the NTSB is withholding pursuant to Exemptions 2 and 4 of the FOIA. 5 U.S.C. § 552(b)(2), (4).

    d.  Exhibit 5 contains a description of the one (1) page of a record that the NTSB is withholding in full pursuant to Exemptions 2, 3, 4, and 5 of the FOIA. 5 U.S.C. § 552(b)(2), (3), (4), and (5).

    e.  Exhibit 6 contains descriptions of the five (5) pages of records that the NTSB is withholding pursuant to Exemptions 2, 3, and 5 of the FOIA. 5 U.S.C. § 552(b)(2), (3), (5).

    f.  Exhibit 7 contains descriptions of the seven (7) pages of records that the NTSB is withholding pursuant to Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5).

    g.  Exhibit 8 contains descriptions of the three (3) pages of records that the NTSB is withholding pursuant to Exemption 6 of the FOIA.  5 U.S.C. § 552(b)(6).

82. The descriptions contained in Exhibits 1 – 8 of these records constitute the NTSB's compliance with the widely accepted, court-ordered requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this _____14th_____ day of September, 2006, in Washington, D.C.

_____
Melba D. Moye
FOIA Officer