**Exhibit 4**
**Records Exempt from Disclosure Pursuant to Exemptions 2 and 4**
**5 U.S.C. § 552(b)(2), (4)**

EXHIBIT:     4

DOCUMENT NUMBER:     NTSB Record 9

DATE OF DOCUMENT:     March 16, 2001

TOTAL NUMBER OF PAGES:     5

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 2

TOTAL NUMBER OF REDACTED PAGES:     3

DESCRIPTION OF DOCUMENT:   E-mail Correspondence Containing Commercially Valuable

Information


This record contains e-mail correspondence that the NTSB received from Sikorsky, Inc.

regarding NTSB Investigation No. IAD00WA029, which crashed near Indonesia on March 8,

2000.  The NTSB is withholding the last two pages of the five-page e-mail; the NTSB released

redacted versions of the first three pages of the e-mail.  Pages 90-92 of the packet of released

records contain the first three pages of the e-mail.

The three redacted pages contain names of Sikorsky employees, references to certain

reports, and discussion of specific aircraft parts.  As listed in the chart at Exhibit 1, and explained

in the Declaration of NTSB FOIA Officer Melba D. Moye, included herein, the NTSB considers

this redacted information to be exempt from disclosure pursuant to Exemptions 2 and 4 of the

FOIA.

Regarding the two pages that the NTSB has withheld from disclosure entirely, these

pages contain detailed descriptions of certain components of a Sikorsky helicopter, and plans for

the investigation of certain components.  These descriptions include detailed information

regarding the manufacture of these components, and the components' unique characteristics,

such as the products that Sikorsky uses for the components, and the way in which Sikorsky assembles the components. This record clearly contains commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

This e-mail correspondence that Sikorsky sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this correspondence, which contains detailed descriptions of aircraft components that are commercially valuable, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components if they believed the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents

that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the email correspondence at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB oversaw Investigation No. IAD00WA029, it obtained this e-mail correspondence discussed above without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the Safety Board was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence containing commercially sensitive information to the NTSB, in order to clarify the status of this e-mail. Sikorsky specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to

the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly.   When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the two pages of the record discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public.   The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold two pages of the e-mail record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:     4

DOCUMENT NUMBER:     NTSB Record 10

DATE OF DOCUMENT:     August 6, 2001

TOTAL NUMBER OF PAGES:     12

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 12

TOTAL NUMBER OF REDACTED PAGES:     0

DESCRIPTION OF DOCUMENT:   E-mail Correspondence and Manufacturer Report


This record contains a two-page e-mail message from a Sikorsky employee to a foreign investigator-in-charge, as well as a Manufacturer Report, regarding NTSB Investigation No. IAD01WA015, which involved a Sikorsky helicopter that crashed near P'ohang, Korea, on July 5, 2001.  The NTSB is withholding both the e-mail correspondence transmitting the report, as well as the report itself.

The two-page e-mail correspondence contains two messages: an original message and a "forwarded" message.  The more recent, forwarded message contains a correction to the attached report, while the original message contains inquiries about the status of certain aspects of the investigation.  Both distinct messages are marked "Private."  The messages, in conjunction with the manufacturer's report, contain information that Sikorsky Aircraft Corporation voluntarily provided to the NTSB, but would not customarily release to the public.

The aforementioned manufacturer's report contains the following language on the cover page:

> The information and data contained herein is proprietary to Sikorsky Aircraft Corporation.  It is provided voluntarily and in strict confidence at the request of the Korean Ministry of Construction & Transportation – Civil Aviation Bureau accepted on that basis with express agreement that the referenced reports and this

> document will be restricted to the official use of the Korean Ministry of
> Construction & Transportation – Civil Aviation Bureau and will not be released to
> any person or persons outside the Korean Ministry of Construction &
> Transportation – Civil Aviation Bureau without the written consent of Sikorsky
> Aircraft Corporation.

The cover page also contains the date of the report, the name of the Sikorsky employee who

prepared the report, the location and date of the accident; the serial number, registration number,

model number, and operator of the aircraft; and the report number.  The report consists of an

abstract section, an introduction, an analysis section that includes investigative information

regarding the history, maintenance, and analyses of specific components of the aircraft, and a

conclusions section and a recommendations section.  The report is 10 pages.

The NTSB has withheld both the e-mail correspondence and the manufacturer's report

from disclosure, because these pages contain detailed descriptions of certain components of a

Sikorsky helicopter, and Sikorsky would not customarily release such descriptions to the public.

These descriptions include detailed information regarding the manufacture of these components,

and the components' unique characteristics, such as the products that Sikorsky uses for the

components, and the way in which Sikorsky assembles the components.  This record clearly

contains commercially sensitive information that Sikorsky would not customarily release to the

public; if the NTSB released this information, then manufacturers and other party members such

as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill

its statutory mission.  Therefore, this information is exempt from disclosure under Exemptions 2

and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are

"related solely to the internal personnel rules and practices of an agency."  Id. § 552(b)(2).

Courts have long interpreted this exemption to encompass two categories of information: internal

matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail correspondence and manufacturer's report that Sikorsky sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains detailed descriptions of aircraft components that are commercially valuable, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence and manufacturer's report concerning IAD01WA015, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under

the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD01WA015, it obtained this aforementioned e-mail correspondence and manufacturer's report without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence and accompanying report containing commercially sensitive information to the NTSB, in order to clarify the status of this e-mail correspondence and manufacturer's report. Sikorsky specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence and report. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the 12-page record discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to

5

the public.  The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and,

consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 11

DATE OF DOCUMENT:    October 12, 1999

TOTAL NUMBER OF PAGES:    5

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 5

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    Memorandum in Sikorsky Product Safety Division
Regarding Aircraft Mishap and Incident Notifications


This record consists of five pages of internal correspondence circulated among
employees in Sikorsky's Product Safety office regarding the procedures for investigations of
aircraft mishaps and incidents.  The record contains how-to information, as well as two sample
forms that provide spaces for answers to specific questions regarding any accident, incident, or
mishap of a Sikorsky aircraft.  The final page contains a list of several names of Sikorsky
employees, and their office locations.  The first page of this memorandum contains the large
heading, "INTERNAL CORRESPONDENCE."  The NTSB is withholding the five-page
document in full.

The NTSB has withheld this entire record from disclosure, because this record contains
information unique to Sikorsky's procedures for handling incidents and mishaps concerning
Sikorsky's products, and Sikorsky would not customarily release such information to the public.
The description of these procedures includes detailed information regarding which questions
investigators should ask that are specific to Sikorsky aircraft.  This record clearly contains
internal information that Sikorsky would not customarily release to the public; if the NTSB

released this information, then manufacturers and other party members such as Sikorsky would

no longer voluntarily provide the information that the NTSB requires to fulfill its statutory

mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the

FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related

solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have

long interpreted this exemption to encompass two categories of information: internal matters of a

relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which

would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964

F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of

exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and

commercial or financial information obtained from a person [that is] privileged or confidential."

5 U.S.C. § 552(b)(4).

This internal memorandum that Sikorsky provided to the NTSB clearly satisfies both

Exemptions 2 and 4. Disclosure of this information, which contains detailed instructions

concerning how to conduct investigations for Sikorsky products, would impair the NTSB's

ability to have direct access to any such information from parties to an investigation in the future.

If the NTSB released this information, parties to NTSB investigations would no longer provide

the NTSB with access to critical information regarding the way in which they conduct

investigations of their products, which would include information regarding the manufacture and

unique physical characteristics of their aircraft components, if they believed the NTSB would

release such information. Such information is critical to the NTSB in almost all investigations of

accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of

the aforementioned internal memorandum which Sikorsky voluntarily provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA.    5 U.S.C. § 552(b)(4).    Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA.    Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992).    When the NTSB has assisted with investigations regarding Sikorsky aircraft, it obtained this aforementioned internal memorandum without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the Safety Board was wholly voluntary.    The NTSB contacted Sikorsky in order to clarify the status of this internal memorandum.    Sikorsky specifically stated that it would not customarily release this record to the public, and stated that the record contained sensitive details about Sikorsky's business process.    This statement satisfies the Exemption 4 requirements that the D.C. Circuit articulated in Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this record.    In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information.    When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith.    In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all

submitters even-handedly.  When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the five-page record discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the record to the public.  The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 12

DATE OF DOCUMENT:    September 26, 2000

TOTAL NUMBER OF PAGES:    6

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 6

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    E-mail Correspondence and Memorandum Regarding

Acoustic Analyses

This record contains a two-page e-mail message from a Sikorsky employee to a foreign investigator-in-charge, as well as a memorandum containing acoustic analysis of certain aspects of a helicopter accident that occurred near Kakap, Indonesia on March 8, 2000 (NTSB Investigation No. IAD00WA029). The NTSB is withholding both the e-mail correspondence transmitting the report, as well as the report itself.

The two-page e-mail correspondence contains one message that transmits the aforementioned report. This message contains a list of other technical reports. This e-mail message is marked "Private," and contains the following language at the beginning of the message:

> The information and data contained herein is proprietary to Sikorsky Aircraft Corporation. It is provided voluntarily and in strict confidence at the request of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation Commission and accepted on that basis, with the express agreement that this report and its attachments will be limited to the official use of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation and will not be released to any person or persons outside of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident

Investigation Commission without the prior written consent of Sikorsky Aircraft Corporation.

The Word document attached to the aforementioned e-mail contains the large heading, "INTERNAL CORRESPONDENCE," and contains sections entitled, "Summary," "Analysis," "Conclusions," and "Recommendations." The report includes one attachment, which is entitled, "Enclosure 1". The attachment consists of a chart that contains a timeline of events and a transcription of some dialogue, perhaps from either the cockpit voice recorder or from Air Traffic Control audiotapes. A note at the top of the attachment states that the purpose of the document is merely to provide a timeline for the events and approximate, not exact, text of the dialogue. The report is two pages, and the attachment consists of two pages.

The NTSB has withheld both the e-mail correspondence and the acoustic analysis report from disclosure, because these pages contain detailed descriptions of the methods Sikorsky used in analyzing the sounds from the accident, and in creating the timeline for the accident; overall, the NTSB is withholding this record because Sikorsky voluntarily provided the record to the NTSB, but would not customarily release such a report to the public. This record clearly contains internal, sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which

would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail correspondence and acoustic analysis report that Sikorsky sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains detailed descriptions of aircraft components that are commercially valuable, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence and report concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir.

1992).  When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence and acoustic analysis report without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary.  The NTSB contacted Sikorsky, in order to clarify the status of this e-mail correspondence and acoustics analysis report.  Sikorsky specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence and accompanying report.  In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information.  When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith.  In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly.  When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the six-page record discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public.  The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 13

DATE OF DOCUMENT:    September 26, 2000

TOTAL NUMBER OF PAGES:    2

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 2

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:   Duplicative E-mail Correspondence Regarding Submission
of Certain Reports


This record, which is essentially duplicative of the two-page e-mail discussed at Exh. 4, Record 12, contains a two-page e-mail message from a Sikorsky employee to a foreign investigator-in-charge, regarding the submission of reports that resulted from a helicopter accident that occurred near Kakap, Indonesia on March 8, 2000 (NTSB Investigation No. IAD00WA029). The NTSB is withholding the two-page e-mail correspondence as a separate record, even though the substantive correspondence in the e-mail is duplicative of the correspondence at Exh. 4, Record 12.

The two-page e-mail correspondence contains one original message that is duplicative of the message at Exh. 4, Record 12, as well as a forwarded message stating that Sikorsky had encountered some technical problems with the facsimile number through which they attempted to send the reports discussed in the e-mail. This e-mail message is marked "Private," and contains the following language at the beginning of the message:

> The information and data contained herein is proprietary to Sikorsky Aircraft Corporation. It is provided voluntarily and in strict confidence at the request of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation

Commission and accepted on that basis, with the express agreement that this report and its attachments will be limited to the official use of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation and will not be released to any person or persons outside of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation Commission without the prior written consent of Sikorsky Aircraft Corporation.

Unlike the record discussed at Exh. 4, Record 12, none of the reports listed in this e-mail correspondence are attached to the e-mail.

Even though this record does not include any technical reports, the listing and descriptions of the reports contain information that Sikorsky voluntarily submitted to the NTSB, and would not customarily release to the public. Specifically, the listing of reports indicates which aspects of the accident and components of the aircraft that Sikorsky analyzed closely. Release of this commercially sensitive information would show Sikorsky's investigation practices with regard to investigating accidents, incidents, and mishaps, and may lead the public to conclude that Sikorsky had formed preliminary determinations regarding which aspects and components were worthy of investigation.

As stated above, the NTSB is withholding this record because Sikorsky voluntarily provided the record to the NTSB, but would not customarily release such correspondence to the public. If the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a

relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail correspondence at issue from Sikorsky clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains detailed descriptions of reports written regarding aircraft components and investigation practices that are commercially valuable, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components if they believed the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir.

1992).    When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence and acoustic analysis report without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary.  The NTSB contacted Sikorsky, in order to clarify the status of this e-mail correspondence.    Sikorsky specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with <u>Critical</u> <u>Mass</u>, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence. Where the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information.  When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith.   In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly.  When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the record discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 14

DATE OF DOCUMENT:    August 1, 2002

TOTAL NUMBER OF PAGES:    1
TOTAL NUMBER OF PHOTOS:    4

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY:  1
TOTAL NUMBER OF PHOTOS WITHHELD ENTIRELY:  4

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:   E-mail Correspondence and Four Photographs of Wreckage


This record contains a one-page e-mail message and four photographs on two documents that are attached to the e-mail message, regarding NTSB Investigation No. IAD00WA029 from a Sikorsky employee to Mr. Tom Conroy, who served as the United States accredited representative for this investigation, which involved a helicopter accident that occurred near Kakap, Indonesia on March 8, 2000.   The NTSB is withholding the one-page e-mail correspondence transmitting the two attached documents, as well as the documents, which contain photographs.

The one-page e-mail correspondence contains one original message, which a Sikorsky employee "forwarded" twice.  Mr. Conroy received the e-mail message at the final point at which the Sikorsky employee forwarded it.  The Sikorsky employee included a "Sensitivity" category for the message, and selected "PRIVATE" as the appropriate category.  The e-mail message transmits two electronic documents, each of which contains two photographs.  The photographs in the first document depict parts of the aircraft wreckage upon recovery of the wreckage.   These photographs contain handwritten annotations that serve to numerically

categorize different parts of the aircraft wreckage, which is organized in a specific manner. The photographs in the second document both consist of close-ups of a specific aircraft part.

Both the e-mail transmitting these photographs and the photographs themselves are records that Sikorsky voluntarily submitted to the NTSB, and would not customarily release to the public. Specifically, the document containing the first two photographs depicts how Sikorsky organizes and categorizes wreckage, based on the unique characteristics of the aircraft at issue. The second document, which also contains two photographs, consists of zoomed-in images of a mechanical part of the aircraft. Both of these documents contain the photographs in digital format; given this format, any requester could easily disseminate the photographs and hypothesize about a considerable variety of commercially sensitive information, such as the measurements between certain portions of the aforementioned mechanical part, the weights of certain elements of the part, and the like. Release of this information commercially sensitive information would show Sikorsky's investigation practices with regard to investigating accidents, incidents, and mishaps, as well as depictions of mechanical parts that Sikorsky maintains in certain aircraft.

As stated above, the NTSB is withholding this record because Sikorsky voluntarily provided the record to the NTSB, but would not customarily release such e-mail correspondence and photographs to the public. These items clearly contain information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The record at issue from Sikorsky clearly satisfies both Exemptions 2 and 4 of the FOIA. Disclosure of this commercially valuable information, which consists of detailed photographs of aircraft parts and photographs that depict investigation practices regarding how to categorize certain aircraft parts, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence and photographs concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

4

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence and photographs without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, in order to clarify the status of this e-mail correspondence and documents containing photographs. Sikorsky specifically stated that it would not customarily release these items to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence. Where the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the e-mail correspondence and photographs discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 15

DATE OF DOCUMENT:    October 10, 2000

TOTAL NUMBER OF PAGES:    3
TOTAL NUMBER OF PHOTOS:    5

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY:  3
TOTAL NUMBER OF PHOTOS WITHHELD ENTIRELY:  5

TOTAL NUMBER OF REDACTED PAGES:        0

DESCRIPTION OF DOCUMENT:   E-mail Correspondence and Five Photographs


This record contains a three-page e-mail message and five photographs that are attached to the e-mail message, regarding NTSB Investigation No. IAD00WA029 from a Sikorsky employee to Mr. Tom Conroy, who served as the United States accredited representative for this investigation, which involved a helicopter accident that occurred near Kakap, Indonesia on March 8, 2000.  The NTSB is withholding the three-page e-mail correspondence transmitting the five attached photographs, as well as the photographs.

The three-page e-mail correspondence contains two complete messages: an original message and a reply to the original message.  Mr. Conroy received the e-mail message at the final point at which the Sikorsky employee replied to the original message.  The final message, through which Mr. Conroy received the correspondence and in which the aforementioned photographs are attached, contains the following language at the beginning of the message:

> The information and data contained herein is proprietary to Sikorsky Aircraft Corporation.  It is provided voluntarily and in strict confidence at the request of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation Commission and accepted on that basis, with the express agreement that this report and its attachments will be limited to the official use of the U.S. National

Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation and will not be released to any person or persons outside of the U.S. National Transportation Safety Board, Indonesian National Transportation Safety Committee and Aircraft Accident Investigation Commission without the prior written consent of Sikorsky Aircraft Corporation.

The original e-mail discussed above poses three distinct questions and states an opinion from a foreign investigator-in-charge. The reply to this e-mail message, which includes the disclaimer quoted above and the five attached photographs, contains specific opinions and preliminary information that includes information that Sikorsky would not customarily release to the public. This e-mail correspondence contains detailed assessments and preliminary opinions that incorporate commercially sensitive information from Sikorsky. In addition, the e-mail message transmits five digital photographs. Two of the digital photographs include zoomed-in images of specific parts of the aircraft. The remaining three photographs depict a separate component of a Sikorsky aircraft, and include measurements of the component.

Both the e-mail transmitting these photographs and the photographs themselves are records that Sikorsky voluntarily submitted to the NTSB, and would not customarily release to the public. Specifically, the e-mail correspondence conveys information regarding how Sikorsky organizes and conducts certain aircraft-specific investigations. Moreover, the two digital photographs containing close-ups of a specific part are not the type of items that Sikorsky would release to the public; given the digital format of the photographs, any requester could easily disseminate the photographs and hypothesize about a considerable variety of commercially sensitive information, such as the measurements between certain portions of the aforementioned part, the weights of certain elements of the part, and the like. Similarly, the three aforementioned digital photographs contain measurements of a certain aircraft component, and not only are the types of items that Sikorsky would not customarily release to the public, but also show the

opinions and deliberations of the Sikorsky investigative team who took the photographs, because they isolate a certain part and promote the hypothesis that Sikorsky's investigative team thought that measurements of this part may be worthy of specific investigation.   Release of this commercially sensitive information would show Sikorsky's investigation practices with regard to investigating accidents, incidents, and mishaps, as well as depictions of mechanical parts that Sikorsky maintains in certain aircraft.

As stated above, the NTSB is withholding this e-mail correspondence and the attached photographs because Sikorsky voluntarily provided this record to the NTSB, but would not customarily release such items to the public.   If the NTSB released these items, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission.  Therefore, this record is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2).   Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2").  See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption).   Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The record at issue from Sikorsky clearly satisfies both Exemptions 2 and 4 of the FOIA. Disclosure of this commercially valuable information, which consists of detailed e-mail

correspondence containing commercially sensitive information, as well as photographs of aircraft parts and photographs that depict investigation practices regarding measurements of certain aircraft parts, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components if they believed the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence and photographs concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence and photographs without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, in order to clarify the status of this e-mail correspondence and attached photographs. Sikorsky specifically stated that it would not customarily release these items to the public, and articulated the commercial disadvantage

they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence and the attached photographs. Where the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the e-mail correspondence and photographs discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:     4

DOCUMENT NUMBER:     NTSB Record 16

DATE OF DOCUMENT:     September 27, 2001

TOTAL NUMBER OF PAGES:     29

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 29

TOTAL NUMBER OF REDACTED PAGES:     0

DESCRIPTION OF DOCUMENT:   E-mail Correspondence and Attached Preliminary Reports


This record contains a two-page e-mail message from a Sikorsky employee to several NTSB employees, a separate one-page e-mail message from a Sikorsky employee, and four attached preliminary reports regarding NTSB Investigation No. IAD00WA029, which involved a Sikorsky helicopter that crashed near Matak, Indonesia, on March 8, 2000.  The NTSB is withholding both the e-mail correspondence transmitting the reports and letter, as well as the attachments themselves.

The two-page e-mail correspondence contains three messages: an original message and two "forwarded" messages.  The second of these messages contains a correction to the original correspondence, stating that the sender of the original message had included an e-mail message in one of the reports in error.  Even though the attached report in question, entitled "Enclosure 9" contains a document that Sikorsky did not intend to include, the NTSB is nonetheless withholding this document in accordance with Exemptions 2 and 4.  The e-mail messages transmitting these reports are marked "Private."  The messages, in conjunction with the reports, contain information that Sikorsky Aircraft Corporation voluntarily provided to the NTSB, but would not customarily release to the public.

The one-page, separate e-mail message transmits the attachment containing the letter, discussed *infra*, from a Sikorsky employee to several persons who participated in the investigation, including foreign investigators. The e-mail correspondence contains a very brief description of the contents of the letter, which is discussed below, and is also designated as "Private." In the interest of not submitting duplicative exhibits to the Court, and because the e-mail transmits one of the documents below, the NTSB decided to combine this e-mail record with the other items herein, and refrain from counting the attached letter twice. Overall, this e-mail message conveying the letter is exempt from disclosure pursuant to Exemptions 2 and 4 of the FOIA, because Sikorsky voluntarily submitted this record to the NTSB, and specifically stated that it would not customarily release this document to the public.

The e-mail correspondence contains detailed information regarding the method by which Sikorsky examines certain aircraft parts. The correspondence also contains speculation and preliminary opinions regarding these examinations. In addition, the correspondence contains a descriptive list of three of the reports attached that are attached to the e-mail. The original e-mail transmitting these reports asks for the recipients of the e-mail message to provide comments on the reports; therefore, the NTSB received these reports in draft format.

The first attachment to the e-mail described above is entitled, "Enclosure (7) Summary," and describes the examination of a specific portion of a main component of the aircraft. This five-page document, the first page of which consists of a cover page is organized in the following sections: Abstract, Observations, Analysis, and Conclusions. The "Observations" and "Analysis" categories of the preliminary report are further organized into specific sub-categories, which are unique to the component that is the subject of the document. The first page of the document is a cover page, while the following four pages of the document contain text regarding

the investigation of a certain component of the aircraft. The information included in this report is specific to Sikorsky and describes which categories of the specific component that Sikorsky examined, and the particular issues for which Sikorsky searched in examining each portion the component. The make-up of the component, as well as the order in which Sikorsky examined every portion of the component, is specific to the type of Sikorsky aircraft that was the subject of Investigation No. IAD00WA029.

The second attachment to the e-mail described above is entitled, "Enclosure (8) Summary," and is similar to the attachment entitled, "Enclosure (7) Summary." The document addresses the same main component that Enclosure 7 addressed, but provides more detailed information regarding the exact way in which Sikorsky personnel examined the subject part. This document consists of 11 pages total, but one of these pages merely contains a page number, and the first page merely includes the title and the number of pages of the report. The document is organized into categories, the majority of which is designated by a specific heading that indicates the part of the aircraft that Sikorsky examined. Only one category, entitled, "Assembly checks" does not include the name of a specific aircraft part. The document also includes three charts, each of which is included under the appropriate heading. These charts contain measurements and numerical data that are certainly commercially sensitive and specific to the type of Sikorsky aircraft that was the subject of Investigation No. IAD00WA029. The final page of the document contains a black-and-white photograph of specific portions of the wreckage, which Sikorsky personnel carefully arranged in a manner to show the parts' locations on the aircraft. The page immediately preceding the final page of the document contains three paragraphs under the heading, "Notes on attached photo." Overall, this draft report contains data

and information that Sikorsky would not customarily release to the public, and that would cause Sikorsky commercial harm if released.

The third attachment consists of eight pages, including the page that a Sikorsky employee mistakenly included, all of which contain specific information that Sikorsky would not customarily release to the public. This attachment is entitled, "Enclosure (9) Summary" and describes the examination of certain components within a specific part of the aircraft. Only three pages of the report include text; the remaining pages consist of drawings, diagrams, or graphs regarding commercially sensitive information about specific components of a main part. Each of the diagrams of the components described in this report contains numerical measurements of angles, lengths, and widths regarding the arrangement of these components. One of the pages that includes a diagram includes an entire list of specific measurements. In addition, the only graph included in this document contains a description of an arithmetic equation that describes the operation of a specific component. Finally, regarding the pages that contain text, each of these pages describes the assembly and proprietary structure of the components in question. The text describes the investigative process in which Sikorsky employees engaged in order to examine the subject components as thoroughly as possible. Each of these sections of text contains information that Sikorsky would not customarily release to the public.

The fourth attachment to the e-mail correspondence described above is a letter from a Sikorsky employee to a foreign investigator. The letter, which is two pages in length, describes each of the preliminary reports, and findings in those reports, discussed above. The letter describes the disassembly of certain parts, witnesses who were present while investigators disassembled the parts, the investigation procedure for the parts, and a summary of the preliminary conclusions regarding each of the parts.

The NTSB has withheld from disclosure the e-mail correspondence and the reports and letter described above, because these pages contain detailed descriptions of certain components of a Sikorsky helicopter, and Sikorsky would not customarily release such descriptions to the public. These descriptions include detailed information regarding the manufacture of these components, and the components' unique characteristics, such as the products that Sikorsky uses for the components, measurements and other numerical data regarding the components and products, and the way in which Sikorsky assembles and disassembles certain components. These documents clearly contain commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail correspondence, reports, and letter described above that Sikorsky sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains

detailed descriptions of aircraft components that are commercially valuable, would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components if they believed the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence, reports, and letter concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence, draft reports, and letter without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence containing commercially sensitive information to the NTSB, in order to clarify the status of this e-mail correspondence, draft reports, and letter. Sikorsky specifically stated that it would not customarily release these pages to the public, and

articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of the e-mail correspondence, draft reports, and letter at issue herein. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the e-mail messages, each of the draft reports, and the letter discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 17

DATE OF DOCUMENT:    May 2, 2000

TOTAL NUMBER OF PAGES:    21

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 21

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    E-mail Correspondence and Attached Presentation


  This record contains a one-page e-mail message from a Sikorsky employee to a foreign investigator and to Mr. Tom Conroy, who was an investigator at the NTSB, as well as one 20-page PowerPoint presentation, regarding NTSB Investigation No. IAD00WA029, which involved a Sikorsky helicopter that crashed near Matak, Indonesia, on March 8, 2000.  The NTSB is withholding both the e-mail correspondence transmitting the presentation, as well as the presentation itself.

  The one-page e-mail message describes the attached presentation regarding Investigation No. IAD00WA029, and states that the attached copy of the presentation is intended only for the e-mail recipients to whom the Sikorsky employee sent the e-mail: "Limited distribution only for NTSC/AAIC/Sikorsky/NTSB Investigation Preliminary Effort."   The e-mail message also discusses the current status of the investigation, and the next steps for the investigation.

  The PowerPoint presentation attached to the e-mail message described above is entitled, "Matak Indonesia.ppt," and provides general information regarding the accident, a brief history of the flight, recovery of the wreckage, and other aspects of the investigation.  The presentation also contains several names of Sikorsky employees, and their duties on the investigation and/or

professional titles at Sikorsky Aircraft Corporation. The presentation also includes personal information regarding the Pilot-in-Command and First Officer of the aircraft. Finally, the presentation includes preliminary findings regarding certain aspects of the investigation and circumstances of the accident, as well as a plan to examine specific parts of the aircraft further. Overall, the NTSB received this presentation from Sikorsky that Sikorsky would not customarily release to the public, as well as personal information that would not be subject to disclosure under the FOIA regarding the pilots of the aircraft, and preliminary plans and findings that reflect the deliberations of the investigators involved.

The NTSB has withheld from disclosure the e-mail correspondence and the PowerPoint presentation described above, because these documents contain detailed descriptions of certain components of a Sikorsky helicopter, as well as plans for conducting the investigation, which is information that Sikorsky does not distribute to the public. This presentation clearly contains commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of

exemption).    Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail message and attached presentation described above that Sikorsky sent to the NTSB clearly satisfies Exemptions 2 and 4, and parts of both documents also satisfy the requirements of Exemptions 5 and 6 of the FOIA.  Disclosure of this information, which contains detailed descriptions of how Sikorsky will carry out an investigation, names of Sikorsky employees who will be involved in certain aspects of the investigation, and a general plan for the investigation that reflects the investigative team's deliberations, would certainly impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation.  If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, and information regarding their proposed plans for conducting an investigation, because they would believe that the NTSB would release such information.    Such information is critical to the NTSB in almost all investigations of accidents.  Therefore, release of the aforementioned e-mail correspondence or presentation concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the e-mail message and presentation at issue are both exempt from disclosure based on Exemption 4 of the FOIA.  5 U.S.C. § 552(b)(4).  Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from

disclosure under the FOIA. <u>Critical Mass Project v. Nuclear Regulatory Comm'n</u>, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence and presentation without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence containing commercially sensitive information to the NTSB, in order to clarify the status of this e-mail message and accompanying presentation. Sikorsky specifically stated that it would not customarily release either of these items to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with <u>Critical Mass</u>, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence and presentation at issue herein. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

In addition, two of the pages in the presentation, as well as some of the correspondence in the e-mail message described above, would also be exempt from disclosure pursuant to Exemption 6 of the FOIA. Exemption 6 of the FOIA allows agencies to withhold "personnel and

medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Id. Courts have long held that agencies must balance the public interest in disclosure against the privacy interest at stake in order to make a release determination under the FOIA. See, e.g., Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976). With regard to the pages from the records described above, there is little public interest in disclosing the personal information that these pages contain. Conversely, the privacy interest in the three pages that would be exempt pursuant to Exemption 6 outweighs any public interest in the release of the pages, as the information contained therein does not show the Safety Board's functions or fulfillment of its statutory mandate. United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773, 775 (1989).

In addition, the one-page e-mail message described above and seven pages of the aforementioned 20-page PowerPoint presentation contain preliminary information that reflects the NTSB's and Sikorsky investigators' deliberations in the investigation of the helicopter accident that was the subject of NTSB Investigation No. IAD00WA029. As such, these pages would also be exempt from disclosure pursuant to Exemption 5 of the FOIA, which exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982). Release of such information would result in confusion and compromise the NTSB's work. In addition, material reflecting the NTSB's deliberative process is exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).

6

Here, the NTSB conducted a detailed review of the e-mail message and attached presentation discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA. In addition, in the event that the Court would disagree with the NTSB regarding the Board's application of these exemptions, the NTSB would also seek to withhold certain pages of this record from disclosure pursuant to Exemptions 5 and 6 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 18

DATE OF DOCUMENT:    October 9, 2001

TOTAL NUMBER OF PAGES:    4

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 4

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    E-mail Correspondence and Attached Letter Regarding
EEC Report

 

 

This record contains a two-page e-mail message from a Sikorsky employee to a foreign investigator-in-charge, as well as a letter to the foreign investigator that describes an "EEC" Report, regarding NTSB Investigation No. IAD01WA015, which involved a Sikorsky helicopter that crashed near P'ohang, Korea, on July 5, 2001. The NTSB is withholding both the e-mail correspondence transmitting the letter, as well as the letter itself.

The two-page e-mail correspondence contains two messages: an original message and a "forwarded" message. The original message transmitted the attached letter to the foreign investigator. Both messages are marked "Private." The messages, in conjunction with the letter describing the EEC investigation report, contain information that Sikorsky Aircraft Corporation voluntarily provided to the NTSB, but would not customarily release to the public. The letter contains statements, in list format, regarding EEC findings regarding a variety of aspects, and speculation and possibilities regarding the possible causes of certain failures that occurred regarding the accident. The letter consists of two pages.

The NTSB has withheld both the e-mail correspondence and the aforementioned letter from disclosure, because these items contain detailed descriptions of certain components of a Sikorsky helicopter and specific information regarding the method in which Sikorsky conducts certain investigations; overall, Sikorsky would not customarily release such descriptions to the public. These descriptions include detailed information regarding certain aircraft components' unique characteristics, such as the way in which Sikorsky assembles the components. This record clearly contains commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail correspondence and letter describing the EEC report that Sikorsky sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains detailed descriptions of aircraft components that are commercially valuable, would impair the

NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect, or maintenance issue. Therefore, release of the aforementioned e-mail correspondence and letter describing the EEC report concerning IAD01WA015, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the record at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD01WA015, it obtained this aforementioned e-mail correspondence and attached letter without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence and accompanying letter containing commercially sensitive information to the NTSB, in order to clarify the status of this record. Sikorsky specifically stated that it would not customarily release these pages to the public, and articulated the commercial

disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence and report. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the four-page record discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 19

DATE OF DOCUMENT:    July 3, 2000

TOTAL NUMBER OF PAGES:    3

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 3

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    E-mail Correspondence Regarding Materials Analysis


This record consists of a three-page e-mail message from a Sikorsky employee to Mr. Tom Conroy, who was an investigator at the NTSB, regarding NTSB Investigation No. IAD00WA029, which involved a Sikorsky helicopter that crashed near Matak, Indonesia, on March 8, 2000. The NTSB is withholding the three-page e-mail record in full.

This three-page record includes three separate e-mail messages. The original e-mail message includes a preliminary determination of Sikorsky employees based on engineering examinations, and was later "forwarded." The second e-mail message includes several paragraphs describing Sikorsky's plan for ordering materials failure analyses for certain aircraft parts. Finally, the third e-mail in the chain did not include any message text, but merely shows the occurrence of "forwarding" the correspondence from a Sikorsky employee to Mr. Conroy. Overall, the e-mail correspondence at issue discusses specific information about the subject aircraft's components, the current status of the investigation, and the next steps for the investigation with regard to these components.

The NTSB has withheld from disclosure the e-mail correspondence described above because this correspondence contains detailed descriptions of certain components of a Sikorsky

helicopter, as well as future plans for conducting the investigation. This presentation clearly contains commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail correspondence described above that Sikorsky sent to the NTSB clearly satisfies Exemptions 2 and 4 of the FOIA. Disclosure of this information, which contains detailed descriptions and analyses of commercially valuable aircraft components, and Sikorsky's plan for investigating certain components, would certainly impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, and information regarding their proposed plans for

conducting an investigation, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents. Therefore, release of the aforementioned e-mail correspondence concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the e-mail correspondence at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence containing commercially sensitive information to the NTSB, in order to clarify the status of this e-mail correspondence. Sikorsky specifically stated that it would not customarily release such information to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the correspondence under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence at issue herein. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not

customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted a detailed review of the e-mail correspondence discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 20

DATE OF DOCUMENT:    October 2, 2000

TOTAL NUMBER OF PAGES:    1

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 1

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    E-mail Correspondence Regarding Materials Analysis


This record consists of a one-page e-mail message from a Sikorsky employee to Mr. Tom Conroy, who was an investigator at the NTSB, and two foreign investigators, regarding NTSB Investigation No. IAD00WA029, which involved a Sikorsky helicopter that crashed near Matak, Indonesia, on March 8, 2000.  The NTSB is withholding the one-page e-mail record in full.

This e-mail record includes one single e-mail message, which discusses preliminary findings of materials laboratory employees at Sikorsky.  This e-mail contains terms of art that describe the examination of certain components, and speculates that certain findings may be consistent with a particular set of circumstances.  Overall, such information is preliminary, and Sikorsky voluntarily provided this information to the NTSB.

The NTSB has withheld this e-mail message from disclosure because this message contains detailed descriptions of certain components of a Sikorsky helicopter, as well as speculation and opinions regarding other components and aspects of the investigation.  This message clearly contains commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that

the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The e-mail message described above that Sikorsky sent to the NTSB clearly satisfies Exemptions 2 and 4 of the FOIA. Disclosure of this information, which contains detailed descriptions and analyses of commercially valuable aircraft components, would certainly impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, and information regarding their proposed plans for conducting an investigation, because they would believe that the NTSB would release such information to the public. Such information is critical to the NTSB in almost all investigations of accidents. Therefore, release of the aforementioned e-mail correspondence concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable

circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the e-mail message at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned e-mail correspondence without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this e-mail correspondence containing commercially sensitive information to the NTSB, in order to clarify the status of this e-mail message. Sikorsky specifically stated that it would not customarily release such information to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the message under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence at issue herein. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible,

the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted a detailed review of the e-mail message at issue herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:     4

DOCUMENT NUMBER:     .NTSB Record 21

DATE OF DOCUMENT:     February 2, 2001

TOTAL NUMBER OF PAGES:     4

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 4

TOTAL NUMBER OF REDACTED PAGES:     0

DESCRIPTION OF DOCUMENT:   E-mail Correspondence Regarding Sikorsky Aircraft Safety

Investigation Report


This record consists of a four-page e-mail message from a Sikorsky employee to Mr. Tom Conroy, who was an investigator at the NTSB, and several foreign investigators, regarding NTSB Investigation No. IAD00WA029, which involved a Sikorsky helicopter that crashed near Matak, Indonesia, on March 8, 2000.   The NTSB is withholding the four-page e-mail record in full.

This four-page record consists of a single, lengthy e-mail message, which describes the status of a pending engineering report, and contains excerpts from the preliminary "Technical Review Team Report" for Investigation No. IAD00WA029.   The beginning of the e-mail message contains the following text:

* Please – Do Not Forward Correspondence – For Your Reference Only – Pending Official SA Investigation Report submittal to NTSB - NTSC/AAIC

The e-mail is also designated as "Private."

The excerpts of this aforementioned preliminary report contained in this e-mail are organized under the main heading, "Summary of Team Findings," and under subheadings entitled, "Summary," "Findings," "Scenario," "Evidence," "Issues with this scenario," and

"Recommendations." The majority of the information organized into these categories is in the format of bulleted lists. Although some parts of the text in this e-mail message refer to accompanying exhibits and other documents, the beginning of the e-mail also states, "Evidence Reviewed (Info: Note – Reference/Enclosures) Not Provided in this correspondence." Therefore, this record is limited to the single e-mail message containing excerpts from the preliminary Technical Review Team report.

The NTSB has withheld from disclosure the e-mail message described above because this message contains detailed descriptions of certain components of a Sikorsky helicopter, as well as future plans for conducting the investigation. The preliminary report makes specific comparisons with regard to the structure of certain components. This e-mail message clearly contains commercially sensitive information that Sikorsky would not customarily release to the public; if the NTSB released this information, then manufacturers and other party members such as Sikorsky would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, this information is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and

3

commercial or financial information obtained from a person [that is] privileged or confidential."

5 U.S.C. § 552(b)(4).

The e-mail message described above that Sikorsky sent to the NTSB clearly satisfies Exemptions 2 and 4 of the FOIA. Disclosure of this information, which contains detailed descriptions and analyses of commercially valuable aircraft components, and Sikorsky's method of and plan for investigating certain components, would certainly impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, and information regarding their proposed plans for conducting an investigation, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents. Therefore, release of the aforementioned e-mail correspondence concerning IAD00WA029, which Sikorsky provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the e-mail message at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. IAD00WA029, it obtained this aforementioned preliminary report via an e-mail message without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to

4

the NTSB was wholly voluntary. The NTSB contacted Sikorsky, which voluntarily provided this commercially sensitive information to the NTSB, in order to clarify the status of this e-mail message. Sikorsky specifically stated that it would not customarily release such information to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the correspondence under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this e-mail correspondence at issue herein. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted a detailed review of the information contained in the e-mail message discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 22

DATE OF DOCUMENT:    February 9, 1998

TOTAL NUMBER OF PAGES:    54

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 54

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    Memorandum Regarding Proposed Test Plan for
Engineering Examinations; Attachment Containing
Numerical Data Regarding EEC


This record consists of a 14-page memorandum from an engineer at Hamilton Standard[1]
to the investigation team for NTSB Investigation No. DCA98WA014, which evaluated a
Sikorsky helicopter accident that occurred in the North Sea on December 20, 1997. This
memorandum sets forth a "Proposed Test Plan" for four Electronic Engine Control (EEC) units,
and includes a 40-page attachment containing numerical data from a particular EEC unit. The
text in this memorandum is organized into two main categories: Pre-Investigation Procedure and
Detailed Investigation Procedure. The fifth page of this memorandum also includes a flowchart
that specifically describes each step that engineers should fulfill in performing EEC
examinations. The memorandum also contains a two-page appendix, entitled, "Input Power
Continuity Test Plan." This appendix contains numerical data regarding certain voltages and
power output measurements, and lists signals that engineers should verify in performing EEC
examinations. The memorandum also contains seven (7) pages from the Hamilton Standard
Component Maintenance Manual, which provides maintenance instructions for the EEC132-1

_____

[1] The appropriate division of "Hamilton Standard" now operates as "Hamilton Sundstrand."

Electronic Engine Control. These pages contain comprehensive, numbered diagrams with labels. The attached 40-page document contains no text, but merely consists of one lengthy chart entitled, "EEC132." The chart contains numerical values that are specific to the Hamilton Sundstrand EEC132.

The NTSB received this memorandum and its accompanying attachments from Hamilton Standard, Inc. regarding NTSB Investigation No. DCA98WA014. The memorandum and attachments contain specific maintenance information regarding how Hamilton Sundstrand tests and investigates certain components; such information is commercially sensitive, and release of this information would cause Hamilton Sundstrand to suffer a commercial disadvantage in the marketplace for such aircraft components. For example, the Component Maintenance Manual, which was attached to the memorandum described above, is only available from Hamilton Sundstrand for a fee. If the NTSB released this Manual to the public under the FOIA, then any FOIA requester would be able to sell the Manual for profit or post the Manual on the Internet, thereby causing significant commercial harm to Hamilton Sundstrand. As such, the NTSB is withholding the memorandum and attachments in full, as these pages are exempt from disclosure pursuant to Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and

commercial or financial information obtained from a person [that is] privileged or confidential."
5 U.S.C. § 552(b)(4).

This memorandum and accompanying attachments that Hamilton Standard, Inc. sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains detailed descriptions and diagrams of Hamilton Sundstrand components, procedures for testing and evaluating Hamilton Sundstrand parts, and test results in the form of numerical data regarding a Hamilton Sundstrand part, would significantly harm Hamilton Sundstrand, and would thereby impair the NTSB's ability to have direct access to any commercially valuable information from parties to future investigations. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect or maintenance issue. Therefore, release of the aforementioned memorandum and attachments concerning DCA98WA014, which Hamilton Standard, Inc. provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the memorandum and attachments at issue are exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB oversaw Investigation No. DCA98WA014, it obtained this

4

memorandum and its accompanying attachments without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Hamilton Sundstrand, which voluntarily provided this commercially sensitive information to the NTSB, in order to clarify the status of this memorandum and attachments. Hamilton Sundstrand specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Hamilton Sundstrand's response to the Board's inquiry regarding the release of this memorandum and its accompanying attachments. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and in recognition of the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB proceeds with disclosure.

Here, the NTSB conducted such a review of the memorandum and attachments discussed herein, in conjunction with Hamilton Sundstrand's statement that it would not customarily release the information to the public. The NTSB determined that Hamilton Sundstrand satisfied the requirements of Exemption 4, and, consequently, decided to withhold this record based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 23

DATE OF DOCUMENT:    February 12, 1998

TOTAL NUMBER OF PAGES:    7

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 7

TOTAL NUMBER OF REDACTED PAGES:    0

DESCRIPTION OF DOCUMENT:    Memorandum Regarding Proposed Test Plan for

Engineering Examinations

This record consists of a seven-page memorandum from an engineer at Hamilton Standard[1] to the investigation team for NTSB Investigation No. DCA98WA014, which involved a Sikorsky helicopter accident that occurred in the North Sea on December 20, 1997. This memorandum is almost entirely duplicative of the February 9, 1998 memorandum described at Record 22, Exh. 4. The memorandum sets forth a "Proposed Test Plan" for four Electronic Engine Control (EEC) units, and is organized into two main categories: Pre-Investigation Procedure and Detailed Investigation Procedure. The fifth page of this memorandum also includes a flowchart that specifically describes each step that engineers should fulfill in performing EEC examinations. The only differences between this version of the Proposed Test Plan memorandum and the memorandum dated February 9, 1998 is the date on the memorandum, and the fact that the memorandum contains some brief additional information under the "Detailed Investigation Procedure" heading. This version of the Proposed Test Plan memorandum also contains pages from the Hamilton Standard Component Maintenance Manual, but those pages are exactly duplicative of the Manual as described at Record 22, Exh. 4.

---

[1] The appropriate division of "Hamilton Standard" now operates as "Hamilton Sundstrand."

The NTSB received this memorandum from Hamilton Standard, Inc. regarding NTSB Investigation No. DCA98WA014. The memorandum contains specific maintenance information regarding how Hamilton Sundstrand tests and investigates certain components; such information is commercially sensitive, and release of this information would cause Hamilton Sundstrand to suffer a commercial disadvantage in the marketplace for such aircraft components. As such, the NTSB is withholding the memorandum in full, as this record is exempt from disclosure pursuant to Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

This memorandum that Hamilton Standard, Inc. sent to the NTSB clearly satisfies both Exemptions 2 and 4. Disclosure of this information, which contains detailed descriptions of Hamilton Sundstrand components, and procedures for testing and evaluating Hamilton Sundstrand parts, would significantly harm Hamilton Sundstrand, and would thereby impair the NTSB's ability to have direct access to any commercially valuable information from parties to future investigations. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture

and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information to the public. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect or maintenance issue. Therefore, release of the aforementioned memorandum concerning DCA98WA014, which Hamilton Standard, Inc. provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the memorandum at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB oversaw Investigation No. DCA98WA014, it obtained this memorandum without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Hamilton Sundstrand in order to clarify the status of this memorandum. Hamilton Sundstrand specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Hamilton Sundstrand's response to the Board's inquiry regarding the release of this memorandum. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release

the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and in recognition of the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB may proceed with disclosure.

Here, the NTSB conducted such a review of the memorandum discussed herein, in conjunction with Hamilton Sundstrand's statement that it would not customarily release the information to the public. The NTSB determined that Hamilton Sundstrand satisfied the requirements of Exemption 4, and, consequently, decided to withhold this record based on Exemptions 2 and 4 of the FOIA.

EXHIBIT:    4

DOCUMENT NUMBER:    NTSB Record 24

DATE OF DOCUMENT:    Not Available

TOTAL NUMBER OF PHOTOS:    55

TOTAL NUMBER OF PHOTOS WITHHELD ENTIRELY: 55

DESCRIPTION OF DOCUMENTS:    Hamilton Standard Photographs

Below are descriptions of 8" x 10" glossy color photographs that Hamilton Standard[1] voluntarily provided to the NTSB regarding NTSB Investigation No. DCA98WA014, which involved a helicopter accident that occurred in the North Sea on December 20, 1997. The NTSB is withholding each of these photographs in full. Each photograph contains a label on the back, indicating that the Precision Optical Imaging Laboratory at Hamilton Standard took the photograph. This label includes a space in which to provide the negative number for the photograph; the appropriate negative numbers for the photographs at issue, as well as descriptions of each of the images that these photographs depict, are listed below.

| "Negative Number" on Photograph Label | Description of Photograph |
|---|---|
| ECA 31473 | Photograph of four similar components from an aircraft part that are placed on wire shelves. These components appear to resemble computer hardware. |
| ECA 31474 | Photograph of four similarly sized boxes. These boxes include labels and instructions to refrain from opening, as well as signatures of a Hamilton Standard employee. |
| ECA 31475 | Photograph of equipment in Hamilton Standard laboratory. This piece of equipment is quite large, and has wheels at each corner of its base. The photograph also depicts other pieces of laboratory equipment. |

---

[1] The appropriate division of "Hamilton Standard" now operates as "Hamilton Sundstrand."

| ECA 31476 | Close-up photograph of the side of a piece of equipment in Hamilton Standard laboratory. |
| --- | --- |
| ECA 31477 | Photograph of the same piece of equipment in Hamilton Standard laboratory described at photo ECA 31475, except this photograph depicts the piece of equipment in a different state. The equipment contains several typed and handwritten notes regarding its operation. The photograph also depicts other pieces of laboratory equipment. |
| ECA 31478 | Close-up photograph of the side of an aircraft component, which contains a label with the serial number, model number, part name, part number, and other identifying data. The label also has a trademark symbol. |
| ECA 31479 | Photograph of part of a disassembled EEC132-1 unit; this various wires and other portions of the EEC132-1 are visible in this close-up, detailed photograph. |
| ECA 31480 | Photograph of large cardboard box, addressed to Hamilton Standard Repair Center, placed on metal cart in laboratory. The box, as depicted in this photograph, contains several shipping labels and notes regarding shipment and instructions regarding opening the box. |
| ECA 31481 | Photograph of an EEC132-1 unit beneath a label with specific identifying information. |
| ECA 31482 | Close-up photograph of the side of an aircraft component, which contains a label with the serial number, model number, part name, part number, and other identifying data. The label also has a trademark symbol. |
| ECA 31483 | Photograph of large cardboard box placed on metal cart in laboratory. The box, as depicted in this photograph, contains several shipping labels and handwritten notes along each side of the box. |
| ECA 31484 | Close-up photograph of the side of an aircraft component, which contains a label with the serial number, model number, part name, part number, and other identifying data. The label also has a trademark symbol. |
| ECA 31485 | Photograph of an EEC132-1 unit beneath a label with specific identifying information. |
| ECA 31486 | Photograph of EEC132-1 unit as Hamilton Standard received it. |
| ECA 31487 | Photograph of EEC132-1 unit as Hamilton Standard received it. |
| ECA 31488 | Photograph of an EEC132-1 unit beneath a label with specific identifying information. |
| ECA 31489 | Photograph of EEC132-1 unit as Hamilton Standard received it. |
| ECA 31490 | Close-up photograph of the side of an aircraft component, which contains a label with the serial number, model number, part name, part number, and other identifying data. The label also has a trademark symbol. |
| ECA 31491 | Photograph of EEC132-1 unit adjacent to a handwritten note and |

| | label. This photograph also depicts laboratory equipment in the background. |
|---|---|
| ECA 31492 | Photograph of EEC132-1 unit as Hamilton Standard received it. |
| ECA 31493 | Photograph of large cardboard box placed on metal cart in laboratory. The box, as depicted in this photograph, contains several shipping labels and handwritten notes along each side of the box. |
| ECA 31494 | Photograph of disassembled aircraft component, EEC132-1, with handwritten annotations on various parts of the component. This component also contains a handwritten note with certain identifying information that is immediately adjacent to the component, and a label in the background of the photograph. |
| ECA 31495 | Photograph of disassembled aircraft component, EEC132-1, with handwritten annotations, which resembles computer hardware. This component also contains a label and note with certain identifying information. |
| ECA 31496 | Photograph of disassembled aircraft component, EEC132-1, which resembles computer hardware. The photograph of this component shows wires and numerical identifying marks on the disassembled component. This photograph also includes a label and note with certain identifying information, as well as part of another disassembled component in the background. |
| ECA 31497 | Two photographs exist with Negative Number "ECA 31497" on their descriptive labels. Below are descriptions of each.<br>■ Photograph of disassembled aircraft component, EEC132-1, which resembles computer hardware and appears to have lines drawn on the component. Adjacent to the component are a handwritten note and a handwritten label, with identifying information.<br>■ Photograph of disassembled aircraft component, EEC132-1. This image also contains a label and note with certain identifying information regarding the component. |
| ECA 31498 | Photograph of disassembled aircraft component, EEC132-1, which resembles computer hardware. This photograph also includes a label and note with certain identifying information, as well as another part of the disassembled component in the background. |
| ECA 31499 | Photograph of disassembled aircraft component, EEC132-1, which resembles computer hardware. The photograph of this component shows wires and numerical identifying marks on the disassembled component. This photograph also includes a label and note with certain identifying information, as well as another part of the disassembled component in the background. |
| ECA 31500 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware. This photograph shows numerical identifying marks on the disassembled component, as well as a note adjacent to the component. |

| ECA 31501 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware.  This photograph shows numerical identifying marks on the disassembled component, as well as a note adjacent to the component. |
| --- | --- |
| ECA 31502 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware.  This photograph shows numerical identifying marks on the disassembled component, as well as a note adjacent to the component. |
| ECA 31503 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware.  This photograph shows numerical identifying marks and lines on the disassembled component. The photograph also depicts a note and another part of the component in the background. |
| ECA 31504 | Photograph of part of a disassembled EEC132-1 unit; various wires and other portions of the EEC132-1 are visible in this close-up, detailed photograph.  In addition, other parts of components are visible alongside the disassembled EEC132-1 unit. |
| ECA 31505 | Photograph of disassembled aircraft component, EEC132-1, which resembles computer hardware.  The photograph of this component shows wires and numerical identifying marks on the disassembled component. This photograph also includes a label with certain identifying information, as well as another part of the disassembled component in the background, adjacent to the EEC132-1 unit. |
| ECA 31506 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware.  This photograph shows numerical identifying marks and lines on the disassembled component. The photograph also depicts a note and another part of the component in the background. |
| ECA 31507 | Photograph of part of a disassembled EEC132-1 unit; various wires and other portions of the EEC132-1 are visible in this close-up, detailed photograph.  In addition, other parts of components are visible alongside the disassembled EEC132-1 unit. |
| ECA 31508 | Photograph of disassembled aircraft component, EEC132-1, which resembles computer hardware.  The photograph of this component shows wires and numerical identifying marks on the disassembled component. This photograph also includes a label with certain identifying information, as well as another part of the disassembled component in the background, adjacent to the EEC132-1 unit. |
| ECA 31509 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware.  This photograph shows numerical identifying marks and lines on the disassembled component. The photograph also depicts a note and another part of the component in the background. |
| ECA 31510 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware.  This photograph shows numerical identifying marks and lines on the disassembled |

| | component. The photograph also depicts a note and another part of the component in the background. |
|---|---|
| ECA 31511 | Photograph of part of disassembled aircraft component, EEC132-1, which resembles computer hardware. This photograph shows numerical identifying marks and lines on the disassembled component. The photograph also depicts a note and another part of the component in the background. |
| ECA 31545 | Photograph of specialized testing equipment with several knobs and switches, as well as a monitor depicting a curve on an X, Y axis. A handwritten note in the foreground of the photograph contains numerical values for certain items used in the equipment. |
| ECA 31546 | Close-up photograph of a small part of a component with four lines of numerical information. A red sticker is placed on this part. |
| ECA 31547 | Detailed photograph of EEC132-1 "Final Test System." This photograph depicts an EEC132-1 unit attached to certain pieces of equipment, adjacent to a computer screen and other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31548 | Photograph of digital panel of EEC132-1 unit, adjacent to the small part depicted in photograph no. ECA 31546, as well as a handwritten note describing the parts in the photograph, and a foil bag with a label that contains numerical annotations. |
| ECA 31549 | Photograph of the small part depicted in photograph no. ECA 31546 on top of a measurement apparatus with a variety of holes and numbers. |
| ECA 31550 | Photograph of the small part depicted in photograph no. ECA 31546 on top of a measurement apparatus with a variety of holes and numbers. |
| ECA 31551 | Photograph of digital panel of EEC 132-1 unit. |
| ECA 31556 | Detailed photograph of EEC132-1 engaged in testing procedures. This photograph depicts an EEC132-1 unit attached to certain pieces of equipment, adjacent to a computer screen and other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31557 | Detailed photograph of EEC132-1 engaged in testing procedures. This photograph depicts an EEC132-1 unit attached to certain pieces of equipment, adjacent to a computer screen and other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31558 | Detailed photograph of EEC132-1 engaged in testing procedures. This photograph depicts an EEC132-1 unit attached to certain pieces of equipment, adjacent to and other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31559 | Detailed photograph of EEC132-1 engaged in testing procedures. This photograph depicts an EEC132-1 unit attached to certain |

| | |
|---|---|
| | pieces of equipment, adjacent to and other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31560 | Detailed photograph of EEC132-1 engaged in testing procedures. This photograph depicts an EEC132-1 unit attached to certain pieces of equipment, adjacent to other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31561 | Detailed photograph of EEC132-1 engaged in testing procedures. This photograph depicts an EEC132-1 unit attached to certain pieces of equipment, adjacent to other testing equipment. Other parts of the testing site are visible in the background of this photograph. |
| ECA 31562 | Close-up photograph of the side of an aircraft component and an adjacent, handwritten note containing information about the component. The photograph depicts numbers on the component. |
| ECA 31563 | Close-up photograph of the side of an aircraft component and an adjacent, handwritten note containing information about the component. The photograph depicts numbers on the component. |

These photographs are records that Hamilton Standard voluntarily submitted to the NTSB, and would not customarily release to the public. Given the clarity and close proximity of many of the images in these photograph, any FOIA requester could easily disseminate the photographs and hypothesize about a considerable variety of commercially sensitive information, such as the measurements between certain portions of the aforementioned parts, methods of testing the parts that are unique to Hamilton Sundstrand, and the like. As stated above, the NTSB is withholding this photograph because Hamilton Standard voluntarily provided this record to the NTSB, but would not customarily release such items to the public. If the NTSB released these items, then manufacturers and other party members such as Hamilton Sundstrand would no longer voluntarily provide the information that the NTSB requires to fulfill its statutory mission. Therefore, each of these records is exempt from disclosure under Exemptions 2 and 4 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

The photographs described above from Hamilton Standard clearly satisfy both Exemptions 2 and 4 of the FOIA. Disclosure of these commercially valuable images would impair the NTSB's ability to have direct access to any commercially valuable information from parties to the investigation. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information to the public after receiving it. Such information is critical to the NTSB in almost all investigations of accidents, especially accidents that result from a manufacturer's defect or maintenance issue. Therefore, release of these photographs concerning DCA98WA014, which Hamilton Standard provided to the NTSB, would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of aircraft accidents and incidents.

In addition, the photographs at issue are exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary

information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB assisted with Investigation No. DCA98WA014, it obtained the aforementioned photographs without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of photographs to the NTSB was wholly voluntary. Upon receiving plaintiff's request for "all records or information" regarding NTSB Investigation No. DCA98WA014, the NTSB contacted Hamilton Sundstrand, in order to clarify the status of each of these photographs. Hamilton Sundstrand specifically stated that it would not customarily release these photographs to the public, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Hamilton Sundstrand's response to the Board's inquiry regarding the release of these photographs under the FOIA. Where the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter and believes that the information should be disclosed under the FOIA, the NTSB may proceed with disclosure.

Here, the NTSB conducted such a review of the photographs described above, in conjunction with Hamilton Sundstrand's statement that it would not customarily release the

information to the public. The NTSB determined that Hamilton Sundstrand satisfied the requirements of Exemption 4, and, consequently, decided to withhold the record at issue based on Exemptions 2 and 4 of the FOIA.