**Exhibit 5**
**Records Exempt from Disclosure Pursuant to Exemptions 2, 3, 4, and 5**
**5 U.S.C. § 552(b)(2), (3), (4), (5)**

EXHIBIT:   5

DOCUMENT NUMBER:   NTSB Record 25

DATE OF DOCUMENT:   June 7, 2000

TOTAL NUMBER OF PAGES:   5

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 1

TOTAL NUMBER OF REDACTED PAGES:   4

DESCRIPTION OF DOCUMENT:   E-mail Correspondence from Indonesian Air Accident Investigation Commission

    This record consists of five pages of e-mail correspondence from an investigator in the Indonesian Air Accident Investigation Commission regarding NTSB Investigation No. IAD00WA029, which involved an aviation accident that occurred at sea near Indonesia on March 8, 2000. The NTSB is withholding page 3 of the five-page e-mail. The NTSB released the other four pages of the e-mail correspondence; three (3) of the remaining four (4) pages contain redactions. These remaining four (4) pages are located at pages 81-84 of the packet of released records.

    Pages 81 and 82 of the four (4) aforementioned redacted pages contain e-mail addresses and contact information for persons who are not NTSB employees, as well as speculative plans containing information from a Sikorsky employee regarding the investigation that Sikorsky voluntarily provided to the NTSB but would not customarily release to the public. As listed in the chart at Exhibit 1, and explained in the Declaration of NTSB FOIA Officer Melba D. Moye, included herein, the NTSB considers this redacted contact information to be exempt from disclosure pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6), and the potential plans

2

for the investigation as exempt pursuant to Exemptions 2, 4, and 5 of the FOIA, Id. § 552(b)(2), (4), and (5). Page 83 also contains redactions of e-mail addresses based on Exemption 6 of the FOIA, because the privacy interest that justifies redacting this information outweighs any public interest in disclosure. Id. § 552(b)(6).

In addition, page 83, as well as the single page from this e-mail correspondence that the NTSB is withholding in full, contains text that is redacted based on Exemptions 2, 3, 4, and 5 of the FOIA. Id. § 552(b)(2), (3), (4), (5). The text on both of these pages includes specific questions, and some statements, regarding certain aircraft parts that Indonesian investigators opined were worthy of further investigation. These questions and statements incorporate information that Sikorsky voluntarily provided to the NTSB but would not customarily release to the public. In addition, this text reflects the preliminary opinions of the Indonesian investigators, and further plans for conducting the investigation.

The NTSB received this correspondence regarding NTSB Investigation No. IAD00WA029 from an investigator employed at the Indonesian Air Accident Investigation Commission. The correspondence contains specific inquiries, which the Indonesian investigator categorized into six distinct categories, regarding information that is unique to the type of Sikorsky helicopter that was the subject of Investigation No. IAD00WA029. The first category of inquiries is the lengthiest of the six categories, and contains preliminary readings from certain parts of the Sikorsky helicopter. The Indonesian investigator's organization and listing of these readings alone reflects the investigation team's opinions and deliberations. The second category of inquiries contains a deliberative, hypothetical question that inquires about four different hypothetical scenarios. Finally, the third, fourth, fifth, and sixth categories of the message contains four questions that are specific to the Sikorsky helicopter's parts. Such inquiries

contain the opinions and deliberations of the Indonesian investigators, as well as commercially sensitive information from Sikorsky. Release of this information would cause Sikorsky to suffer a commercial disadvantage in the marketplace, and would violate foreign investigators' trust and expectations regarding the manner in which the NTSB conducts investigations. As such, the NTSB is withholding the principal page of this e-mail message in full, and redacting a portion of page 83, as this information is exempt from disclosure pursuant to Exemptions 2, 3, 4 and 5 of the FOIA.

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." Id. § 552(b)(2). Courts have long interpreted this exemption to encompass two categories of information: internal matters of a relatively trivial nature ("low 2"), and more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2"). See, e.g., Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (describing distinction between "low 2" and "high 2" parts of exemption). Exemption 3 of the FOIA allows agencies to withhold information that another statute prohibits from disclosure if one of two disjunctive requirements are met: the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes a particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 4 of the FOIA allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." Id. § 552(b)(4). Finally, Exemption 5 of the FOIA exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n

v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982).

This correspondence that an Indonesian investigator sent to the NTSB clearly satisfies Exemptions 2, 3, 4, and 5 of the FOIA. Disclosure of this information, which contains detailed descriptions of Sikorsky aircraft parts, and procedures for evaluating Sikorsky parts, would significantly harm Sikorsky, and would thereby impair the NTSB's ability to have direct access to any commercially valuable information from parties to future investigations. Moreover, this correspondence contains preliminary opinions from a foreign investigation team, which reflect the entire investigation team's deliberative process. If the NTSB released this information, parties to NTSB investigations would no longer provide the NTSB with access to critical information regarding the manufacture and unique physical characteristics of their aircraft components, because they would believe that the NTSB would release such information to the public. Such information is critical to the NTSB in almost all investigations of accidents that result from a manufacturer's defect or maintenance issue. Therefore, release of the aforementioned message concerning IAD00WA029 would risk a considerable circumvention of the NTSB's statutory purpose with regard to the NTSB's investigation of both foreign and domestic aircraft accidents and incidents.

In addition, the e-mail message at issue is exempt from disclosure based on Exemption 3, because release of this record would violate Aircraft Accident and Incident Investigation, Annex 13 to the Convention on International Civil Aviation (9th ed. 2001). Paragraphs 5.12 and 5.12.1 of Annex 13 provide:

> 5.12 The State conducting the investigation of an accident or incident shall not make the following records available for purposes other than accident or incident investigation ... :

> a) all statements taken from persons by the investigation authorities in the course of their investigation;
> b) all communications between persons having been involved in the operation of the aircraft;
> c) medical or private information regarding persons involved in the accident or incident;
> d) cockpit voice recordings and transcripts from such recordings; and
> e) *opinions expressed in the analysis of information*, including flight recorder information.
>
> 5.12.1 These records shall be included in the final report or its appendices only when pertinent to the analysis of the accident or incident. Parts of the records not relevant to the analysis shall not be disclosed.

Id. (emphasis added). This prohibition on the disclosure of information that countries gather during civil aviation investigations falls within the purview of Exemption 3 of the FOIA, because the United States and Indonesia are signatories to the Chicago Convention, which implemented the Annexes to the Convention on International Civil Aviation. Moreover, the NTSB's regulations clarify that the Board complies with Annex 13, see 49 C.F.R. § 831.2(a)(3). Given the provisions of Annex 13 quoted above, the NTSB's disclosure of such prohibited information would directly contravene these specific provisions of Annex 13. In addition, the Note that accompanies ¶¶ 5.12 and 5.12.1 illustrates the purpose of these provisions:

> Information contained in the records listed above ... could be utilized inappropriately for subsequent disciplinary, civil, administrative and criminal proceedings. If such information is distributed, it may, in the future, no longer be openly disclosed to investigators. Lack of access to such information would impede the investigation process and seriously affect flight safety.

Aircraft Accident and Incident Investigation, Annex 13 to the Convention on International Civil Aviation (9th ed. 2001). The aforementioned e-mail message that the Indonesian Air Accident Investigation Commission provided to the NTSB includes opinions and preliminary conclusions, and inquiries based on these preliminary opinions. Such information is exempt from disclosure under ¶ 5.12 of Annex 13. Therefore, this record is exempt from disclosure pursuant to Exemption 3 of the FOIA.

In addition, the e-mail message at issue is exempt from disclosure based on Exemption 4 of the FOIA. 5 U.S.C. § 552(b)(4). Under Exemption 4, commercially sensitive or proprietary information voluntarily given to a government agency "of a kind that would customarily not be released to the public by the person from whom it was obtained" is exempt from disclosure under the FOIA. Critical Mass Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992). When the NTSB oversaw Investigation No. IAD00WA029 on behalf of the Indonesian Air Accident Investigation Commission, it obtained this information without the assistance of the Board's Office of General Counsel or devices such as subpoenas; overall, this submission of information to the NTSB was wholly voluntary. The NTSB contacted Sikorsky Aircraft Corporation in order to clarify the status of this memorandum. Sikorsky specifically stated that it would not customarily release these pages to the public, and articulated the commercial disadvantage they would suffer if the NTSB were to release the pages under the FOIA, in accordance with Critical Mass, 975 F.2d at 878-79.

The NTSB carefully evaluated Sikorsky's response to the Board's inquiry regarding the release of this memorandum. In situations in which the NTSB has obtained information in a voluntary manner that appears to have commercial value, the NTSB inquires of the submitter of such information. When a submitter states that it would not customarily release the information to the public, and that release of the information may cause the submitter commercial harm, the NTSB evaluates the statement in good faith. In the interest of fairness to the public and in recognition of the FOIA's purpose of disclosing as much information as possible, the NTSB reviews statements from all submitters even-handedly. When the NTSB disagrees with a submitter, and believes that the information should be disclosed under the FOIA, the NTSB may proceed with disclosure. Here, the NTSB conducted such a review of the memorandum

discussed herein, in conjunction with Sikorsky's statement that it would not customarily release the information to the public. The NTSB determined that Sikorsky satisfied the requirements of Exemption 4.

Finally, the information in this section of e-mail correspondence is also exempt from disclosure pursuant to Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5). Exemption 5 exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982). The NTSB cannot guarantee preliminary materials, such as the record described herein, as accurate or complete; therefore, release of such information would result in confusion and compromise the Board's work. In addition, material reflecting the NTSB's deliberative process is exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977). The record described above is certainly preliminary and deliberative, as it includes specific, preliminary inquiries regarding which aspects of the investigation and which parts of the Sikorsky aircraft are worthy of further pursuit. Moreover, the deliberations in this record are internal, given the NTSB's "party process" for investigations, and the Board's status as a counterpart of foreign government agencies that investigate civil aviation accidents. Release of such preliminary ideas and opinions would certainly chill discussions regarding future aircraft investigations to which foreign government agencies contribute or oversee. Overall, this record certainly fulfills the requirements of Exemption 5 of the FOIA, as well as Exemptions 2, 3, and 4. 5 U.S.C. § 552(b)(2), (3), (4), and (5).