**Exhibit 7**
**Records Exempt from Disclosure Pursuant to Exemption 5**
**5 U.S.C. § 552(b)(5)**

EXHIBIT:  7

DOCUMENT NUMBER:  NTSB Record 29

DATE OF DOCUMENT:  August 23, 2000

TOTAL NUMBER OF PAGES:  1

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY:  1

NUMBER OF REDACTED PAGES:  0

DESCRIPTION OF DOCUMENT:  Internal Memorandum from Mr. Tom Conroy to Mr. Dennis Jones Regarding Pending Investigations

This record consists of a one-page memorandum from Mr. Tom Conroy, an NTSB investigator, to Mr. Dennis Jones, who served as Mr. Conroy's direct supervisor until Mr. Conroy's sudden death. The memorandum, entitled "Preliminary Reports due," lists three investigations, and briefly describes the status of reports for each of the three investigations. The second investigation listed in the memorandum describes the status of the preliminary report for NTSB Investigation No. IAD00WA069, which involved a helicopter accident near Navagantes, Brazil, that occurred on August 2, 2000. The remaining two investigations included in the list are not within the scope of plaintiff's FOIA request.

This brief memorandum is exempt from disclosure under Exemption 5 of the FOIA; as such, the NTSB is withholding this entire record in full. Exemption 5 of the FOIA exempts from disclosure agency records that are preliminary or deliberative. 5 U.S.C. § 552(b)(5); see, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982).

This memorandum clearly reflects the deliberative process of Mr. Conroy with regard to Mr. Conroy's plan to draft, edit, and issue certain preliminary reports for investigations in which Mr. Conroy served as the United States accredited representative or as the Investigator-in-Charge. The memorandum updates Mr. Conroy's supervisor, Mr. Jones, with regard to these plans and expected dates in which the reports for these investigations will be complete, and is therefore exempt from disclosure pursuant to Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5). As stated above, Exemption 5 exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989). Records reflecting the NTSB's deliberative process are exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).

The letter described above is certainly preliminary and deliberative, as it describes Mr. Conroy's plans for producing reports on three of Mr. Conroy's investigations. Moreover, the deliberations and plans that this record describes are wholly internal, as Mr. Conroy drafted this memorandum for delivery to Mr. Jones, who served as Mr. Conroy's direct supervisor. Release of such preliminary information and plans regarding these investigations would certainly chill discussions between investigators and their supervisors regarding status updates for future aircraft investigations. Overall, this record certainly fulfills the requirements of Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5).

EXHIBIT: 7

DOCUMENT NUMBER: NTSB Record 30

DATE OF DOCUMENT: March 8, 2001

TOTAL NUMBER OF PAGES: 1

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 1

NUMBER OF REDACTED PAGES: 0

DESCRIPTION OF DOCUMENT: Internal "Progress Report" from Mr. Tom Conroy to Seven NTSB Employees

This record consists of a one-page memorandum from Mr. Tom Conroy, an NTSB investigator, to seven NTSB employees regarding the progress of NTSB Investigation No. IAD00WA029, which involved a helicopter accident near Indonesia that occurred on March 8, 2000. The memorandum is a progress report on the aforementioned investigation, and describes engineering reports and preliminary summaries from parties who participated in Investigation No. IAD00WA029. The memorandum also describes the shipment and receipt of specific components that investigators believed would be worthy of examination.

This brief memorandum is exempt from disclosure under Exemption 5 of the FOIA; as such, the NTSB is withholding this entire record in full. Exemption 5 of the FOIA exempts from disclosure agency records that are preliminary or deliberative. 5 U.S.C. § 552(b)(5); see, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982).

2

    This memorandum clearly reflects the deliberative process of Mr. Conroy with regard to specific aspects of Investigation No. IAD00WA029, as well as the deliberations and preliminary documents of other investigators who served as parties to the investigation. The record quotes an engineering report and suggests further action regarding the report. In addition, the record quotes another "preliminary summary," and also suggests possible conclusions based on some of the language in the summary. Overall, this internal memorandum is clearly the type of record for which Exemption 5 of the FOIA was intended. 5 U.S.C. § 552(b)(5). As stated above, Exemption 5 exempts from disclosure agency records that are preliminary or deliberative. <u>See, e.g., Jowett, Inc. v. Dep't of the Navy,</u> 729 F. Supp. 871, 877 (D.D.C. 1989). Records reflecting the NTSB's deliberative process are exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. <u>Mead Data Cent., Inc. v. Dep't of the Air Force,</u> 566 F.2d 242, 256 (D.C. Cir. 1977).

    The memorandum described above is certainly preliminary and deliberative, as it describes Mr. Conroy's plans for further action in Investigation No. IAD00WA029, and suggests potential conclusions that investigators might reach based on preliminary data and reports. Moreover, the deliberations and plans that this record describes are wholly internal, as Mr. Conroy drafted this memorandum for delivery to seven other NTSB employees. Release of such preliminary information and plans regarding this investigation would certainly chill discussions between investigators and other NTSB employees regarding progress reports for future aircraft investigations, as such reports, like the progress report at issue here, often contain ideas or speculation regarding portions of parties' preliminary summaries or reports. Overall, this memorandum, which consists of a progress report, certainly fulfills the requirements of Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5).

EXHIBIT:            7

DOCUMENT NUMBER:        NTSB Record 31

DATE OF DOCUMENT:       March 5, 2001

TOTAL NUMBER OF PAGES:      1

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY: 1

NUMBER OF REDACTED PAGES: 0

DESCRIPTION OF DOCUMENT:    Draft Version of Internal "Progress Report" from Mr. Tom Conroy

This record consists of a one-page draft of a memorandum from Mr. Tom Conroy, an NTSB investigator, regarding the progress of NTSB Investigation No. IAD00WA029, which involved a helicopter accident near Indonesia that occurred on March 8, 2000. The memorandum is a draft of a progress report on the aforementioned investigation, and describes portions of an engineering examination from an entity that participated in Investigation No. IAD00WA029. This draft is clearly not in final form, as it contains several typographical and formatting errors. Overall, this draft is clearly predecisional and deliberative.

This draft memorandum is exempt from disclosure under Exemption 5 of the FOIA; as such, the NTSB is withholding this entire record in full. Exemption 5 of the FOIA exempts from disclosure agency records that are preliminary or deliberative. 5 U.S.C. § 552(b)(5); see, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982).

This draft memorandum, consisting of a "progress report," clearly reflects the deliberative process of Mr. Conroy with regard to specific aspects of Investigation No. IAD00WA029, as well as the deliberations and preliminary documents of other investigators who served as parties to the investigation. The record quotes portions of an engineering report that Mr. Conroy speculated to be important to the investigation. Overall, this internal, draft memorandum is clearly the type of record for which Exemption 5 of the FOIA was intended. 5 U.S.C. § 552(b)(5). As stated above, Exemption 5 exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989). Records reflecting the NTSB's deliberative process are exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).

The draft memorandum described above is certainly preliminary and deliberative, as it is a draft version of a future progress report, and quotes findings from an engineering examination that Mr. Conroy speculated may be worthy of consideration. In addition, the memorandum contains typographical and formatting errors. Moreover, the deliberations and plans that this record describes are wholly internal, as Mr. Conroy did not circulate this first draft of the memorandum to any NTSB employees. Release of such preliminary drafts containing text that a progress report may include would certainly chill NTSB employees' practice of drafting documents and editing them before distributing them to other NTSB employees. As a result, NTSB employees would not feel free to create preliminary drafts of items for editing purposes. Overall, this draft memorandum, which contains potential parts of a progress report, certainly fulfills the requirements of Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5).

EXHIBIT:   7

DOCUMENT NUMBER:   NTSB Record 32

DATE OF DOCUMENT:   September 9, 2003

TOTAL NUMBER OF PAGES:   3

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY:  3

NUMBER OF REDACTED PAGES:  0

DESCRIPTION OF DOCUMENT:   Preliminary Report Regarding Investigation No. WAS01WA015

This record consists of a three-page "Preliminary Report" that Mr. Tom Conroy, an NTSB investigator, drafted regarding NTSB Investigation No. WAS01WA015, which involved a helicopter accident near P'ohang, Korea that occurred on July 5, 2001. This preliminary report contains a brief set of text containing preliminary information that the NTSB gathered in the initial stages of investigating the aforementioned accident. The preliminary report contains information that Mr. Conroy obtained from various sources, and consolidated in the preliminary report before verifying the information; for example, this preliminary report contains cursory information regarding the weather at the time of the accident, the probable name of the operator, and a brief paragraph describing which parties and entities may assist with the investigation. All such preliminary reports are in a format in which investigators fill in blank fields with various information; in most cases, the available information is so preliminary that investigators leave many fields blank. At the NTSB, factual reports supersede such preliminary reports after the investigator-in-charge (IIC) has investigated the accident. Overall, these preliminary reports are

true to their name: they are merely preliminary and contain only preliminary information. As such, these preliminary reports are clearly predecisional and deliberative.

This preliminary report is exempt from disclosure under Exemption 5 of the FOIA; as such, the NTSB is withholding this entire record in full. Exemption 5 of the FOIA exempts from disclosure agency records that are preliminary or deliberative. 5 U.S.C. § 552(b)(5); see, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982).

This preliminary report clearly reflects the deliberative process of Mr. Conroy with regard to specific aspects of Investigation No. WAS01WA015, because it isolates and includes certain information in a "narrative" section that Mr. Conroy believed to be potentially important to the investigation. In addition, the preliminary report is clearly predecisional, because it precedes a factual report that includes verified information that an investigator has determined to be important to the investigation. Overall, this internal, preliminary report is clearly the type of record for which Exemption 5 of the FOIA was intended. 5 U.S.C. § 552(b)(5). As stated above, Exemption 5 exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989). Records reflecting the NTSB's deliberative process are exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).

The preliminary report described above is certainly preliminary and deliberative, as it is an unverified version of initial facts regarding the aviation accident that was the subject of NTSB Investigation No. WAS01WA015. Moreover, a successive factual report superseded this

preliminary report; this factual report is publicly available on the aviation database on the NTSB's website. <u>WAS01WA015 Factual Report: Aviation</u>, National Transportation Safety Board, *at* http://www.ntsb.gov/ntsb/GenPDF.asp?id=WAS01WA015&rpt=fa (last visited Aug. 31, 2006). Release of such preliminary reports after the NTSB has made successive, respective factual reports publicly available would certainly chill the Board's practice of drafting preliminary reports based on unverified, preliminary information. As a result, NTSB employees would not feel free to create preliminary reports that included helpful information, because NTSB employees may disprove some of the information that the NTSB initially believed accurate. Overall, this preliminary report, which a factual report superseded, certainly fulfills the requirements of Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5).

EXHIBIT:  7

DOCUMENT NUMBER:  NTSB Record 33

DATE OF DOCUMENT:  Not Available

TOTAL NUMBER OF PAGES:  1

TOTAL NUMBER OF PAGES WITHHELD ENTIRELY:  1

NUMBER OF REDACTED PAGES:  0

DESCRIPTION OF DOCUMENT:  Handwritten Notes Regarding Engineering Examinations

This record consists of one page of handwritten notes that appear to list results of engineering examinations of EEC units conducted at Hamilton Standard with regard to Investigation No. DCA98WA014. These notes are a draft version of part of the final engineering examination data that the NTSB released to plaintiff on August 14, 2006. See pages 240-275 of package of released records. The handwritten notes on this record are organized into four separate columns: 1A, 1B, 2A, and 2B. Overall, these handwritten notes are a preliminary draft of the engineering examination records. As such, these preliminary notes are clearly predecisional and deliberative.

These handwritten notes are exempt from disclosure under Exemption 5 of the FOIA; therefore, the NTSB is withholding this entire one-page record in full. Exemption 5 of the FOIA exempts from disclosure agency records that are preliminary or deliberative. 5 U.S.C. § 552(b)(5); see, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989); National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1047-48 (D.C. Cir. 1982).

These handwritten notes clearly reflect the deliberative process of the engineer who conducted the examinations that are the subject of the notes. These notes include certain parts of data from the engineering examinations on which the author, who was presumably the engineer, focused. In addition, these handwritten notes are clearly predecisional, because they precede a the final engineering data, which the NTSB made available to plaintiff at pages 240-275 of the released package of records. Overall, this record of preliminary, handwritten notes is clearly the type of record for which Exemption 5 of the FOIA was intended. 5 U.S.C. § 552(b)(5). As stated above, Exemption 5 exempts from disclosure agency records that are preliminary or deliberative. See, e.g., Jowett, Inc. v. Dep't of the Navy, 729 F. Supp. 871, 877 (D.D.C. 1989). Records reflecting the NTSB parties' deliberative process are exempt from disclosure in order to ensure the free flow of information during the course of the Board's investigations. Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).

The preliminary notes described above are certainly preliminary and deliberative, as the notes are an unverified version of the initial read-outs of data from an engineering examination regarding NTSB Investigation No. DCA98WA014. Release of such preliminary notes, especially after the NTSB has released a successive set of data from engineering examinations, would certainly chill the Board's practice of receiving information from investigative parties in a preliminary, informal context. Parties to NTSB investigations would not feel free to transmit preliminary notes or ideas to the NTSB if they believed the NTSB would release such notes to the public under the FOIA. Further investigation or verification of such preliminary notes may disprove the veracity of the notes; therefore, parties to NTSB investigations would no longer be willing to provide such preliminary, draft information if they believed the NTSB would release

3

it.   Overall, this record of draft, preliminary notes certainly fulfills the requirements of Exemption 5 of the FOIA.  5 U.S.C. § 552(b)(5).