

**National Transportation Safety Board**
Washington, D.C. 20594

September 14, 2006

Mr. Byron L. Pickard
Thelen Reid & Priest, LLP
701 Eighth Street, NW
Washington, D.C. 20001

Re: National Transportation Safety Board (NTSB)
Freedom of Information Act (FOIA) No. 20060346

Dear Mr. Pickard:

I write to supplement the Safety Board's response to your FOIA request for "a copy of all records or information and tangible things, whether made previously public or not related to . . . (7.) NTSB Number NYC86MA148 involving a Sikorsky S-76B helicopter, Registration No. N5AZ. Accident occurred on June 6, 1986 in Sutton, Massachusetts." As I stated in my June 29, 2006 letter to you, the Safety Board conducted a search of aviation investigative files to ascertain any records within the scope of your request. The Safety Board's search for records within the scope of your request fulfilled the reasonable search requirements of the FOIA.

On September 11, 2006, the Safety Board located one additional record that had been erroneously filed in an incorrect location in the Board's filing cabinet for microfiche records. Although this record is demarcated with an "Official Use Only" designation, and is a draft version of the final factual report that is publicly available regarding NTSB Investigation No. NYC86MA148, the Safety Board is making a discretionary release of this record to you in full.

Therefore, in the interest of responding to your request as completely and accurately as possible, I am enclosing the aforementioned record regarding Investigation No. NYC86MA148 herein. To the extent that you perceive this supplemental response as a denial of your FOIA request, you may appeal my decision by writing to the Safety Board's Managing Director:

    Mr. Joseph Osterman
    Managing Director
    National Transportation Safety Board
    490 L'Enfant Plaza East, SW
    Washington, DC 20594

Sincerely,

Melba D. Moye
FOIA Officer

Enclosure



FOR OFFICIAL USE ONLY

National Transportation
Safety Board

# Memorandum

Date: September 30, 1987

To: Director, Bureau of Field Operation
Thru: Deputy Director, Bureau of field Operation

From: Air Safety Investigator, Bureau of Field Operation

Subject: Analysis/Proposed Probable Cause

1. ACCIDENT:

   Location: Sutton, MA           Date: June 6, 1986
   Reg. No.: N5AZ                 A/C M & M/Series: Sikorsky S-76B
   Accident/Incident No.: NYC-86-MA148

2. PROPOSED SEQUENCE OF EVENTS:

   On June 6, 1987, at about 0900 hours, N5AZ, a Sikorsky S-76B helicopter operated by United Technology Corporation, a corporate flight, had an uncontrolled altitude deviation during cruise flight and collided with wooded terrain in Sutton, Massachusetts. Instrument meteorological conditions existed and the aircraft was on an IFR flight plan. The aircraft was destroyed. There was ground fire. The flight originated at Bedford, Massachusetts with a destination of Stratford, Connecticut.

   N5AZ was one of two aircraft scheduled to transport Jordan's King Hussein and Queen Noor, along with other Jordanian officials, to Middlebury, Connecticut. The trip was scheduled to depart Bedford at about 0800 hours. Both aircraft arrived in Bedford from Stratford at about 1830 hours on June 5, 1987 after a flight in instrument meteorological conditions

   At about 0615 hours on June 6, the flight was cancelled because of unfavorable weather conditions. The Jordanian delegation went to Middlebury by ground transportation.

   The flight crew of N5AZ elected to return to Sikorsky Aircraft in Stratford. Two Sikorsky technicians, who were technical support personnel for the trip, were aboard.

   At 0815 hours, after receiving IFR clearance for the flight, the helicopter taxied to Runway 11 at Hanscom Field Airport for takeoff. The flight route was to be via Putnam and East Hartford VORs and direct to Stratford. Delays due to IFR traffic occurred and N5AZ subsequently departed at 0843 hours. The aircraft was assigned a 230 degrees heading and cleared to 2000 feet MSL. At 0849 hours, the helicopter was cleared to 6000 feet and shortly afterwards cleared to proceed direct to Putnam VOR. At 0849 hours, the pilot reported level at 6000 feet and at 0853 hours the flight was handed off from Boston Approach Control to Bradley Approach Control.

OC000001            OC000000            OC000000
                                        OC000000



-2-

At 0853 hours the pilot was in contact with Bradley and the flight was cleared to proceed direct to Hartford VOR. At 0859 hours, the pilot of N5AZ radioed "Sikorsky five zero seven" (the call sign of another S-76 aircraft that he flew frequently). The transmission ended abruptly. The controller, who was handling other aircraft at the time, did not acknowledge the transmission.

At 0901 hours Bradley lost radio and radar contact with N5AZ. Repeated attempts by Bradley Approach to re-establish radio contact with N5AZ were unsuccessful.

Recorded radar data shows that from 0857:48 hours to 0858:36 hours, the aircraft was at 5900 feet and changed headings from 246 to 259 degrees with a change in ground speed from 138 to 116 knots. Over the next 49 seconds the ground speed accelerated to 123 knots and then decreased to 113 knots. The heading changed to 229 degrees; the altitude remained at 5900 feet. From 0859:25 hours, six seconds after the last transmission from the pilot, to 0859:49 hours, the altitude increased to 6000 feet, ground speed increased to 144 knots and heading changed to 261 degrees. At 0900:01 hours, the aircraft had descended to 5400 feet, ground speed had increased to 167 knots and the heading had changed to 319 degrees. At 0900:13 hours, the last radar return, the aircraft descended to 4000 feet. Ground speed was 177 knots and the heading was 354 degrees.

Witnesses near the accident site heard the sounds of what they described as a low flying helicopter. Those sounds were followed by the noise of a crash. None of the witnesses saw the helicopter. They described the weather as a low overcast with rain, fog and poor visibility.

One of the witnesses stated he heard "uneven rotors or motor noise. The sounds lasted five to ten seconds before they abruptly stopped." Another witness stated "I heard the helicopter go by. It sounded like a diesel motor running at full throttle and not going (anywhere). There were a few sputters in between but the motor never shut down." A witness, who is a former helicopter mechanic, stated that the engines were running normal without any indication of malfunction. As the helicopter came closer to him he heard an increase in the "vortices" from the main rotors and a drop in engine rpm for about three to four seconds and then the sounds stopped.

The aircraft collided into heavily wooded level terrain (elevation 542 feet) and disintegrated on impact. Initial impact occurred with trees at a height of 107 feet, followed by principal ground impact about __ feet away. The flight path of the aircraft through the trees was 150 degrees magnetic. The principal impact ground scar was 26.0 x 12.5 x 3.5 feet in dimensions. The wreckage was scattered along a distance of about 500 feet. The wreckage was oriented on a 180 degrees magnetic track.

Examination of the accident site revealed that the aircraft collided with the ground at a 47 degrees descent angle, and in a 10 degrees nose up and 12 degrees right bank attitude. The aircraft rate of descent at impact was calculated to be about 8260 feet per minute.

FOR OFFICIAL USE ONLY

00000002

(277)

-3-

All the major structural components of the aircraft were found at the accident site. There was thermal damage to only a few pieces of the wreckage debris; however, there was no thermal damage to the terrain. The thermal damage was primarily to the right side of the aircraft's baggage compartment, which is located above the aircraft's fuel tank, and to the right side of the rear seat which is forward and adjacent to the baggage compartment. Also there were two suitcases that had thermal damage.

The accident aircraft, a 1986 Model S-76B manufactured by Sikorsky Aircraft, a Division of United Technologies, is a twin engine, single main rotor helicopter and is equipped with two Pratt and Whitney PT5B-36 gas turbine engines. The aircraft was also equipped with an Electronic Flight Information System (EFIS), as well as conventional flight instruments. N5AZ was assigned to the Corporate Aircraft Dept. of United Technologies (UTC), East Hartford, Connecticut.

On May 5, 1987, a UTC pilot who was flying the helicopter, experienced what he described as an intermittent glitch on the copilot's EFIS, with an accompanying flashing of all lights on the copilot's flight director panel. According to the pilot the glitch appeared to resemble an uncommanded system test function. On May 27, 1986, another UTC pilot experienced EFIS abnormalities during a flight which included data failure, heading failure, attitude failure, flight director failure and autopilot No. 1 failure. It was determined after maintenance inspection that this was due to a popped circuit breaker. There were no other reported incidents with the EFIS.

The aircraft was borrowed by the Sikorsky division of United Technologies on May 30, 1987, and then subsequently used primarily for marketing demonstrations. While Sikorsky was operating the aircraft, N5AZ was involved in a bird strike; which occurred at the aircraft's nose section and resulted in replacement of the radome.

At the time of the accident N5AZ had been operated a total of about 107 hours. The most recent annual inspection was accomplished on May 30, 1987, and the aircraft had been flown seven hours since that time. The aircraft was certified, equipped, and maintained in accordance with Federal Aviation Administration regulations and approved procedures.

The weather was dominated by a stationary front over the area. Instrument meteorological conditions existed below 6500 feet MSL with surface visibility less than one mile in fog, along with cloud bases near 1000 feet above MSL with tops above 6000 feet MSL. The upper air temperatures between 5200 and 6900 feet MSL ranged from 53 to 48 degrees F. Light turbulence existed below 7000 feet MSL. There was a moderate radar echo (VIP level) containing moderate rain over the area. There was no lightning activity.

FOR OFFICIAL USE ONLY        00000003

(278)

-4-

The 0845 and 0857 hours surface weather observations respectively for Bedford and for Worcester, Massachusetts, which is located about 10 miles north of the accident site, were the following:

Bedford

Sky and Ceiling, estimated 500 feet overcast; Visibility, 2 miles with rain and light fog; Temperature, 57 degrees; Dew point, 57 degrees F; Winds, 060 degrees at 10 knots; Altimeter Setting, 30.07 ins./hg.

Worcester

Sky and Ceiling, indefinite 100 feet obscuration; Visibility, 1/2 mile with rain and fog; Temperature 59 degrees at 5 knots; Altimeter Setting, 30.08 ins./hg.

Examination of the aircraft's flight controls and rotor systems did not disclose evidence of malfunction. Reliable documentation of the instrument panel was not ascertained because of extreme impact forces. The examination of the engines disclosed that they were operating at the time of impact. A subsequent engine examination at Pratt & Whitney Canada did not reveal evidence of malfunction.

The baggage compartment and rear seat were reconstructed to determine the burn patterns of the thermal damage. The reconstruction revealed discontinuous burn patterns of the baggage compartment as well as to the rear seats. There was no evidence of pre-impact related thermal damage to the seat or baggage compartment.

The Federal Bureau of Investigation examined the two thermal damaged suitcases and their contents and did not reveal evidence of explosive devices.

The pilot and copilot were employed by United Technologies Sikorsky Aircraft Division as production pilots and respectively had been employed with Sikorsky since 1978 and 1981.

The pilot held an Airline Transport Pilot certificate and had the following ratings: Rotorcraft-Helicopter SK-76; Commercial privileges airplane single and multiengine, SK-58, SK-61; Flight Instructor, airplane single and mutiengine, instrument-helicopter, rotorcraft-helicopter. His second-class medical certificate was dated April 17, 1986, with a limitation to wear corrective lenses. As of the day of the accident, the pilot had about 2372 total hours of helicopter time.

FOR OFFICIAL USE ONLY

00000003



-5-

The pilot had about 1555 hours in S-76 model helicopters with 30 hours in the S-76B model. In the previous 90 days he had 68 hours and 30 hours respectively in S-76A and S-76B models. He had about 474 hours of total instrument time in helicopters of which 160 hours were in S-76 and 3 hours in S-76B. In the previous 90 days he had 3.5 hours and 3 hours of instrument time respectively in S-76A and S-76B models. He was described by other Sikorsky pilots as an excellent pilot who was energetic, outgoing, and had a take charge type attitude.

The copilot held an Airline Transport Pilot certificate with the following ratings: Rotorcraft-Helicopter, BH-206; Commercial privileges airplane single and mutliengine land, instrument airplane, SK-65, SK-64. His second-class medical certificate was dated November 14, 1985, and had no limitations.

The copilot had about 3199 total hours of helicopter time. He had about 477 hours in S-76 model helicopters with 2 hours in the S-76B model. In the previous 90 days he had 29 and 2 hours respectively in S-76A and S-76B model aircraft. He had about 265 hours of total instrument time in helicopters of which 43 hours were in the S-76a model and 1 hour in the S-76B model. In the previous 90 days he had 3 and 1 hours of instrument time respectively in S-76A and S-76 model aircraft. He was described by other Sikorsky pilots as a very competent pilot who was an unassuming person and who would have been complementary to the pilot during the flight.

The investigation disclosed that the flight crew had informal training only in the use of the Electronic Flight Instrument System.

The autopsies performed on the pilot and copilot did not reveal evidence of physical conditions that would have contributed to the accident. Toxicological test for alcohol, drugs and carbon monoxide were negative.

An inflight simulation was performed by Sikorsky Aircraft in a S-76A model helicopter to refly the last several minutes of N5AZ level flight path at 6000 feet, enter a right descending turn to coincide with the recorded radar data on the flight on N5AZ, and determine whether the descent rates and flight path can be achieved to reach the impact site without completing one 360 degrees turn. Using a 60 degrees bank and 28-30 degrees nose down attitude, the aircraft reached a 8000+ feet per minute descent rate at airspeed of 170+ KIAS. The aircraft would have reached the ground in just one turn. Thermal induced light turbulence existed and increased the amount of workload required in controlling rotor RPM in the upper range without exceeding the test limit. The aircraft was stable in the trimmed descent, pressures were normal, vertical speed was stable, and the altimeter was unwinding like the sweep hand of a stopwatch. There were plenty of audible cues that airspeed and/or rate of descent was excessive.



-6-

In summary, it is believed that N5AZ during cruise flight in low ceilings and low visibility, fog and rain entered an uncontrolled altitude deviation for undetermined reasons. Although there was no evidence of aircraft malfunction or pre-impact fire, the pilot for reasons unknown was unable to regain control of the aircraft and return to level flight. The investigation also revealed that the aircraft had two previous abnormalities of the copilot's side electronic flight control system during flight. However, because of extreme impact forces, the operational status of the aircraft's electronic flight control system was not determined.

Dennis L. Jones

FOR OFFICIAL USE ONLY

00000306



## SEQUENCE OF EVENTS WORKSHEET

**OCCURRENCE #** 1    **OCCURRENCE** 110    **PHASE OF OPERATION** 741

| IA SUBJECT MODIFIER | IB SUBJECT MODIFIER PERSON | II DIRECT  PERSON | III INDIRECT PERSON |
|---|---|---|---|
| 1. | 24518C 3127 4001 | | |
| 2. | 24539C 3127 4001 | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |

**OCCURRENCE #** 2    **OCCURRENCE** 230    **PHASE OF OPERATION** 5

| IA SUBJECT MODIFIER | IB SUBJECT MODIFIER PERSON | II DIRECT  PERSON | III INDIRECT PERSON |
|---|---|---|---|
| 1. 20000 F 2214 | | | |
| 2. 20000 E 2206 | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |

**OCCURRENCE #** ___    **OCCURRENCE** ___    **PHASE OF OPERATION** ___

| IA SUBJECT MODIFIER | IB SUBJECT MODIFIER PERSON | II DIRECT  PERSON | III INDIRECT PERSON |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |

**OCCURRENCE #** ___    **OCCURRENCE** ___    **PHASE OF OPERATION** ___

| IA SUBJECT MODIFIER | IB SUBJECT MODIFIER PERSON | II DIRECT  PERSON | III INDIRECT PERSON |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |

CC000007


(282)

00000000

NARRATIVE WORK SHEET

(55)

1. THE HELICOPTER WAS CRUISING AT 6000 FT MSL IN IMC WHEN A
2. UNKNOWN REASON THE HELICOPTER ENTERED INTO A HIGH
3. DESCENT RATE WHILE SIMULTANEOUSLY TURNING RIGHT ABOUT 270 DE
4. GS BEFORE COLLIDING WITH THE GROUND IN EXCESS OF 8000 FPM.
5. THERE WAS NO DISTRESS TRANSMISSION FROM THE FLIGHT CREW. THE
6. HELICOPTER DISINTEGRATED ON IMPACT. EVIDENCE OF PRE-IMPACT
7. MALFUNCTION OR INFLIGHT FAILURE WAS NOT DISCLOSED. PHYSICAL IMP
8. AIRMENT OR INCAPACITATION OF THE FLIGHT CREW WAS
9. NOT FOUND-

GPO 812-097

(283)