UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BYRON L. PICKARD )<br> )<br>    Plaintiff )<br> )<br>v. )<br> )<br>NATIONAL TRANSPORTATION )<br>    SAFETY BOARD )<br> )<br>    Defendant )<br>    ) | Case No. 06-1039 (JR) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Byron L. Pickard ("Pickard"), by counsel, submits this Memorandum of Points and Authorities in Opposition to the Defendant National Transportation Safety Board's ("NTSB") Motion for Summary Judgment (the "Motion"), filed herein.

## BACKGROUND

This matter involves efforts to compel the NTSB to comply with its statutory obligations under the Freedom of Information Act, 5 U.S.C. §552 and 49 C.F.R. § 801.10 (the "FOIA"). On April 26, 2006, Mr. Pickard submitted a FOIA request to the NTSB, seeking records related to eight separate helicopter crash investigations:

1. IAD00WA069 – involving the August 2, 2000 crash of a Sikorksy model helicopter near Navegantes, Brazil.  (the "Brazilian Crash").

2. WAS01WA015 – involving the July 5, 2001 crash of a Sikorsky model helicopter near P'ohang, Korea. (the "Korean Crash").

3. IAD00WAS029 – involving the March 8, 2000 crash of a Sikorsky model helicopter near Kakap, Indonesia. (the "Indonesian Crash").

4. DCA97WA068 – involving the December 12, 1996 crash of a Sikorsky model helicopter near Omeath, Ireland.  (the "Irish Crash").

      5.      DCA98WA014 – involving the December 20, 1997 crash of a Sikorsky model helicopter in the North off the coast of the Netherlands.  (the "Dutch Crash").

      6.      DFW05MA230 – involving the September 6, 2005 crash of a Sikorksy model helicopter in the Gulf of Mexico off the coast of Texas.  (the "Texas Crash").

      7.      FTW01LA176 – involving the November 25, 2001 of a Sikorsky model helicopter in New Iberia, Louisiana.  (the "Louisiana Crash").

      8.      NYC886MA148 – involving the June 6, 1986 crash of a Sikorsky model helicopter in Sutton, Massachusetts.  (the "Massachusetts Crash").

Under the FOIA, the NTSB is required to provide an initial determination concerning FOIA requests within ten (10) business days.  Though the NTSB acknowledged receipt of the FOIA request, it failed to respond within the required time period.  Indeed, by June 6, 2006, when this action was commenced, the NTSB still had not provided an initial determination in connection with the FOIA request.

The NTSB twice filed motions to enlarge the time in which it could file its answer, extending its answer date from July 12, 2006 until September 14, 2006.  During this extended period the NTSB made several releases of heavily redacted documents and advised Mr. Pickard as to other records that were withheld in their entirety.  Though no discovery has been conducted and no answer filed, on September 14, 2006, the NTSB filed its Motion for Summary Judgment, arguing that it had made a reasonable search for responsive records and that it had provided responsive records, subject to the redactions and withholdings as set forth in its Vaughn indexes.[1]

In support of its Motion, the NTSB offers voluminous, yet conclusory, declarations outlining the extent of its search for responsive records and the basis for the spate of records that

---

[1] The Moye Declaration sets forth the NTSB's Vaughn Indexes, which includes one index of redacted documents (see exhibit 1 to the Moye Dec.) and 6 exhibits describing records that were entirely withheld from production (see Exhibit 2 through 7).  Reference to a record identified in a Vaughn Index will be made as follows:  Vaughn Index ___, ref. page ___.

it redacted or entirely withheld. The NTSB's conclusory declarations do not hide the inadequacy of the its search for response records or the faulty basis for many of its redacted or withheld of records.

### The Conroy Investigations

Thomas Conroy served as the NTSB's U.S. Accredited Investigator on five of the eight investigations that are the subject of the FOIA request, including the Brazilian, Korean, Indonesian, Irish and Dutch Crashes. Mr. Conroy suddenly passed away in February, 2005. The NTSB contends that following Mr. Conroy's death, all of Mr. Conroy's hard copy files were destroyed, save "a small stack of record" kept by Mr. Conroy's supervisor, Dennis Jones.

In searching for responsive records in connection with these five investigations, the NTSB limited its search to (i) the "small stack of records" kept by Mr. Jones; (ii) Mr. Conroy's remaining electronic files and (iii) a file cabinet containing certain foreign investigation files. For reasons unexplained, the NTSB limited its search of electronic files to Mr. Conroy's emails and electronic files. No search was made concerning the accident among the NTSB's general electronic files or its emails. Nor were the files, electronic or otherwise, of Mr. Conroy's colleagues and supervisor searched. Indeed, the NTSB's Vaughn index reflect correspondence from Mr. Conroy involving other NTSB employees in connections with these investigations. (Vaughn Exhibit 1, ref. p. 39: "Preliminary plan among NTSB employees regarding how the NTSB should handle certain aspects of foreign investigation").

### The Massachusetts Crash Investigation

Dennis Jones served as the Investigator In Charge for the Massachusetts Crash. Aside from a search of the Material Laboratory Database, which uncovered a single one-page document, the NTSB limited its search to Mr. Jones files, as kept at his current office in

3                                                                                          DC #240716 v1

Washington D.C. No search was made of either the NTSB's office in Jamaica, New York, from which Mr. Jones conducted his investigation, or its Parsippany, New Jersey office, where Mr. Jones also worked. Indeed, the NTSB surmises that no document could be at these offices. The fact remains: no one has looked for records in these other offices. Moreover, no search was made of Mr. Jones' colleagues and supervisors, including their electronic files, who participated in the investigation.

### The Texas Crash

The NTSB did not release any records relating to the Texas Crash, citing its policy of not disclosing records relating to an ongoing investigation and asserting that FOIA Exemption 2, 5 & 7(a) also apply. The NTSB does not cite any effort to segregate non-exempt materials among the materials it deems exempt relating to this investigation, claiming instead a blanket exemption.

### Redacted Records and Withheld Records

The NTSB has submitted an extensive list of redacted and withheld documents. (See NTSB Mem., Moye Dec. at Exhibits 1 through Exhibit 7) The list of redactions is so conclusory so as to make any meaningful assessment of the basis for such redaction impracticable. Several examples illustrate the point:

The Vaughn Index 1, in part, references redactions concerning the following:

- "Statements regarding observations and preliminary opinions of non-NTSB employee upon arriving at site of accident…" (Vaughn Index 1, ref. p. 15)
- "Questions from foreign investigator-in-charge that reflect the investigator's predecisional deliberation and opinions regarding which components of the aircraft and aspect of the accident may be worth of further investigation."

>(<u>Vaughn</u> Index 1, ref. pp. 45, 48, 50, 52, 53, 54, 58, 59, 61, 65, 66, 68, 69, 70, 71, 73, 76, 77, and 83).

The NTSB offers no facts that permit the Plaintiff or this Court to test the NTSB's conclusion, for example, that a particular redaction contains opinions or reflective of deliberative matters.

The NTSB also has withheld a large number of records. For instance, <u>Vaughn</u> Index Exhibit 4 indicates the NTSB is withholding 64 photographs and other information received from two outside parties, Sikorsky Aircraft Corporation ("Sikorsky") and Hamilton Sundstrand ("Hamilton"). The NTSB cites FOIA exemptions 2 (relating to internal agency matters) and 4 (trade secrets, commercial or financial information) as its basis for withholding these records. Supporting its assertion of Exemption 4, the NTSB relies on two letters from Sikorsky and Hamilton. Respectively, those letters contend that the parties will suffer commercial harm if records are released. A close reading of these letters, however, reveals that the claim of potential commercial harm is made in specific reference only to drawings, in the case of Sikorsky, and a Component Maintenance Manual, in the case of Hamilton. However, the records identified as withheld in <u>Vaughn</u> Index Exhibit 4 include much more, including 64 photographs, written descriptions of parts, and testing results, among other things.

## ARGUMENT

### I.   LEGAL FRAMEWORK

#### A.   Summary Judgment Standard

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242 (1986); Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment under FOIA, the court must review the facts in the light most favorable to the requestor. *Weisberg v. United States Department of Justice*, 745 F. 2d 1476, 1485 (D.C. Cir. 1984); *See* Fed.R.Civ.P. 56(c); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Under the summary judgment standard, NTSB, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

      **B.**     **The FOIA**

Congress enacted FOIA for the purpose of introducing transparency to government activities. *See Stern v. FBI,* 737 F.2d 84, 88 (D.C.Cir.1984). In responding to a FOIA request, an agency is required to show that it made "a good faith effort to conduct a search for the requested records, using methods that can be reasonably expected to produce the information requested." *Nation Magazine v. United States Customs Service*, 71 F. 3d. 885, 890 (D.C. Cir. 1995); *Truitt v. Department of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). An agency is not required to search every record system, but it "cannot limit its search to only one record system if there are others likely to turn up the information requested." *Campbell v. United States Department of Justice*, 164 F. 3d. 20, 28 (D.C. Cir. 1998); *Oglesby v. United States Department of the Army*, 920 F. 2d. 57, 68 (D.C. Cir. 1990). The burden of persuasion as to the reasonableness of a search falls on

the agency. *McGhee v. CIA*, 697 F. 2d. 1095, 1101 (D.C. Cir. 1983). Any affidavits submitted by the agency describing its search for documents must be "relatively detailed and nonconclusory and…submitted in good faith." *Safecard Services, Inc. v. SEC*, 926 F. 2d. 1197, 1200 (D.C. Cir. 1991). At the very least, the affidavits must denote which files the agency searched, and must explain in a systematic way how the agency's documents were located. *Oglesby*, 920 F. 2d. at 68. The purpose of this requirement is to enable the Plaintiff to challenge the procedures utilized during the search. *Id.* If no documents are located during the search, the affidavit must explain why no other record system was likely to produce responsive documents. *Id.* The agency also must explain why conducting a more thorough investigation would have been unduly burdensome. *McGhee*, 697 F. 2d. at 1102. A court must make a finding as to the reasonableness of Defendant's search. *Krikorian v. Department of State*, 984 F. 2d. 461, 468 (D.C. Cir. 1993).

  A court can order an agency to conduct a more thorough search if it finds the initial search was inadequate. *Judicial Watch v. Department of Commerce*, 34 F. Supp. 2d. 28, 45 (D.D.C. 1998). Moreover, a FOIA plaintiff may be granted limited discovery into the adequacy of an agency search. *See Weisberg v. United States Department of Justice*, 627 F. 2d. 365, 371 (D.C. Cir. 1980).

  Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 872 (D.C.Cir.1992); *see also Summers v. Dep't of Justice,* 140 F.3d 1077, 1079 (D.C.Cir.1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. § § 552(a)(4)(B), (b)(1)-(9).

The Court reviews an agency's refusal to disclose requested documents *de novo. See* 5 U.S.C. § 552(a)(4)(B) (2000).  Generally, when summary judgment is requested in a FOIA matter, the agency bears the burden of showing that a FOIA exemption applies. *Smith v. Dep't of Justice,* 251 F.3d 1047, 1050 (D.C.Cir.2001).  To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys,* 310 F.3d 771, 774 (D.C.Cir.2002); *see also Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973).  In addition, the agency's accompanying affidavits or declarations must describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981).

While there is no set formula for a <u>Vaughn</u> index, the agency must provide the Court with materials providing a "reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB,* 26 F.3d 168, 173 (D.C.Cir.1994). While <u>Vaughn</u> indexes are generally discretionary, affidavits alone may not suffice once it is established that records and documents are in a governmental agency's possession. *Miscavige v. IRS,* 2 F.3d 366, 368 (11th Cir.1993) (citing *Stephenson v. FBI,* 629 F.2d 1140, 1144-45 (5th Cir.1980)).

Moreover, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent. Inc.,* 566 F.2d at 261. Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. Dep't of the Army,* 79 F.3d 1172, 1178 (D.C.Cir.1996). In addition, district courts are required to consider segregability issues even when the parties have

not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1028 (D.C. Cir.1999).

## II.  SUMMARY JUDGMENT SHOULD NOT BE GRANTED

The Court should deny the NTSB's Motion, as its has failed to meet is burden to show it made an adequate search and to show its claimed FOIA exemptions are proper.

### A.  The NTSB Has Not Made A Reasonable Search For Responsive Records.

The NTSB has not met its burden to reasonably search for responsive records. *Nation Magazine*, 71 F. 3d. at 890.  The NTSB has ostensibly limited its search to handful of individuals who served as lead investigators in the accident investigation.  However, in limiting its search to lead investigator's files the NTSB fails to show that records are not likely to be found with other NTSB employees or within other NTSB files.  Indeed the NTSB's Vaughn Index highlights a discussion among several NTSB employees concerning the Indonesian crash, thus highlighting several additional individuals likely to have records. (Vaughn Index, Ex. 1, ref. p. 39).

Notwithstanding that records are likely to be found beyond the scope of the NTSB's focus on its principal investigators, the NTSB did not search its agency-wide network folders The NTSB did not search the files of the colleagues and supervisors of the lead investigators. Perhaps most glaringly, the NTSB describes in great detail its use of special groups, each chaired by an NTSB employee, that play a role in specific aspects of an investigation.  Yet, the NTSB did not contact or search any of its employees who chaired such groups among the eight investigations at issue.   In short, the NTSB has fallen short of its FOIA obligations to locate records.

For this reason alone the NTSB motion for summary judgment should be denied.

**B. NTSB Does Not Properly Assert FOIA Exemptions.**

**1.    Exemption 7**.

Exemption 7(a) of FOIA permits an agency to withhold from public disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings." The NTSB fails to properly assert that that FOIA Exemption 7(a) applies to any withheld or redacted records. To fit within exemption 7(a), the NTSB must show both (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm. *NLRB v. Robbins Tire & Rubber Co.,* 437 214 (1978); *Manna v. Dep't of Justice*, 51 F. 3d 1158, 1164 (3d 1995). The NTSB fails to meet its burden to show either element is present to support its claim of Exemption 7.

First, none of the crash investigations in question involve a law enforcement proceeding or investigation. The NTSB cites no authority holding that the NTSB's crash investigations fall within the category of law enforcement proceedings covered by Exemption 7. Indeed, the purpose and end product of an investigation is not an enforcement action by the NTSB, but rather a factual report containing its probable cause determination of the incident in question. Because the NTSB does not have a clear law enforcement mandate, the Court must question whether any of the subject investigation involved enforcement of any statute or regulation within the NTSB's authority. *Church of Scientology v. Dep't of the Army*, 611 F. 2d at 749. Indeed, while the NTSB may act *pursuant* to law when it investigates an incident, it actions do not serve to *enforce* any law. As such, Exemption 7 has no application.

Moreover, the NTSB fails to articulate the requisite harm.  The NTSB offers only a conclusory and unsupported allegation that release of the putatively exempt materials (particularly relating to the ongoing Texas Crash investigation) would "impede the progress of the investigation," "chill deliberations," and cause the public to speculate on the importance of aspects of the investigation, thereby creating confusion and distracting the NTSB.  (Mat. Stmt. at ¶48).  None of these concerns trigger the traditional reasons for avoiding the release of information related to ongoing investigation, such as concerns about enabling investigatory targets to elude detection or to suppress or fabricate evidence.  *See e.g. Solar Sources Inc. v. United States*, 142 F. 3d 1033, 1039 (7th Cir. 1998).

### 2.     HIGH 2 EXEMPTION

A government may claim exemption under 2 of the FOIA for both (1) internal matters so routine or trivial that they cannot be the subject of public interest (2)  internal agency maters of some public interest "where disclosure may risk circumvention of statutes or agency regulations."  Department of Air Force v. Rose, 425 U.S 352, 369-70 (1976); National Treasury Employees Union v. United States Custom Serv. 802 F. 2d 525, 528, (D.C. Cir. 1986).  This second category is commonly referred to as "High 2 Exemption."  The NTSB has not properly asserted a High 2 Exemption.

The reason is simple the NTSB does not show that disclosing the material in question present any risk of *circumvention* of law.  Rather, the NTSB argues that release of the records will discourage persons from freely participating the NTSB's party system.  (NTSB Mem. 9)That argument confuses the issue of "circumvention."  Exemption 5's concern for the risk of circumvention is centered on the issue where revealing the details of the inner workings an agency provide a play book or blue print so as to permit one to tailor his conduct so as to escape

its regulatory reach or search out weaknesses in enforcement.  *See e.g. Caplan v. BATF,* 587 F. 2d 544 (2d Cir. 1978)(exempting manuals that outline how law enforcement officers conduct raids, as disclosure would only promote evasion of the law).  The NTSB does not argue that disclosure will lead to evasion or circumvention of the law, it only argues that it may discourage some persons from participating in the NTSB's investigations.  That is a very different concern than is articulated by NTSB – a concern that is simply not addressed by a High 2 Exemption.

### 3. The NTSB Does Not Properly Assert FOIA Exemption 5

The NTSB makes numerous assertions of the deliberative process privilege under FOIA Exemption 5.  To qualify for this exemption, the record must be both predecisional, that is occurring before agency action, and the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.  *See Jordan v. DOJ*, 591 F. 2d 753, 774 (D.C. Cir. 1978); *Vaughn v. Rosen*, 523 1135, 1143-444 (D.C. Cir. 1975).  Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made.  Moreover, Exemption 5 applies only to "inter-agency" or "intra-agency documents."  Where a record involves an agency outsider, the critical question "in deciding the inter-agency status of an outside party is the degree of self-interest pursued by that part, as compared to its interest in providing neutral advice or consultation to the agency."  *Center for Int'l Envtl. Law v. Office of the U.S Trade Representative*, 237 F. Supp. 2d 17 (D.D.C. 2002).  The NTSB fails to meet its burden to show that this exemption applies.

Here, the NTSB has failed to meet its burden to show it is entitled to withhold records under Exemption 5.  First, the NTSB makes an overbroad and conclusory assertion of the exemption.  Second, Exemption 5 will not apply to records contributed or communicated to third

parties, including Sikorsky and Hamilton.

The NTSB's assertion of Exemption 5 is overbroad and conclusory. Two key examples illustrate this point that permeates the NTSB's Exemption 5 claims. The NTSB's <u>Vaughn</u> Index 1 (the redaction chart shows) that portions of page 115 were redacted. In relevant part, the NTSB states that the redacted text contains "Statements regarding observations and preliminary opinions of a non-NTSB employee upon arriving at the site of accident…" Such factual matters as observations are the very type <u>not</u> included under exemption 5, which only protects deliberative materials. *Jordan* , 591 F. 2d 774. Elsewhere, the NTSB makes the conclusory assertion that a record is exempt because it contains a "Comment regarding, predecisional, deliberative work of a non-NTSB employee." Both examples well illustrate the NTSB's generally conclusory and overbroad assertion of exemption 5.

Moreover, the NTSB completely ignores its burden to demonstrate how records received from third-parties, including Sikorsky and Hamilton, fall within Exemption 5. Both of these entities are parts manufactures, whose equipment was involved in the accident under investigation. As such, Sikorsky and Hamilton have a self-interested motive in the outcome of the investigation – no company desires to have its equipment identified as the probable cause of an accident. Yet, the NTSB makes no effort to demonstrate how Sikorsky or Hamilton involvement is unbiased in the face of a potentially harmful conclusion that may result from a particular. Given the NTSB's reliance on the "party system" as the primary source of its expert information on transportation accidents, the involvement of such third parties is of tremendous public interest. Accordingly, the NTSB Exemption 5 fails generally, and specifically as its relates to material provided by Sikorsky and Hamilton as it is not a "inter agency" or "intra agency" record.

### 4.     Exemption 4

The NTSB also asserts a substantial number of records are properly withheld pursuant to FOIA Exemption 4.  A government agency may, under certain circumstance, withhold information containing a third-party's trade secrets, commercial or financial information.  *See Public Citizen v. Health Research Group v. FDA,* 704 F. 2d 1280 (D.C. Cir. 1983).  Here the NTSB attempts to withhold information obtained from Sikorsky and Hamilton, consisting of numerous photos, product descriptions, drawings, manuals and testing results.  The NTSB argues only one basis for its withholding:  that disclosure of this information would commercially harm Sikorsky and Hamilton.  (NTSB Memo. at 12).  In support this argument, the NTSB offers only two self-serving letters from the parties in question and makes no other showing as to how this information is confidential, commercial or otherwise a trade secret.  This is not sufficient.

Equally problematic, the NTSB has provided a greater protection than is sought by Sikorsky and Hamilton.  Sikorsky's and Hamilton's specially request protections for drawing and a Component Maintenance Manuel.  As shown above, however, the NTSB withheld a much broader scope of records, including photographs and testing results.

It also appears that many of these items would not qualify for protection under Exemption 4, even if Sikorsky and Hamilton asserted a commercial harm.  For example, the NTSB has withheld certain photographs, depicting components designed and/or manufactured by Sikorsky and Hamilton that were recovered from the accidents.  Necessarily, these components are sold in the market place, repaired and maintained by third-parties and resold in secondary markets.  Nevertheless though these components are placed in the stream of commerce and thus devoid of any practical protection, the NTSB takes the position that a photograph of these very

same components will somehow reveal something not already available to the public and cause some unspecified commercial harm. Exemption 4 cannot apply here.

### 5. The Improperly Asserted Exemptions Require Additional Records Be Released

As shown above all materials claimed exempt under Exemptions 2, 4, 5 and/or 7 should be released. In particular, all of the records identified in <u>Vaughn</u> Index Exhibit 4 (claiming Exemptions 2 and 4 should be released). Further given, the NTSB's improper assertion of Exemptions 2, 5 and 7, the Indonesian Crash investigation records – the NTSB has stood on its policy and refused to produce any of the records from this on going investigation – should be released.

## III. Discovery Should Be Permitted

Alternatively, if the Court does not deny the Motion, it should be stayed and Plaintiff should be afforded discovery so that he can bring forth facts bearing on the adequacy of the NTSB's search. Rule 56(f) of the Federal Rules of Civil Procedure anticipates situations in which a party opposing a motion for summary judgment will not, without the aide of a stay and discovery, be able to present facts essential to justify his opposition. In such cases, Rule 56(f) allows the Court either to "refuse the application for judgment" or to "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." This case presents precisely the situation anticipated by Rule 56(f). Without discovery, Mr. Pickard cannot effectively challenge the NTSB's affidavits claiming to have conducted an adequate search for responsive records, even though Mr. Pickard has shown, based on the NTSB's own declarations, that there is a reason to doubt the adequacy of the NTSB's search. "If the government affidavits satisfy the court that the search was adequate and

complete, then the court may deny discovery." *Murphy v. Federal Bureau of Investigation*, 490 F. Supp. 1134, 1137 (D.D.C. 1980) (citing *Goland v. Central Intelligence Agency*, 607 F. 2d 339, 352 (1978)). By necessary implication, therefore, if the NTSB's declarations do not satisfy the court that the NTSB's search was adequate and complete, then discovery is warranted. *Tax Analysts v. IRS*, 214 F. 3d 179, 185 (D.C. Cir. 2000)(discovery necessary to develop factual record) As shown above, the NTSB's declarations do not establish that its search was adequate or that the NTSB has properly asserted the basis for withholding or redacting records.

Mr. Pickard requires discovery to assess the adequacy of the NTSB's record search. Mr. Pickard does not have knowledge with respect to record retention policies and whether they were followed in the particular instances at issue here. Mr. Pickard does not have information concerning the manner and means by which the NTSB maintains its electronic files, including location and existence of its servers, email programs used, databases and the like. Discovery will aide Mr. Pickard in assessing these fundamental facts which are necessary for him to address the merits of the NTSB's Motion. Mr. Pickard proposes that it will be most economical and efficient for NTSB to first answer written interrogatories and then provide a 30(b)(6) deponent. Based on the answers to such interrogatories with the follow-up deposition topics, the Plaintiff may depose one or more persons necessary to ascertain whether the NTSB's search for responsive records was adequate and whether its assertions of exemptions under the FOIA are warranted.

## CONCLUSION

Wherefore, based upon the foregoing, Mr. Pickard asks this Court to deny the NTSB's Motion for Summary Judgment or, in the alternative, stay a decision on the Motion pending discovery by the Plaintiff.

Dated: October 12, 2006	Respectfully submitted,

_____/s/_____
Michael Evan Jaffe
Thelen Reid & Priest LLP
701 Eighth Street, N.W.
Washington, D.C.  20001-3721
Telephone:  202-508-4215
Facsimile:  202-654-1828
E-mail:  mjaffe@thelenreid.com

*Counsel for Plaintiff*