**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| BYRON L. PICKARD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-1039  (JR) |
| | ) | |
| | ) | |
| NATIONAL TRANSPORTATION | ) | |
| SAFETY BOARD, | ) | |
| Defendant | ) | |
| _____ | ) | |

## <u>DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT</u>

Local Civil Rule 7(h) requires parties to provide more than boilerplate responses to a statement of facts not in dispute that is filed with a motion for summary judgment.  Specifically, the Rule 7(h) provides, "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local Civ. R. 7(h).  In response to defendant's statement of material facts not in dispute, plaintiff responded to almost all paragraphs with the same text: "Plaintiff has not had an opportunity to conduct any discovery in this matter and is therefore unable to rebut this statement of facts by the NTSB.  *It is therefore undisputed*."  As such, plaintiff's response to the NTSB's Statement of Material Facts Not in Dispute does not raise any factual issues.  Therefore, in accordance with Local Rule 7(h), the Court may consider all facts set forth in defendant's Statement of Material Facts Not in Dispute undisputed.

<u>**ARGUMENT**</u>

I.    **THE NTSB CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE DOCUMENTS**

Agencies have a duty to conduct a reasonable search for all records within the scope of a FOIA request. <u>Oglesby v. United States Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990). The D.C. Circuit has consistently held that an agency is ***not*** required to search every record system, but need only search those systems in which it believes responsive records are likely located. <u>Id.</u>; <u>see</u> <u>also</u> <u>Iturralde v. Comptroller of Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003); <u>Blanton v. United States Dep't of Justice</u>, 63 F. Supp. 2d 35, 41 (D.D.C. 1999); <u>Hall v. United States Dep't of Justice</u>, 63 F. Supp. 2d 14, 18 (D.D.C. 1999) (Robertson, J.) (quoting <u>Steinberg v. Department of Justice</u>, 23 F.3d 548, 552 (D.C. Cir.1994) for the concept that FOIA does not require agencies, "to examine virtually every document in its files, following an interminable trail of documents like a chain letter winding its way through the mail"). Overall, the adequacy of the search depends upon the circumstances of the particular case. <u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990).

Plaintiff argues that the NTSB did not conduct an adequate search for records within the scope of plaintiff's request for all records regarding eight aviation investigations: NTSB Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, DCA98WA014, DFW05MA230, FTW01LA176, and NYC86MA148. Regarding the first five investigations listed above, Mr. Thomas Conroy served as the NTSB's United States accredited representative for the investigations. Regarding Investigation Nos. DFW05MA230 and FTW01LA176, Mr. Alexander Lemishko served as the investigator-in-charge (IIC). Finally, regarding Investigation No. NYC86MA148, Mr. Dennis Jones served as the IIC. Overall,

plaintiff's arguments regarding adequacy of the NTSB's search for records within the scope of plaintiff's request are entirely without merit.

First, plaintiff argues that, the NTSB did not search Mr. Conroy's colleagues' or supervisors' files. This allegation is ***directly contrary*** to statements included in many of the NTSB's declarations that accompany the NTSB's Motion for Summary Judgment. Mr. Dennis Jones served as Mr. Conroy's direct supervisor until Mr. Conroy's sudden death. In addition, Mr. Jeff Guzzetti served as a Deputy Director for Regional Operations in the Office of Aviation Safety until Mr. Conroy's sudden death. As such, both Mr. Jones and Mr. Guzzetti supervised Mr. Conroy. The NTSB inquired of both Mr. Jones and Mr. Guzzetti regarding whether either had any records concerning any of the five investigations listed above. Mr. Jones located a stack of records that he had acquired from Mr. Conroy's office, searched the stack, and found records regarding Investigation No. DCA98WA014. Mr. Guzzetti verified that he did not have any records regarding the investigations that are the subject of plaintiff's request, and then explained that he had cleaned out Mr. Conroy's former office. In addition, the NTSB FOIA Office inquired of the NTSB's expert in international investigations, Mr. Bob MacIntosh. Mr. MacIntosh searched the file cabinet in which he maintains all records from all international aviation investigations, and located two file folders containing records from Investigation Nos. DCA97WA068 and DCA98WA014. Thus, the NTSB did search files of Mr. Conroy's supervisors and colleagues.

In international investigations, the NTSB's involvement is often quite limited, in accordance with <u>Aircraft Accident and Incident Investigation</u>, Annex 13 to the Convention on International Civil Aviation (9th ed. 2001). As such, the NTSB delegates ***one employee*** to correspond with the host country conducting the investigation, and, often, other employees ***do***

***not*** become involved.  Moreover, as explained below, the NTSB did not form investigative

"groups" for any of the five international investigations in which Mr. Conroy acted as the United

States accredited representative.  Given this limited involvement, it would be unreasonable and

unnecessary to search for records from employees other than the United States accredited

representative (Mr. Conroy), that representative's supervisors (Mr. Jones and Mr. Guzzetti), and

the NTSB's advisor on international aviation investigations (Mr. MacIntosh).  As established in

the declarations accompanying the NTSB's Motion for Summary Judgment, the NTSB diligently

conducted a search for the records that plaintiff requested in all places that the NTSB believed

any such records may be located.  Such a search unequivocally satisfies the requirements of the

FOIA.

       Similarly, plaintiff argues that, "the NTSB did not search its agency-wide network

folders."  As described in the Moye Declaration, which accompanies the NTSB's Motion for

Summary Judgment, the only electronic source of such "agency-wide" information is the

NTSB's Docket Management System (DMS).  Moye Decl. ¶12.  This system contains publicly

available records for investigations.  The NTSB is unaware of any other "agency-wide" location

for investigative records.  Plaintiff's argument regarding such a theoretical location is mere

speculation and, therefore, not sufficient to defeat summary judgment.

       Plaintiff also argues that, "[n]o search was made of either the NTSB's office in Jamaica,

New York, from which Mr. Jones conducted [Investigation No. NYC86MA148] or its

Parsippany, New Jersey office, where Mr. Jones also worked."  The NTSB submits that it is

unable to search any location in Jamaica, New York, for NTSB investigative records, because

that office ***closed in 1989***.  The NTSB has not occupied the office space in which the former

Jamaica, New York office was located in almost 20 years.  Moreover, Mr. Dennis Jones has not worked in the NTSB's regional office in Parsippany, New Jersey, since 1998.

When the NTSB FOIA Office and Office of General Counsel notified Mr. Jones of plaintiff's request for records from Investigation No. NYC86MA148, Mr. Jones verified that he did ***not*** leave any records in the office in Parsippany, New Jersey.  Plaintiff also argues that, "no search was made of Mr. Jones' colleagues and supervisors, including their electronic files, who participated in the investigation."  This allegation is also factually incorrect.  The NTSB inquired of Mr. James Wildey regarding any records that may exist in the Materials Laboratory at the NTSB regarding Investigation No. NYC86MA148.  Mr. Wildey conducted an adequate search for records in the Materials Laboratory division and located one record, which the NTSB released to plaintiff.

Plaintiff also asserts, in general terms, that the NTSB did not adequately search for records from the other investigations at issue, and states that the NTSB "describes in great detail its use of special groups . . ..  Yet, the NTSB did not contact or search any of its employees who chaired such groups among the eight investigations at issue."  Pl.'s Mem. of P. & A. at 9. Plaintiff misunderstands the NTSB's methodology for investigations.  For many investigations (most frequently, for international and limited investigations), the NTSB does ***not*** form investigative "groups."  Indeed, for Investigation Nos. IAD00WA069, WAS01WA015, IAD00WA029, DCA97WA068, DCA98WA014, and FTW01LA176, the NTSB did ***not*** form any investigative groups;[1] instead, the NTSB merely appointed ***one employee*** to handle all aspects of the NTSB's involvement.  For the six aforementioned investigations, the NTSB searched the appropriate employees' records.  Lemishko Decl. ¶¶ 13-14, 27-28.  Given that the

---

[1] The NTSB typically forms investigative groups for "major" investigations.  See Haueter Decl. ¶ 9 (stating that the NTSB forms groups "in all ***major*** investigations") (emphasis added).  The NTSB usually does not form groups for other types of investigations, such as limited investigations or international investigations.

FOIA requires agencies to undertake a search that is "reasonably calculated to uncover all relevant documents," Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983), the NTSB's thorough search of Mr. Conroy's and Mr. Lemishko's files was reasonable and, therefore, adequate.  The NTSB's investigations into the accidents that were the subject of the six investigations listed above were quite limited.  Five of these investigations were investigations in which another country served as the lead investigative authority, and one of the investigations was one in which the Federal Aviation Administration conducted the investigation, pursuant to 49 C.F.R. § 831.2(a)(2).

Plaintiff also mentions that other NTSB employees' names appear on e-mail correspondence regarding some of the relevant international investigations, and asserts that the NTSB did not conduct a reasonable search of those employees' files, written or electronic, for records within the scope of plaintiff's request.  The appearance of such names does not require the NTSB to search every employee's files for records within the scope of plaintiff's request. The e-mail correspondence to which plaintiff refers (Vaughn Exhibit 1, ref. p. 39) does include other NTSB employees' names; however, the NTSB employees listed on the correspondence did *not* participate in Investigation No. IAD00WA029.  The text that the NTSB redacted from pages 39 and 40 of the package of the records that the NTSB released to plaintiff does not discuss Investigation No. IAD00WA029, but consists of deliberations among NTSB employees regarding the handling of international investigations in general.  In fact, some of the employees listed on the correspondence are not even aviation investigators at the NTSB.  Moreover, the e-mail message to which plaintiff refers did not include any attachments or mention the existence of other records regarding Investigation No. IAD00WA029.  Overall, it would be wholly unreasonable to search all NTSB employees' files, when the NTSB knows that the only existing

records within the scope of plaintiff's request are located in Mr. Conroy's files. In summary, the

FOIA does not require agencies to conduct such unreasonable, unduly burdensome searches.

Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995).

## II.    THE NTSB PROPERLY INVOKED FOIA EXEMPTIONS

Plaintiff contends that the NTSB did not correctly apply Exemptions 2, 4, 5, and 7 of the

FOIA. As shown below, such an allegation is directly contrary to prevailing case law regarding

these exemptions. In addition, the NTSB notes that plaintiff has ***not*** alleged that the NTSB

improperly applied Exemption 3 or Exemption 6 in responding to plaintiff's request for

information under the FOIA. As such, plaintiff has conceded the applicability of Exemptions 3

and 6. Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp.2d 174, 178

(D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well

understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss

addressing only certain arguments raised by the defendant, a court may treat those arguments

that the plaintiff failed to address as conceded.")).  see also United States v. Real Prop., Parcel

No.03179-005R, Civ. A. No. 01-0706, 2003 WL 224053382 at * 12 (D.D.C. Oct. 21, 2003);

Bancoult v. McNamara, 227 F. Supp.2d 144, 149 (D.D.C. 2002).

## A.    Exemption 2 ("High")

Plaintiff argues that the NTSB incorrectly applied Exemption 2 ("high") of the FOIA, 5

U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency

matters so routine and trivial that they could not be "subject to . . . a genuine and significant

public interest," and (2) internal agency matters of some public interest "where disclosure may

risk circumvention" of statutes or agency regulations. Dep't of Air Force v. Rose, 425 U.S. 352,

369-70 (1976); Nat'l Treasury Employees Union v. United States Customs Serv., 802 F.2d 525,

528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051,

1073-74 (D.C. Cir. 1981). The D.C. Circuit has recognized the role of Exemption 2 when the

release of an agency's records would render an agency's statutory purpose, authority, or

regulations useless. For example, in Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205 (D.C.

Cir. 1992), the D.C. Circuit held that National Labor Relations Board documents setting forth

litigation strategy for implementing the Equal Access to Justice Act (EAJA) were exempt from

disclosure because they were predominantly internal documents, the disclosure of which would

render the documents operationally useless. Id. at 1208.

Contrary to plaintiff's arguments, Exemption 2 applies to certain records that the NTSB

received from investigative parties. As explained in the declaration attached to defendant's

motion, releasing certain sets of information that the NTSB obtained from parties to an

investigation, in accordance with the NTSB's "party process," as set forth at 49 C.F.R. 831.11

and Haueter Decl. ¶¶ 6-10, would *significantly impair* the NTSB's ability to fulfill its statutory

directive. Congress has charged the NTSB with the responsibility of investigating certain

transportation accidents, determining the probable causes of the accidents, and issuing safety

recommendations to other entities, all in order to improve transportation safety. 49 U.S.C. §§

1101–55. Congress has recognized that the NTSB's use of this party system is significant in the

NTSB's fulfillment of its statutory mission. S. Rep. No. 108-53 at 2 (2003), reprinted in 2004

U.S.C.C.A.N. 1767, 1768. Plaintiff's argument, that the FOIA requires the NTSB to release all

records from all parties without reservation, would render the NTSB unable to meet the NTSB's

mission. As articulated in detail in Mr. Thomas Haueter's declaration, the NTSB's party process

in its investigations is critical to the NTSB's fulfillment of its purpose. It is not uncommon for

NTSB investigators to know representatives from many parties. The NTSB also frequently

works with the same parties in the aviation industry repeatedly. Publicly releasing records from a party that opposes such release would not only affect the NTSB's ability to obtain records from that party, but would also affect the NTSB's ability to obtain records from other parties in the future, given the relatively limited size of the aviation industry.

In addition, plaintiff appears to believe that the NTSB rarely releases records from parties. On the contrary, where the NTSB determines that a party's records were pertinent to the investigation, the NTSB will place those records in the "public docket" for the investigation. If the party has indicated that it considers such records to be commercially valuable, and opposes the release of the records, the NTSB will negotiate with the party in an effort to release as much information that is relevant to the report of investigation as possible. Indeed, many public dockets of information for many investigations contain parties' records that the NTSB has redacted. Moreover, the NTSB's enabling statute permits the NTSB to release certain records that private entities consider commercially valuable, notwithstanding the Trade Secrets Act, when the disclosure of information would significantly improve public safety. 49 U.S.C. § 1114(b). The NTSB takes this provision seriously, and carefully considers public safety, the NTSB's effectiveness in fulfilling its statutory mission, and any impairment of the party process when making release determinations regarding investigative parties' records. As such, the NTSB judiciously invoked Exemption 2 ("high") for some of the redactions or withholding of records at issue here. The NTSB's release of records in the face of a party's direct opposition would render the NTSB's party process useless. Therefore, the records that the NTSB redacted and withheld pursuant to Exemption 2 are exempt from disclosure under the FOIA.

**B.    Exemption 4**

Plaintiff also argues that the NTSB improperly invoked Exemption 4 of the FOIA, 5

U.S.C. § 552(b)(4).  Exemption 4 of the FOIA protects "trade secrets and commercial or

financial information obtained from a person [that is] privileged or confidential."  Id.; see also

Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1288, 1290 (D.C. Cir. 1983).

The D.C. Circuit interprets the term "commercial information" quite broadly.  Public Citizen,

704 F.2d at 1290.  In its en banc decision in Critical Mass Energy Project v. NRC, 975 F.2d 871

(D.C. Cir. 1992), the D.C. Circuit broadened the application of Exemption 4 by establishing a

two-part test.  Where a submitter of information has submitted that information to the

government *voluntarily*, the D.C. Circuit held that Exemption 4 would apply to protect such

information as long as the submitter would not "customarily" disclose that information to the

public.  Id. at 878-880.  Conversely, where a submitter of information has submitted that

information to the government because the government *required* such information, then the

government must analyze whether the information is commercially valuable before an agency

may apply Exemption 4, in accordance with National Parks & Conservation Ass'n v. Morton,

498 F.2d 765, 770 (D.C. Cir. 1974).

The NTSB properly invoked Exemption 4 for records that the NTSB voluntarily received

from Sikorsky Aircraft Corporation and Hamilton Standard (now known as "Hamilton

Sundstrand").  The NTSB did not consult with attorneys or use devices such as subpoenas or

orders in an attempt to obtain information from either Sikorsky Aircraft Corporation or Hamilton

Sundstrand; instead, both of these organizations *voluntarily* submitted their confidential

information to the NTSB, in an attempt to assist with the investigations involving their products.

In making release determinations for all the records that the NTSB located in searching for

records within the scope of plaintiff's request, the NTSB inquired of both organizations

regarding whether they would customarily release the information to the public.  Both

organizations carefully reviewed the information, and supplied written statements to the NTSB

verifying that they would not customarily release some of the records to the public.  When the

NTSB received the statement from Sikorsky Aircraft Corporation, the NTSB noticed that certain

headings in the statement referred to a "drawing."  Notwithstanding the headings, the ***text*** of the

statement discussed ***all records*** and information from Sikorsky about which the NTSB had

inquired, not just "drawing[s]."  The records that the NTSB received from Sikorsky Aircraft

Corporation included one drawing, but also many more printed records that were designated as

"proprietary" or otherwise commercially sensitive.  To confirm the applicability of the statement,

the NTSB again inquired of Sikorsky Aircraft Corporation, which responded that its references

to the "drawing" were a typographical error, and clarified those records to which the statement

applied.[2]  For further clarification on the NTSB's application of Exemption 4 to the records at

issue, see Exhibit 1 to this Reply (statement from Sikorsky attorney clarifying that Sikorsky's

original statement applied to all records, not simply a drawing).

Plaintiff also attempts to limit the application of Exemption 4 regarding the records the

NTSB voluntarily received from Hamilton Sundstrand.  First, plaintiff mischaracterizes the

NTSB's argument that Exemption 4 applies to these records, by stating that, "[t]he NTSB argues

only one basis for its withholding: that disclosure of this information would commercially harm

Sikorsky and Hamilton."  Pl.'s Mem. of P. & A. at 14.  The NTSB ***not only*** argued that release

of some of the records at issue would commercially harm these two organizations, ***but also***

argued that these organizations provided the records to the NTSB on a voluntary basis, and

---

[2]  In fact, the NTSB actually releases some records that it considered trivial, notwithstanding that Sikorsky requested
they be withheld.

asserted that they would not customarily disclose such records to the public.  See Def.'s

Memorandum at 12 ("defendant invoked Exemption 4 to redact and withhold information

received voluntarily from two non-governmental sources that those sources would not

customarily release to the public").  In addition, without citing legal authority for his argument,

plaintiff asserts that the FOIA requires the NTSB to present evidence, in addition to the

statements from the two submitters in question, to show how the information at issue is

"confidential, commercial or otherwise a trade secret."  Pl.'s Mem. of P. & A. at 14.  Such an

assertion shows a complete disregard for the D.C. Circuit's en banc decision in Critical Mass,

975 F.2d at 878-880.  In applying Exemption 4, the D.C. Circuit held in Critical Mass that

agencies, upon receiving information from private submitters on a *voluntary* basis, need only

verify that the submitter would not customarily release the information to the public.  Both

Sikorsky Aircraft Corporation and Hamilton Sundstrand submitted statements articulating that

they would not customarily release the voluntarily provided information to the public.  To

strengthen their assertions even further, both entities also included statements that satisfy the

commercial harm test of National Parks, 498 F.2d at 770.  In addition, as explained above at §

II.A, Exemption 2 ("High"), disclosure of such information would also impair the NTSB's

ability to obtain such necessary information in the future.  Haueter Decl. ¶¶ 16-22.  Therefore,

the NTSB has fulfilled the requirements for protecting this information in accordance with

Exemption 4 of the FOIA, under either the broad Critical Mass standard, or under the precedent

National Parks standard.

        Plaintiff also contends that the photographs that the NTSB withheld depict "components

designed and/or manufactured by Sikorsky and Hamilton that were recovered from the

accidents," and that such products are "sold in the market place" and therefore not subject to the

protection of Exemption 4.  Pl.'s Mem. of P. & A. at 14.  Such an argument contradicts the

holding in <u>Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.</u>, 244 F.3d 144, 151 (D.C.

Cir. 2001), wherein the D.C. Circuit stated, "[w]e reject the Center's argument that the mere

selling [of] a product on the open market can constitute evidence of customary disclosure."  The

NTSB verified that the NTSB had voluntarily received the records at issue from either Sikorsky

Aircraft Corporation or Hamilton Sundstrand, and withheld records and redacted information

that those organizations would not have customarily released to the public, in accordance with

Exemption 4.  A ruling requiring the NTSB to release such protected information, in the face of

both entities' statements regarding this information, would directly counter the standard that the

D.C. Circuit set forth in <u>Critical Mass</u>.

## C.    Exemption 5

Plaintiff argues that the NTSB's application of Exemption 5 of the FOIA, 5 U.S.C. §

552(b)(5), was incorrect because the records that the NTSB received from various "parties" in

the investigations at issue do not fulfill the threshold requirement of Exemption 5; specifically,

plaintiff asserts that such records do not consist of inter- or intra-agency correspondence and

therefore are not exempt from disclosure.  As with many of its other arguments, plaintiff simply

ignores binding precedent.  In <u>Ryan v. Dep't of Justice</u>, 617 F.2d 781, 790 (D.C. Cir. 1980), the

D.C. Circuit stated, "Congress apparently did not intend 'inter-agency' and 'intra-agency' to be

rigidly exclusive terms," and held that, where someone "outside the executive branch" had

created memoranda, that record could be considered intra-agency correspondence for purposes of

Exemption 5.  The D.C. Circuit stated:

> When an agency record is submitted by outside consultants as part of the
> deliberative process, and it was solicited by the agency, we find it entirely
> reasonable to deem the resulting document to be an "intra-agency" memorandum
> for purposes of determining the applicability of Exemption 5.  The common sense

interpretation of "intra-agency" to accommodate the realities of the typical agency deliberative process has been consistently followed by the courts.

Id.  Likewise, in Soucie v. David, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1970), the D.C. Circuit stated that the rationale of Exemption 5 "indicates that the exemption should be available in connection with [the record at issue] even if it was prepared for an agency by outside experts." The D.C. Circuit recognized the necessity for such an application of Exemption 5: "[t]he Government may have a special need for the opinions and recommendations of temporary consultants, and those individuals should be able to give their judgments freely without fear of publicity."  Id.  Moreover, this Court has held that Exemption 5 can apply to records exchanged between an agency and an entity acting as a consultant to the agency.  Philadelphia Newspapers, Inc. v. Dep't of Health and Human Serv., 69 F. Supp. 2d 63, 67-68 (D.D.C. 1999) (Robertson, J.) (quoting Durns v. Bureau of Prisons, 804 F.2d 701, 704 n. 5 (D.C. Cir. 1986), vacated and remanded on other grounds, 486 U.S. 1029, 108 S.Ct. 2010, 100 L.Ed.2d 598 (1988), wherein the D.C. Circuit stated that whether documents are "intra-agency" depends on "a functional rather than a literal test").  In conclusion, courts have consistently allowed Exemption 5 protection to documents solicited from "outside sources" that an agency uses in its deliberative process.

The NTSB frequently solicits records and information from "outside sources" in accordance with the "party system" for NTSB investigations.  Haueter Decl. ¶¶ 6-8.  Plaintiff argues that Sikorsky Aircraft Corporation and Hamilton Standard Corporation maintain self-interested motives throughout the party process, and that these parties' opinions, information, and records do not fall within the purview of Exemption 5.  Such an assertion directly contravenes the NTSB's governing regulations regarding parties' participation in an investigation.  Title 49 C.F.R. § 831.11(a)(2) states, "[Party representatives] shall be responsive

to the direction of the Board representatives and may lose party status if they do not comply with their assigned duties and activity proscriptions or instructions, or if they conduct themselves in a manner that is prejudicial to the investigation." 49 C.F.R. § 831.11(a)(2). Parties serve at the discretion of the NTSB, and the NTSB maintains the authority to revoke party status. In many investigations, the NTSB has determined that a party to an NTSB investigation is to blame for the accident in question, based upon a party's submission of its own data or information. Parties understand this risk and, in recognition of the NTSB's statutory and regulatory authority to ascertain relevant information regarding an accident, usually comply with the NTSB's requests for particular information. Plaintiff's argument that the NTSB cannot consider investigative parties as "outside sources" as defined in Ryan v. Dep't of Justice, 617 F.2d 781 (D.C. Cir. 1980), and other relevant cases, is wholly without merit.

**D.    Exemption 7**

Plaintiff also argues that Exemption 7 does not apply to records from the NTSB's pending investigation of an aviation accident that occurred in the Gulf of Mexico, NTSB Investigation No. DFW05MA230. Plaintiff asserts that Exemption 7 is limited to law enforcement investigations stemming from an agency's "clear law enforcement mandate." Such an assertion, again, ignores long-standing case law stating that Exemption 7 also applies to regulatory proceedings *and* civil actions. See, e.g., Jefferson v. United States Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (quoting Aspin v. Dep't of Defense, 491 F.2d 24, 27 (D.C. Cir.1973), for the holding that the agency's inquiry into whether Exemption 7 applies rests on "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding"); Rural Housing Alliance v. United States Dep't of Agriculture, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974) (quoting H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966), which states,

"[Exemption 7] covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws," and recognizing that Exemption 7 applies to records gathered for civil rights purposes); see also Rugiero v. United States Dep't of Justice, 257 F.3d 534, 550 (6th Cir. 2001), cert. denied, 534 U.S. 1134 (2002).

While the NTSB is indeed an independent agency charged with investigating accidents and issues affecting civil transportation safety, Exemption 7 nevertheless applies to records from pending investigations that the NTSB conducts. At times, the NTSB's investigations lead to other agencies' regulatory enforcement actions. As stated above, Congress has directed the NTSB to investigate civil transportation accidents, determine the causes of the accidents, and issue safety recommendations in order to prevent future accidents. 49 U.S.C. §§ 1131 (investigations) & 1135 (safety recommendations). As explained in defendant's motion, the release of information from a pending investigation would significantly hinder the NTSB's fulfillment of these statutory mandates. As such, Exemption (7)(A) of the FOIA exempts such information from disclosure, because courts have long recognized that the provisions of Exemption 7 apply to regulatory civil enforcement, not simply the enforcement of criminal statutes.

Although the NTSB does not engage directly in civil law enforcement or regulatory rulemaking, Congress clearly intended the NTSB's accident investigation activity would motivate and, in many instances, form the foundation for rulemaking and regulatory enforcement activities of other transportation-related regulatory agencies. H.R. Rep. No. 103-239(I) at 1 (1993) (emphasizing the importance of the NTSB's safety recommendations and stating that such recommendations, "have saved countless human lives"). Release of records from a pending investigation will significantly compromise the NTSB's role in that vital regulatory task.

Moreover, plaintiff incorrectly states that the NTSB did not "articulate the requisite harm" for Exemption 7. ***This statement is false***. At paragraphs 47 and 48 of the NTSB's Statement of Material Facts, the NTSB stated that release of records from a pending investigation would severely impede the progress of the investigation, because it would significantly chill the deliberations of the NTSB and parties participating in the investigation. The NTSB also stated that premature release of records from an investigation would cause confusion, misunderstandings, and public speculation regarding the investigation, and divert the NTSB's limited resources for accident investigations. In addition, on page 20 of the NTSB's Memorandum of Points and Authorities, the NTSB stated, "the NTSB does not release materials from ongoing and pending investigations because doing so would severely impede the progress of that investigation . . .. Moreover, the premature release of information relating to ongoing investigations would impede and prohibit the NTSB from fulfilling its statutory obligations relating to aircraft crash investigations." Therefore, plaintiff's assertion that the NTSB did not articulate any harm that would result from the release of records from a pending investigation is simply untrue.

Overall, within the statutory and jurisprudential framework of Exemption 7, records from a transportation investigation that the NTSB is still conducting are exempt from disclosure under Exemption 7(A) of the FOIA. If the NTSB were required to release such records before the conclusion of each investigation, such an order would cause the NTSB essentially to pause each investigation for which the NTSB had received a request for records under the FOIA, gather all records, and process them in accordance with the FOIA. The NTSB would expect to receive literally hundreds of such requests for records from major accident investigations. Such a result would cause the NTSB to become an agency whose sole purpose would involve answering FOIA

17

requests.  Courts have long held that a proper request includes a description that enables a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort, and that, "[t]he rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters."  Assassination Archives & Research Ctr. v. CIA, 720 F. Supp. 217, 219 (D.D.C. 1989), aff'd in pertinent part, No. 89-5414 (D.C. Cir. Aug. 13, 1990).

Instead, in response to requests for records specifically from a pending or ongoing investigation, the NTSB currently categorically reviews records from such a pending investigation, as it did for Investigation No. DFW05MA230, determines that the release of those records would compromise the NTSB's pending investigation, and denies such requests based on Exemption 2, Exemption 5, and Exemption 7(A).  In sum, defendant properly invoked Exemption 7 to withhold records from pending NTSB investigations.

## III.    PLAINTIFF'S REQUEST FOR DISCOVERY IS IMPROPER IN A FOIA CASE

Finally, plaintiff argues that he is entitled to conduct discovery in this case, via deposition testimony in accordance with Fed. R. Civ. P. 30(b)(6).  This argument fails for many reasons. First, plaintiff did not submit a declaration under Fed. R. Civ. P. 56(f) stating why plaintiff needed such a deposition.  See Fed. R. Civ. P. 56(f) ("Should it appear from the *affidavits* of a party . . ..").  Additionally, courts have long recognized that, to obtain discovery for a summary judgment motion, parties must submit a declaration explaining why the court should allow such discovery.  Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir. 2006); Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989).  Plaintiff has not submitted such a declaration and, accordingly, his request for discovery should be denied.

Moreover, given that the cause of action herein is solely based on FOIA, a request for discovery does not fall within the provisions and constraints of relevant case law.  For a requester or plaintiff to justify discovery after an agency has submitted facially adequate declarations, the requester must show **bad faith** or **tangible evidence** that summary judgment is inappropriate.  Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Wheeler v. CIA, 271 F. Supp. 2d 132 (D.D.C. 2003); Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 25 (D.D.C. 2000).  Courts have not allowed discovery based on a plaintiff's speculative criticism of an agency's search, or on the notion that as yet uncovered documents may exist.  Accuracy in Media v. Nat'l Park Serv., 194 F.3d 120, 125 (D.C. Cir. 1999); Safecard Serv., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991); Afshari v. Dep't of Health and Human Serv., 2006 WL 1193525 slip. op. at 1 (D.D.C. May 2, 2006) (Robertson, J.) (stating that, "[p]laintiffs' argument for discovery is supported largely by their incredulity that the government defendants have not been able to locate the documents that plaintiffs think 'must' be there" and concluding that, "[i]n a FOIA case, … that argument goes nowhere"); Judicial Watch, Inc. v. Reno, 2001 WL 1902811, slip. op. at 1-2 (D.D.C. March 30, 2001) (Robertson, J.) (denying plaintiff's request for discovery); Physicians Comm. for Responsible Medicine v. Glickman, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) (Robertson, J.) (holding that, in a FOIA case, "[d]iscovery to pursue a suspicion or hunch is unwarranted").  In general, courts strongly disfavor discovery in FOIA cases.  Public Citizen Health Research Group v. FDA, 997 F. Supp. 56, 72 (D.D.C. 1998) (stating that, "[d]iscovery is to be sparingly granted in FOIA actions"), aff'd in part, rev'd in part, and remanded on other grounds, 185 F.3d 898 (D.C. Cir. 1999).

In the case at hand, plaintiff bases his request for discovery on nothing more than speculation that additional records exist.  Plaintiff has ***not*** established that the NTSB acted in bad faith when searching for documents within the scope of plaintiff's request.  In addition, plaintiff has ***not*** presented tangible evidence indicating that more records exist or that summary judgment would be inappropriate.  Ordering discovery based on the speculative allegation that more records may exist, when the NTSB has submitted detailed declarations specifying the means by which the NTSB conducted its searches and explaining why such searches were reasonable, would directly counter controlling case law, and would encourage FOIA requesters to file suit in future cases whenever they are dissatisfied with the records an agency has located.  In sum, plaintiff has not provided a basis for discovery in this case, and the Court should not now extend the plaintiff such latitude.

## CONCLUSION

The NTSB's detailed declarations set forth the terms of the NTSB's thorough search for all records within the scope of plaintiff's broad request.  Moreover, the NTSB carefully applied the appropriate exemptions in accordance with the statutory framework of the FOIA and governing case law, and plaintiff has not provided a sound legal basis for overturning the application of these exemptions.  Accordingly, for the reasons set forth herein, as well as those set forth in defendant's motion for summary judgment, the NTSB respectfully requests that the Court enter judgment in its favor.

October 23, 2006                              Respectfully submitted,


                                             _____/s/_____.
                                             JEFFREY A. TAYLOR, D.C. Bar # 489610
                                             United States Attorney

                                             _____/s/_____.
                                             RUDOLPH CONTRERAS, DC BAR #434122
                                             Assistant United States Attorney

                                             _____/s/_____.
                                             JOHN F. HENAULT, D.C. Bar # 472590
                                             Assistant United States Attorney
                                             555 4th Street, N.W.
                                             Washington, DC 20530
                                             (202) 307-1249
                                             (202) 514-8780 (facsimile)