Sikorsky Aircraft Corporation
6900 Main Street • P.O. Box 9729
Stratford, Connecticut 06615-9129
(203) 386-4000



October 17, 2006

Ms. Katie Inman
National Transportation Safety Board
490 L'Enfant Plaza, SW
Washington, D.C.  20594-0001

Re:     Third Party FOIA Request for Records Relating to Helicopter Accident Investigations
       a. July 26, 2006 correspondence from NTSB to Sikorsky Aircraft
       b. August 10, 2006 correspondence from Sikorsky Aircraft to NTSB

Dear Ms. Inman:

      This correspondence is in response to several telephonic discussions from August 10, 2006 through October 17, 2006 regarding Sikorsky's use of headings in its Reference b. and is submitted to addresses a typographical error regarding the term "drawing[s]".  For clarity the terms document, text, drawing, record, media, photograph, tape, and data shall be used interchangeably and may be commonly referred to as "information".  The headings of the several articles herein below are inserted solely for the convenience of reference and shall have no further meaning, force or effect.

      The National Transportation and Safety Board ("NTSB") received a Freedom of Information Request ("FOIA") for information relating to Sikorsky Aircraft Corporation, ("Sikorsky").  The requested information is proprietary to Sikorsky and, therefore it is exempt from disclosure because: the information is Trade Secrets and Confidential Commercial Information that Sikorsky does not make available to the public and by providing the information to the NTSB in support of its investigations, Sikorsky is not divested of its protectable interest in the information.  For these reasons, releasing the information would harm Sikorsky's competitive position.

### I.     The Requested *Information* Falls within Exemption (b)(4) of FOIA

      The basic purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).  "The only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA' which is "contributing significantly to public understanding *of the operations or activities of the government.*"  *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (internal quotation marks omitted; alteration and emphasis in original).  Disclosure under FOIA serves the need for "citizens to know what their government is up to and, generally, where the information sought sheds light on an executive agency's performance of its official duties . . .."  *Halpern v.* FBI, 181 F.3d 279, 285 (2d Cir. 1999).  The request in this matter does not conform to the public policy interest to check an agency's performance, but simply advances the personal interest of the requestor.

      FOIA Exemption (b)(4) provides that a Government agency is not obliged to disclose information consisting of "trade secrets and commercial or financial information" obtained from a civilian business

that is "privileged or confidential." *See* 5 U.S.C. §552(b)(4). This exemption is intended to protect the interests of both the Government and those businesses who submitted the information. It encourages businesses to voluntarily furnish useful information to the Government, and it provides the Government with an assurance that such information will be reliable. It also safeguards a company's commercially sensitive information from competitive disadvantages that could result from disclosure. The exemption covers two broad categories of information: (1) trade secrets; and (2) information which is commercial or financial, and obtained from a person, which is privileged or confidential.

### A.    Trade Secrets & Confidential Commercial Information

"Trade secrets" is defined as "a secret, commercially valuable plan, formula, process or device that is used for making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Pub. Citizen Health Research Group v. Food and Drug Admin.*, 704 F.2d 1280, 1288 (D.C. Cir. 1983). Once the documents are identified as trade secrets the inquiry ends and the documents are exempt from the disclosure requirements of FOIA. *Id.* at 1283. *See also Pacific Sky Supply, Inc. v. Dept of the Air Force,* 1987 U.S. Dist. Lexis 13285; 1987 WL 25456 (D.D.C. 1987), 34 Cont. Cas. Fed. (D.D.C. September 29, 1987) (finding trade secret status for drawings of airplane fuel pumps were the end product of innovation or substantial effort and exempt from disclosure under FOIA).

The term "commercial" is given its ordinary meaning, *id.*, such as research data, technical designs, customer and supplier lists, profit and loss data, and overhead and operating costs. *See Washington Post Co. v. HHS,* 690 F.2d 252, 266 (D.C. Cir. 1982); *Landfair v. Dep't of the Army,* 645 F.Supp. 325 327 (D.D.C. 1986). Technical designs, drawings, research data or information discussing these matters can be significant, not as records in general, but as items of valuable property. Exemption (b)(4) is designed to preserve private proprietary interests by ensuring that, through the FOIA process, the normal operation of the marketplace and dealings between the Government and businesses are not disrupted. The exemption is intended to protect information that would not customarily be released to the public by the person from whom it was obtained.

The statutory language of the FOIA does not define "confidential". Congress has left to the courts the responsibility of determining when commercial information is confidential. The courts have created a balancing test to determine when commercial information is confidential under FOIA exemption (b)(4). *Pub. Citizen Health Research Group v. Nat'l Inst. Of Health*, 209 F.Supp 2d. 37, 45 (D.D.C. 2002). The test balances the public interest versus the interest of the federal agency and the company. Information is declared confidential when the combined weight of the federal agency's and the company's interests overcome the public interest. *Washington Post Co. v. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989). Commercial matter is "confidential" if it meets any one of a three-part test:

1. Impairs the Government's ability to obtain necessary information in the future; or
2. Causes substantial harm to the competitive position of the person from whom the information was obtained. Actual competition need not be demonstrated. Only evidence of competition and the likelihood of substantial competitive injury is all that needs to be shown; or
3. Whether disclosure of the information will harm an "identifiable" private or governmental interest which Congress sought to protect by enacting exemption (b)(4).

All of these elements, not just one, are met in this matter as fully explained below.

October 17, 2006
Sikorsky's Amended Response to Third Party FOIA Request for Records
Page 3

### B. The Referenced *Information* Is Exempt from Disclosure Under *Critical Mass*

Information can be tendered to the Government in two manners, voluntary or mandatory. If the business submitted the information on a voluntary basis, the issue is whether revealing the information to the public would jeopardize the federal agency's ability to ensure that the information is readily available to the agency in the future. *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974).

Under *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992) (*en banc*), *cert. denied*, 504 U.S. 984 (1983), trade secrets or commercial or financial information that the Government obtains voluntarily are deemed "confidential" and therefore exempt from disclosure when the information "is of a kind that the provider would not customarily make available to the public." 975 F.2d at 872.

Information is provided to the Government voluntarily if there is no relationship that expressly required the information. *Corez III Service Corp. v. NASA*, 921 F.Supp. 8, 12 (D.D.C. 1996). Information that supplements the Government's understanding of a company's performance is considered information that is voluntarily provided to the Government. *See Pentagen Tech. Int'l v. United States*, 2000 WL 347165 (S.D.N.Y. Mar 31, 2000). The NTSB did not affect a relationship with Sikorsky at the time of its investigations so as to warrant a mandatory disclosure of confidential commercial information. Therefore, Sikorsky's information at issue here was voluntarily provided to the NTSB with the sole intent to help the Government better understand Sikorsky's flight operations and aircraft capabilities to assist the NTSB in its internal investigations. Sikorsky does not make this type of information available to the public. The requested information provides insight to Sikorsky's material configuration and helicopter design structures that were developed over a long period of time and considerable expense to Sikorsky. Additionally, Sikorsky invested significant time and resources creating the confidential commercial documents it released to the NTSB. The conclusions and judgments of such documents have a market place value. For example, it would be a substantial cost to employ a third party to analyze the material in a manner consistent with Sikorsky's research. Consequently, the Government may not provide this confidential commercial information in response to a FOIA request. Further, by releasing to the general public information voluntarily disclosed for a particular purpose would significantly impair the Government's ability to secure this information or obtain company cooperation in the future.

### C. The Referenced *Information* Is Exempt from Disclosure Under *National Parks*

Information is considered mandatory when submitting the information is either required by law or required to maintain the relationship between the company and the federal agency. *McDonnell Douglas Corp., v. NASA,* 895 F.Supp 319, 326 (D.D.C. 1995). If the company submitted the information on a mandatory basis, the issue is whether revealing the information to the public would jeopardize the federal agency's ability to carry out its statutory mandate or ensure that the acquired information is accurate and reliable. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992); *see also Judicial Watch, Inc. v. Export-Import Bank*, 108 F.Supp 2d. 19, 30 (D.D.C. 2000). Additionally, if the business submitted the information on a mandatory basis, the issue is also whether revealing the information would create a substantial risk of competitive harm by placing the contractor at a significant disadvantage compared to his competitors. *Nat'l Parks & Conservation Ass'n v. Morton*, supra at 770; *see also McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 304-05 (D.C. Cir. 1999).

"In order to show the likelihood of substantial competitive harm, it is not necessary to show actual competitive harm." *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979). Rather, an actual competition and the likelihood of substantial competitive injury are sufficient to bring commercial information within the realm of confidentiality. *Id.; see also Raytheon Co. v. Dep't of the Navy*, 1989 WL 55081 at 5 (D.D.C. Dec. 22, 1989) (rejecting Navy's argument that because the company was not in any actual competition that the release of the information posed no likelihood of competitive injury).

Sikorsky is continuously engaged in fierce competitions and negotiations to sell our aircraft, services and spare parts product lines to the U.S. Government and in the commercial domestic and international markets. Although the confidential commercial information at issue here was provided voluntarily and thus, the *National Parks* test is not applicable, for the sake of argument release of the confidential commercial information requested by the third party represents years of effort by Sikorsky of valuable, specialized knowledge and expertise in the field of helicopters, main rotor blade systems, materials and manufacturing tooling. Sikorsky's competitive position and future business prospects depend in significant part upon its ability to create new aircraft and component designs, develop upgrades, support component sparing, maintenance, repair, overhaul efforts, and license designs and drawings for use by third parties. The requested confidential commercial information in this matter is particularly critical to Sikorsky's aircraft design and performance by detailing material use, tooling and system functions which drives aircraft sales and upgrades, as well as being an important part of Sikorsky's aftermarket spares and maintenance, repair and overhall business. Equally as critical is that the confidential commercial information at issue here was prepared to assist the NTSB with its investigation. Use of this information for any other purpose could seriously jeopardize Sikorsky's position in the helicopter market place by providing its competitors with valuable insight, freely obtained, into Sikorsky's products, design and performance as well as conclusions and judgments derived after expensive analysis of Sikorsky's helicopter materials and functioning.

### C.    The *Information* Is Exempt from Disclosure Under *Pacific Sky Supply, Inc.*

When a Government agency receives documents and information from a company, the company may still maintain a protectable interest in the information. The court in *Pacific Sky Supply, Inc.* found that Government ownership of documents does not preclude FOIA exemptions; as it explained, "Congress never intended that all property that the Government acquired title to should therefore be subject to inspection and copying." *Pacific Sky Supply, Inc. v. Dept of the Air Force,* Lexis 13285; 34 Cont. Cas. Fed. (D.D.C. September 29, 1987); citing *National Parks* at 769. Although documents and information are given to the Government, a company is not divested of its commercial rights in the documents or information. *Id.*

In the immediate situation the third party is requesting disclosure of Sikorsky's documents for its own purpose, not for any Government purpose. Sikorsky is engaged in aircraft manufacturing, service, overhaul and repair of helicopters in both domestic and international markets. Core to Sikorsky's success is its ability to profit from the trade secrets it has developed throughout a long history in the helicopter business. The commercial confidential documents released to the NTSB contain analysis that would be expensive to reproduce in the commercial market. Additionally, the facts and evidence used to derive the analysis provides insight into the materials Sikorsky used on its aircraft, the tooling Sikorsky employed to manufacture the aircraft and data relating to performance of the aircraft under certain circumstances; all of this information is secret and proprietary to Sikorsky. Although Sikorsky may have

released the confidential commercial documents, containing trade secrets, to the Government to assist in its investigations, Sikorsky retains a protectable commercial interest in the documents under the FOIA exemption (b)(4).

### D.  Conclusion

The release of the requested confidential commercial information solely for a third party's personal purpose in a highly competitive industry such as this would cause Sikorsky substantial competitive harm.  The information reveals in-depth analysis of performance specifications, material use, tooling and design techniques that competitors would use to their advantage in competing for manufacturing, service, overhaul and repair of aircraft without having endured the expense or time invested by Sikorsky.  Additionally, a competitor could use this proprietary information to design tools, which, in turn, can be used to manufacture parts that will compete directly with Sikorsky-manufactured parts.  The analysis NTSB received in Sikorsky's confidential commercial information has a very real, and significant, market place value.  Simply stated, Exemption (b)(4) was intended to guard against such damaging outcomes.

Finally, because of the harm created by the release of Sikorsky's confidential commercial information, the Government would have an exceptionally difficult time obtaining this type of information or company cooperation in the future.  It is fair to assume that a company would not voluntarily cooperate with the NTSB in its investigations if that cooperation leads to significant harm to the company's protectable commercial interests.

## II.   The Requested *Information* Falls within Exemption (b)(5) of FOIA

FOIA Exemption (b)(5) protects inter-agency or intra-agency information that would be privileged in civil litigation.  5 U.S.C. §552(b)(5).  Exemption 5 is used against public interest requesters because of the nature of such requester's intended use to get information regarding an agency's processes and conclusions.  To this end, exemption 5 was intended to incorporate common-law privileges against discovery.  The rationale for this protection is to protect the integrity of agency decision making by encouraging both full and frank discussions.  This exemption incorporates into the FOIA all the ordinary civil discovery privileges.  *Hopkins v. United States Dep't of Housing & Urban Dev.,* 929 F.2d 81, 84 (2d Cir. 1991).  The work product privilege protects, "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other  tangible and intangible" material prepared in anticipation of litigation.  *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S. Ct. 385 (1947).  "The reports and recommended action with respect to the status of an investigation submitted before any final decision is made as to the course of an investigation qualify as documents prepared in anticipation of litigation."  *Michael's Piano, Inc., et al v. Federal Trade Commission,* 18 F.3d 138, 147 (1994).

Courts have distinguished between pre-decisional document disclosure, which falls under the protection of exemption 5, and post-decisional documents, which must be disclosed.  *F.T.C. v. Warner Comm., Inc*, 742 F.2d 1156, 1161 (9th Cir. 1984); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151-153 (1975).  For the protection to apply, the document must not be "postdecisional memoranda setting forth the reasons for an agency decision already made."  *Renegotiation Board v. Grumman Aircraft Eng'g Corp.,* 421 U.s. 168, 184, 95 S. Ct. 1491 (1975).  The test then for document disclosure is whether information "would 'routinely be disclosed' in private litigation."  *Sears, Roebuck & Co.,* supra at 149.  And, at what time the document was created.  *Hickman,* 347 U.S. at 511.

October 17, 2006
Sikorsky's Amended Response to Third Party FOIA Request for Records
Page 6

The documents at issue here were created at the time the NTSB was conducting aircraft investigations. Sikorsky voluntarily cooperated with NTSB in full and frank discussions, which the documents memorialize, to assist the NTSB in carrying out its process of investigating aircraft accidents. At the time of the investigations, and despite NTSB's conclusions, the documents were protected by the work product privilege as applied in *Michael's Piano*.

### III.    The Requested *Information* Falls within Exemption (b)(2) of FOIA

FOIA Exemption 2 "protects from mandatory disclosure records related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). To fall within Exemption 2, the material withheld must be "predominantly internal" and its disclosure "significantly risks circumvention of agency regulations or statutes." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 216 U.S. App. D.C. 232, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Under *Crooker* the Court said that, "[i]t is not up to [the] court to balance the public interest in disclosure against any reason for avoiding disclosure." *Id*. at 1074. Congress has already done the necessary balancing of materials that are "predominantly internal" and whose disclosure would "significantly risk circumvention of agency regulations or statutes." *Farrugia v. Exec. Office for United States Attys.*, 2006 U.S. Dist. LEXIS 8104 (D.D.C. 2006). The Court also has held "that the words 'personnel rules and practices' encompass not merely minor employment matters, but may cover other rules and practices governing agency personnel, including significant matters . . .." *Crooker*, 670 F.2d at 1056. The word 'internal' in exemption 2 clearly limits the exemption to those rules and practices that affect the internal workings of an agency. *Crooker*, 670 F.2d at 1073.

In this case, although the investigative documents are not a manual per *Crooker*, the documents are used by the NTSB to "analyze and profile factual information" concerning an aircraft accident. As such, the documents could be used to gain insight into the methods and criteria the NTSB utilizes to investigate accidents. Further, the documents are "used internally" within the NTSB "to investigate potential threats" to aviation. *Crooker*, 670 F.2d at 1074 ("We hold that if a document for which disclosure is sought meets the test of 'predominant internality,' and if disclosure significantly risks circumvention of agency regulations or statutes, then Exemption 2 exempts the material from mandatory disclosure.").

Thank you for your attention to this matter. Please contact me at (203) 386-4852 or at Lwylie@sikrosky.com if you have any questions.


Respectfully,
SIKORSKY AIRCRAFT CORPORATION


/s/ (electronic signature)

Lauren Wylie
Contracts & Counsel

Cc:    James Antippas
       R. William Bowles