**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BYRON L. PICKARD, :
Plaintiff, :
v. : Civil Action No. 06-1039 (JR)
NATIONAL TRANSPORTATION SAFETY BOARD, :
Defendant. :

**MEMORANDUM ORDER**

Plaintiff Byron Pickard seeks injunctive relief against the National Transportation Safety Board under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* He alleges that the Board has violated its statutory obligations by failing to conduct an adequate search for responsive records and by failing to release all responsive, non-exempt documents relating to eight separate helicopter crashes investigated by the Board. Pending before the Court is the Board's motion for summary judgment [8]. For the reasons discussed below, defendant's motion will be **granted** in part and **denied** in part.

**Background**[1]

On April 26, 2006, attorney Byron Pickard submitted a FOIA request to the National Transportation Safety Board ("NTSB") seeking any and all records relating to eight helicopter crash investigations for the commercial use of his law firm, Thelen,

[1] The facts, unless otherwise noted, are uncontested.

Reid & Priest, LLP. The request concerned records relating to an August 2000 helicopter crash in Brazil ("investigation '069'"), a July 2001 helicopter crash in Korea ("investigation '015'"), a March 2000 helicopter crash in Indonesia ("investigation '029"), a December 1996 crash in Ireland ("investigation '068"), a December 1997 crash off the coast of the Netherlands ("investigation '014"), a November 2001 crash in Louisiana ("investigation '176"), a June 1986 crash in Massachusetts ("investigation '148"), and a September 2005 crash in the Gulf of Mexico ("investigation '230"). When the agency failed to respond to the request within the statutory time period, Pickard filed this complaint seeking injunctive relief.

NTSB's first step in responding to a FOIA request is to send a copy to the investigator in charge ("IIC") of the crash investigation, or, where a foreign state supervised the investigation, to the appropriate U.S. accredited representative ("USAR") for the investigation.

Former NTSB employee Thomas Conroy, now deceased, served as the USAR on all five foreign investigations listed in the FOIA request: '069, '015, '029, '068, and '014. When processing plaintiff's FOIA request, the agency discovered that, when the Deputy Director of Aviation Safety cleaned out Mr. Conroy's office for use as a temporary workstation for visiting investigators, he discarded all records from closed

investigations pre-dating 2002, in compliance with the agency's record retention policy.[2] Conroy's immediate supervisor, Dennis Jones, was able to locate a small stack of records from investigation '014; they were forwarded to the NTSB's FOIA office. NTSB personnel also conducted a search of Conroy's email and electronic files; that search yielded some potentially responsive documents. Bob MacIntosh, the NTSB specialist in international investigations, was asked to search his records; he discovered two small file folders, one containing records from the '014 investigation and one containing records from the '068 investigation, both of which were forwarded to the NTSB FOIA office. On August 14, 2006, after the NTSB Office of General Counsel analyzed potentially responsive records, the NTSB sent 275 pages, along with three photographs, one electronic record, and a letter explaining applicable exemptions, to plaintiff Pickard.

Alexander Lemishko was the IIC of the '176 investigation. Lemishko informed the NTSB FOIA Office that investigation '176 was a "limited investigation," for which he

---

[2]The agency requires investigators and all others participating in a crash investigation to retain relevant records for a year after the probable cause determination is made. When the probable cause determination is made, the NSTB publishes these records in the Docket Management System ("DMS") which stores all relevant investigation records created after 1995 electronically. Because the records in this docket are available to the public, the NTSB is not required to keep hard copies in investigation files.

did not create any investigative records other than those publicly available on the NTSB website. Lemishko Decl. [8-2] ¶¶ 4-11. He made this representation after searching his network folder and requesting that NTSB Regional Director Hector Cassanova in Arlington, Texas search the local office for responsive files. On July 3, 2006, when all persons queried verified that the NTSB retained no records responsive to the '176 request other than those on publicly available on the agency's website, the NTSB FOIA Office notified plaintiff in writing of this conclusion.

Dennis Jones served as the IIC of the '148 investigation. Jones found no responsive documents from this investigation in his investigation files, but he determined that records of the investigation are available on the public docket. In addition, James Wildey of the Office of Research and Engineering searched the materials laboratory database for any documents related to the '148 crash. He discovered a database entry indicating that two pieces of luggage from the crash had been examined by the laboratory; this database entry was released to plaintiff on June 29, 2006. No other materials related to this crash were discovered or released.

Alexander Lemishko also serves as the IIC of the '230 investigation. The NTSB FOIA office inquired into the status of this investigation upon receipt of plaintiff's FOIA request.

Five separate groups assist in the investigation. The NTSB received notification from each of the five groups currently engaged in investigating the '230 crash that the investigations are on-going (or were on-going as of 9/14/06). By letter dated July 3, 2006, the agency informed plaintiff that it could not release materials related to the on-going '230 investigation and that such materials were covered by FOIA exemptions 2, 5, and 7(A).

The NTSB has a policy of not releasing documents related to pending investigations, based on the agency's belief that such releases would hamper the agency's ability to conduct the investigation. The agency maintains that releasing records from on-going investigations would cause misunderstanding and misguided speculation regarding the importance of certain aspects of the crash, and generally impede investigators' progress. Lemishko Decl. [8-2] ¶¶ 20-24; Haueter Decl. [8-7] ¶¶ 12-15.

The NTSB withheld 188 pages and 64 photographs. Defendant provided plaintiff with narrative descriptions of the withheld information. The Vaughn index attached as exhibits 2-8 to the declaration of Melba B. Moye [8-9 through 8-16] explains how these 188 documents and 64 photographs are covered by various FOIA exemptions. Some of the documents released to plaintiff were redacted in part; those with redactions were labeled with the categories of exemptions covering the redacted information.

Plaintiffs dispute the reasonableness of the searches for responsive documents and the applicability of the various exemptions claimed, and oppose defendant's motion for summary judgment [10].

**Legal Standard**

Summary judgment is appropriate when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). FOIA cases are frequently decided on motions for summary judgment when the agency sufficiently demonstrates that each requested document either cannot be located, or was properly disclosed, or is exempt from disclosure in whole or in part. Billington v. Dep't of Justice, 233 F.3d 581, 583-84 (D.C. Cir. 2000); Weisberg v. U.S. Dep't. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The agency may prove that records are unavailable or exempt from disclosure through affidavits, declarations or other evidence. Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979). When the non-moving party presents no evidence of bad faith and detailed submissions justify non-disclosure by illustrating why withheld materials fall within claimed exemptions, the agency is entitled to summary judgment. See, e.g., McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

## Analysis

*The Adequacy of the Agency's Search*

An agency is required to respond to a FOIA request by conducting a "search reasonably calculated to uncover all relevant documents." Weisberg v. Department of Justice, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983); see also Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986). The reasonableness of the agency's search depends upon the particular constraints of the agency and the circumstances of the request. Weisberg, 745 F.2d at 1485. The agency is not required to demonstrate that all responsive documents have been located, but only that the search itself was adequate and reasonable. Nation Magazine v. U.S. Customs Service, 71 F.3d 885 (D.C. Cir. 1995). The burden is on the agency to demonstrate the adequacy of its search. Duenas Iturralde v. Comptroller of the Currency, 315 F.3d 311, 313 (D.C. Cir. 2003). The party challenging the adequacy of the search may rebut such a showing with countervailing evidence. Id. at 314. If the record is unclear on the adequacy of the agency's search, the Court may not grant summary judgment. Id.

The record here demonstrates a conscientious and diligent search for responsive records in regards to most crash investigations identified in the FOIA request. Plaintiff's objections to the scope of the investigation are largely speculative and without merit.

Plaintiff argues that the NTSB conducted an unreasonably limited search for records relating to the crashes in Brazil, Korea, Indonesia, Ireland, and the Netherlands. In particular, he argues that the agency should have searched (1) electronic files other than Conroy's, (2) the files of Conroy's colleagues and supervisors, and (3) correspondence among NTSB personnel concerning these crashes. Plaintiff's Memorandum in Opposition [10] at 3.

The limitations on defendant's search for records responsive to these requests, however, were entirely reasonable. As the agency explains in its motion for summary judgment [8], the NTSB's involvement in international investigations is frequently of very limited scope, and the agency designates only a single employee to maintain contact with the foreign investigating agency. Nevertheless, the agency did ask Conroy's supervisors, Jones and Guzzetti, to search their files for potentially responsive materials. Guzzetti verified that he personally had no responsive records, and reported that Conroy's office had been cleared out. Jones located a small stack of responsive records, which he provided to the agency's FOIA office. The agency also instructed international investigation expert MacIntosh to search the file cabinet where materials from international investigations are stored. He did so, and he discovered two file folders containing material from two of the

investigations listed in the FOIA request, both of which were provided to the FOIA office.

Similarly, plaintiff's vague suggestion that the agency should have searched "the NTSB's general electronic files or its emails" overstates the required scope of defendant's search. Plaintiff's Memorandum in Opposition [10] at 3. Defendant maintains that the only electronic source of agency-wide information is the publicly accessible DMS, and that it would be impractical to impose a duty to search all NTSB electronic files when the agency reasonably expects that, especially for investigations in which the agency played a limited role, responsive materials are likely to be found only in a few possible locations.

Plaintiff does not dispute that the agency's determination that no responsive records would be discovered in other locations was made in good faith. Based on the agency's explanation of its limited involvement in international investigation, the scope of its search for materials related to these five investigations appears to have been reasonable.

The agency searched for records relating to the '148 investigation by asking IIC Dennis Jones whether responsive records were kept in his previous office in Parsippany, New Jersey, and instructing him to search his current office in Washington, D.C. Jones verified that no records were left in his

previous office, and that he was unable to locate any materials related to the '148 crash in his D.C. office. In addition, NTSB asked a Materials Laboratory representative to search for records relating to the Massachusetts crash. Two responsive database entries were located and disclosed to plaintiff.

Plaintiff faults the agency for failing to search the NTSB office in Jamaica, New York, where IIC Jones once worked. However, the agency represents that this office was closed in 1989, and therefore could not be searched. Defendant's Reply [11] at 4. In addition, plaintiff argues that a reasonable search would have included within its scope the files of Jones' supervisors during the time he served as IIC on the '148 crash. While at first blush it may appear that such an inquiry would have been reasonable, the agency may have had a number of reasons for limiting its scope in the manner chosen. This investigation differs from the international searches discussed above in a number of important respects. The Massachusetts crash occurred in 1986: 10 years earlier than the earliest of the five international crashes coordinated by Conley. Given the agency's document retention practices, it is unlikely that files would remain with investigation staff over twenty years after the crash.

One of plaintiff's challenges to the search for materials from the '148 investigation, however, has not been

adequately answered by defendant. Plaintiff argues that any reasonable search for records relating to an investigation for which the agency used special investigative groups should involve a search of the records maintained by NTSB employees who chaired those groups. In its motion for summary judgment, the NTSB described the special investigative groups created for many of its larger investigations. Defendant's Statement of Material Facts not in Genuine Dispute [8] at 17 ¶ 49 (noting, that for investigation '230, NTSB assembled a human performance group, operations group, cockpit voice recorder group, maintenance records group, and a survival factors group). In its reply brief, the agency insisted that for many of its investigations, it does not form these groups. More specifically, however, the agency claims that these groups were not formed for any of the international investigations, nor for investigation '176. Defendant's Reply [11] at 5. The omission of the '148 investigation from this statement may or may not be significant. The agency should clarify the record. If special investigative groups were formed for the '148 crash, the agency needs to defend its decision not to inquire of the NTSB employees who chaired them. Summary judgment on this claim is inappropriate on this record.

Plaintiff has not seriously challenged the adequacy of the '176 investigation, which was conducted by the Federal Aviation Administration.[3]

Plaintiff's objections to the '230 search are more appropriately addressed in the exemptions discussion, as they pertain to the alleged impropriety to the agency's assertion of a blanket exemption rather than to the claimed inadequacy of a search performed by the agency.

*Claimed Exemptions*

The agency has asserted that certain responsive material is exempt from disclosure under FOIA exemptions 2, 3, 4, 5, 6, and 7. 5 U.S.C. §§ 552(b)(2)-(7). Plaintiff does not challenge the agency's invocation of exemption 3 or exemption 6. His challenges to the use of exemptions 2, 4, 5 and 7 are considered below.

*The "High 2" Exemption*

Exemption 2 covers materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Information falls under this exemption if (1) it is "used for predominantly internal purposes," Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073

---

[3] Plaintiff broadly claims that the NTSB search overall was unreasonable, Plaintiff's Opposition [10] at 9, but fails to identify any specific problems with the '176 search in the portion of his brief addressing search inadequacies. Id. at 3-4.

(D.C. Cir. 1981)(en banc), and (2) it "relates to trivial administrative matters of no genuine public interest," ("low 2") or its disclosure may risk circumvention of agency regulation ("high 2"). Dep't of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schwaner v. Dep't of the Air Force, 898 F.2d 793, 794 (D.C. Cir. 1990).

Defendant maintains that certain responsive material is covered by the "high 2" exemption because, if it were disclosed, it would undermine the agency's ability to fulfill its statutory mandate to coordinate with manufacturers, operators, and other parties to determine the probable cause of helicopter crashes. Moye Decl. ¶¶ 74, 75; Hauter Decl. ¶¶ 6-10; Defendant's Statement of Material Facts ¶¶ 56-58. The agency broadly asserts that the collection of information from these outside parties is critical to its compliance with the NTSB's required "party process," as described in 49 C.F.R. 831.11. Defendant notes that Congress recognizes the critical nature of the party process in the NTSB's fulfillment of its statutory mission. Defendant's Reply [11] at 8, citing S. Rep. No. 108-53 at 2 (2003), reprinted in 2004 U.S.C.C.A.N. 1767, 1768. Defendant does not seek to withhold all information provided to it by cooperating parties, but only information which (1) the providing party expects will be held in confidence, and (2) the disclosure of which it believes would

chill participation by cooperating parties in future investigations. Defendant's Reply [11] at 9.

Though typically invoked to protect against the improper use of sensitive information such as police training or litigation strategy, the high 2 exemption is "not limited . . . to situations where penal or enforcement statutes could be circumvented." Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1208 (D.C. Cir. 1992). Nevertheless, plaintiff questions whether the exemption is broad enough to support the withholding of documents, nor because their disclosure will enable the circumvention of an agency process, but because disclosure might undermine the effectiveness of a process. Disclosure of, for example, an accident investigation report from the Netherlands, may chill future communication from parties involved in the Netherlands investigation, but it will not enable those parties somehow to get around the NTSB's process in the future.

That question cannot be confidently answered on this record, because the NTSB has not shown how the documents for which it asserts the high 2 exemption are "related solely to the internal personnel rules and practices" of the NTSB. 5 U.S.C. § 552(b)(2). Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc); see also Audubon Soc'y v. United States Forest Serv., 104 F.3d 1201, 1204 (10th Cir. 1997) (noting that the phrase "internal personnel" modifies

both "rules" and "practices," and concluding that Exemption 2 applies only to internal personnel rules and practices) (citing Jordan v. United States Dep't of Justice, 591 F.2d 753, 764 (D.C. Cir. 1978)). Without some sort of demonstration that these materials received from outside the agency "relate solely to internal personnel rules and practices," 5 U.S.C. § 552(b)(2), no satisfactory "high 2" analysis can be accomplished. Summary judgment on this exemption will be denied.[4]

*Exemption 4*

Defendant has withheld or redacted materials provided by Sikorsky Aircraft Corporation and Hamilton Standard under Exemption 4, which covers "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). The D.C. Circuit has a lenient test for invoking the "commercial information" portion of this exemption. Materials voluntarily submitted to an agency by an outside corporation are covered by Exemption 4 so long as the corporation would not customarily disclose that information to the public. Critical Mass Energy Project v. NRC, 975 F.2d 871, 878-880 (D.C. Cir. 1992). All materials for which the NTSB has claimed exemption 4 were submitted to the agency voluntarily, and the private parties have both declared that they would not

---

[4]Plaintiff has not objected to defendant's invocation of the "low 2" exemption.

customarily disclose this information to the public. Nothing more is required to invoke this exemption.

*Exemption 5*

Exemption 5 covers otherwise responsive documents which are "inter-agency or intra-agency memorandums or letters which would not be available by law to party other than an agency in litigation with the agency." The purpose of this privilege is to "prevent injury to the quality of agency decisions," by protecting from disclosure confidential, pre-decisional advice and counsel on matters of policy. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). The privilege protects documents that are both pre-decisional and deliberative, including "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). In order to invoke the deliberative process privilege, agencies much demonstrate both (1) that the communication is predecisional or "antecedent to the adoption of an agency policy," Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc), and (2) that the document is deliberative, Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). In order to show that the material is deliberative, the agency must

identify "what deliberative process is involved and the role played by the documents in issue in the course of the [deliberative] process." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Plaintiff primarily faults the NTSB for considering records from outside parties such as helicopter manufacturers under this exemption, but the agency can properly invoke this exemption even when the privileged records were prepared by an outside party. See Soucie v. David, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1970). The agency has properly demonstrated how each document withheld or redacted falls under this exemption, in accordance with the test described above.

*Exemption 7(A)*

Defendant has withheld all materials from its on-going investigation of crash '230 in the Gulf of Mexico under Exemption 7(A), which protects "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7). In the dispute over this exemption, both sides are wrong: plaintiff's opposition erroneously suggests that it applies only in the criminal context, and defendant's assertion of its application is overly broad.

Defendant has adequately explained why the disclosure of materials from its on-going investigation runs the risk of causing undue interference, but it has not made a sufficient showing that the materials related to its investigation of crash '230 qualify under the exemption as "records compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The NTSB does not have the authority to bring either civil or criminal enforcement proceedings. As plaintiff points out, defendant cites no authority for its assertion that crash investigations fall under the category of law enforcement proceedings referenced in exemption 7. Plaintiffs' Opp. [10] at 10. Instead, the agency notes that, in addition to criminal proceedings, "Exemption 7 also applies to regulatory proceedings and civil actions." Defendant's Reply [11] at 15, citing Jefferson v. United States Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002); Aspin v. Dep't of Defense, 491 F.2d 24 (D.C. Cir. 1973). However, Aspin holds that the availability of Exemption 7(A) rests on "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding," 491 F.2d at 27. As broad as this standard may be, the NTSB has not demonstrated how its investigation could be characterized in this manner. The key concept here is "enforcement," and NTSB lacks an enforcement mandate. While some of its investigatory findings might be used in another agency's enforcement proceedings, this is too

attenuated a claim to justify withholding under exemption 7(A), and defendant cites to no case law upholding the invocation of this exemption for such a reason. See Defendant's Reply [11] at 16 (claiming that the exemption applies because "[a]t times, the NTSB's investigations lead to other agencies' enforcement actions"). The agency therefore must either release the materials withheld under Exemption 7, or articulate other exemptions under which their withholding may be justified.

*Discovery*

Plaintiff seeks discovery under Fed. R. Civ. P. 56(f), but he has not complied with the rule by submitted declarations or affidavits explaining why such discovery is necessary. His request is therefore denied.

**Conclusion**

Defendant's motion for summary judgment [8] is **granted in part and denied in part.** Summary judgment cannot be granted with respect to defendant's response to the request for materials related to investigation '148, and defendant's invocation of the "high 2" exemption and Exemption 7 have not been sufficiently supported. The denial is **without prejudice.**

It is **SO ORDERED.**

JAMES ROBERTSON
United States District Judge